# Exhibit A to the United States' Motion to Dismiss

*Seal v. United States*, Case No. 2:25-cv-442 (D. Me.)



# Department of Defense
# INSTRUCTION

**NUMBER** 6490.04
March 4, 2013
Incorporating Change 1, Effective April 22, 2020

USD(P&R)

SUBJECT:   Mental Health Evaluations of Members of the Military Services

References:   See Enclosure 1

1. PURPOSE.  In accordance with the authority in DoD Directive 5124.02 (Reference (a)), this instruction:

    a.  Reissues DoD Instruction 6490.4 (Reference (b)), establishing policy, assigning responsibilities, and prescribing procedures for the referral, evaluation, treatment, and medical and command management of Service members who may require assessment for mental health issues, psychiatric hospitalization, and risk of imminent or potential danger to self or others.

    b.  Incorporates and cancels DoD Directive 6490.1 (Reference (c)).

    c.  Implements section 1090a of Title 10, United States Code (Reference (d)) and section 711(b) of Public Law 112-81, the National Defense Authorization Act for Fiscal Year 2012 (Reference (e)).

2. APPLICABILITY.  This instruction:

    a.  Applies to the OSD, the Military Departments (including the Coast Guard at all times, including when it is a Service in the Department of Homeland Security by agreement with that Department), the Office of the Chairman of the Joint Chiefs of Staff and the Joint Staff, the Combatant Commands, the Office of the Inspector General of the Department of Defense, the Defense Agencies, the DoD Field Activities, and all other organizational entities within the DoD.

    b.  Does **not** apply to:

        (1)  Voluntary self-referrals.

        (2)  Required periodic pre- and post-deployment mental health assessments for Service members deployed in connection with a contingency operation in accordance with DoD Instruction 6490.03 (Reference (f)).

DoDI 6490.04, March 4, 2013

      (3) Responsibility and competency inquiries conducted in accordance with the guidelines established in the Rule for Courts Martial 706 of the Manual for Courts-Martial (Reference (g)).

      (4) Interviews conducted in accordance with guidelines established for the Family Advocacy Program in DoD Instruction 6400.01 (Reference (h)).

      (5) Interviews conducted in accordance with guidelines established for drug or alcohol abuse rehabilitation programs in DoD Instruction 1010.04 (Reference (i)).

      (6) Clinical referrals requested by other healthcare providers as a matter of clinical judgment and when the Service member consents to the evaluation.

      (7) Evaluations under authorized law enforcement or corrections system procedures.

      (8) Evaluations for special duties or occupational classifications and other evaluations expressly required by applicable DoD issuance or Service regulation that are not subject to commanders' discretion.

3. <u>POLICY</u>.  It is DoD policy that:

   a.  It is the responsibility of the DoD to ensure that policy and procedures are implemented in a manner that removes the stigma associated with Service members seeking and receiving mental health services.  The use of mental health services is considered, whenever possible, to be comparable to the use of other medical and health services.  This extends to policy directed at ensuring fitness for duty, returning injured or ill Service members to full duty status after appropriate treatment, and managing medical conditions that may endanger the Service member, others, or mission accomplishment.

   b.  Commanders and supervisors who in good faith believe a subordinate Service member may require a mental health evaluation are authorized to direct an evaluation under this instruction or take other actions consistent with the procedures in Enclosure 3.  In these circumstances, a command directed mental health evaluation (MHE) has the same status as any other military order.

   c.  Referral for a command directed evaluation (CDE) of a Service member to a mental healthcare provider (MHP) for a non-emergency MHE may be initiated only by a commander or supervisor as defined in the Glossary.  Such evaluations may be for a variety of concerns, including fitness for duty, occupational requirements, safety issues, significant changes in performance, or behavior changes that may be attributable to possible mental status changes.

   d.  A commander or supervisor will refer a Service member for an emergency MHE as soon as is practicable whenever:

      (1) A Service member, by actions or words, such as actual, attempted, or threatened violence, intends or is likely to cause serious injury to him or herself or others.

Change 1, 04/22/2020            2

      (2)  When the facts and circumstances indicate that the Service member's intent to cause such injury is likely.

      (3)  When the commanding officer believes that the Service member may be suffering from a severe mental disorder.

   e.  No one may refer a Service member for an MHE as a reprisal for making or preparing a lawful communication of the type described in section 1034 of Reference (d) and in DoD Directive 7050.06 (Reference (j)).

   f.  A Service member may initiate a voluntary self-referral for mental health care.  When self-initiated, the MHP will follow the policy and procedures of DoD Instruction 6490.08 (Reference (k)) with regard to both the presumption of non-notification, required notifications, and the extent of disclosure.

   g.  Training must be provided annually to all Service members by the Military Departments regarding the recognition of personnel who may require MHE for imminent dangerousness, based on the individual's behavior or apparent mental state.

   h.  Mental health assessments of Service members deployed in connection with a contingency operation will be conducted, for purposes other than CDEs, in accordance with the authority and procedures in Reference (f).

4.  <u>RESPONSIBILITIES</u>.  See Enclosure 2.

5.  <u>PROCEDURES</u>.  See Enclosure 3.

6.  <u>RELEASABILITY</u>.  **Cleared for public release.**  This instruction is available on the Directives Division Website at http://www.dtic.mil/whs/directives.

7.  <u>SUMMARY OF CHANGE 1</u>.  The change to this issuance updates references and removes expiration language in accordance with current Chief Management Officer of the Department of Defense direction.

*DoDI 6490.04, March 4, 2013*

8. <u>EFFECTIVE DATE</u>.  This instruction is effective March 4, 2013.

*Jessica L. Wright,*
Acting Under Secretary of Defense for
Personnel and Readiness

Enclosures
    1.  References
    2.  Responsibilities
    3.  Procedures
Glossary

*DoDI 6490.04, March 4, 2013*

# TABLE OF CONTENTS

ENCLOSURE 1: REFERENCES ..................................................................................................6

ENCLOSURE 2: RESPONSIBILITIES ........................................................................................7

    ASSISTANT SECRETARY OF DEFENSE FOR HEALTH AFFAIRS (ASD(HA))..............7
    SECRETARIES OF THE MILITARY DEPARTMENTS......................................................7

ENCLOSURE 3: PROCEDURES ..................................................................................................9

    TRAINING FOR COMMANDERS, SUPERVISORS, AND SERVICE MEMBERS ............9
    REFERRAL OF SERVICE MEMBERS FOR COMMANDER OR SUPERVISOR
        DIRECTED MHE.................................................................................................................9
    COMMAND PROMOTION OF CARE SEEKING FOR THE MAINTENANCE OF
        TOTAL WELL-BEING.....................................................................................................10
    HOSPITALIZATION FOR PSYCHIATRIC EVALUATION AND TREATMENT ............10
    FITNESS AND SUITABILITY FOR SERVICE...................................................................12
    DUTY TO TAKE PRECAUTIONS TO PROTECT OTHERS FROM HARM .....................13
    MEDICAL QUALITY MANAGEMENT CASE REVIEW ..................................................13
    COMPLAINTS OF REPRISAL FOR PROTECTED COMMUNICATION ..........................14

GLOSSARY ..................................................................................................................................15

    PART I: ABBREVIATIONS AND ACRONYMS ..............................................................15
    PART II: DEFINITIONS......................................................................................................15

*DoDI 6490.04, March 4, 2013*

# ENCLOSURE 1

# REFERENCES

(a) DoD Directive 5124.02, "Under Secretary of Defense for Personnel and Readiness (USD(P&R))," June 23, 2008
(b) DoD Instruction 6490.4, "Requirements for Mental Health Evaluations of Members of the Armed Forces," August 28, 1997 (hereby cancelled)
(c) DoD Directive 6490.1, "Mental Health Evaluations of Members of the Armed Forces," October 1, 1997 (hereby cancelled)
(d) Sections 1034 and 1090a of Title 10, United States Code
(e) Section 711(b) of Public Law 112-81, "National Defense Authorization Act for Fiscal Year 2012," December 31, 2011
(f) DoD Instruction 6490.03, "Deployment Health," June 19, 2019
(g) Manual for Courts-Martial, United States, current version
(h) DoD Instruction 6400.01, "Family Advocacy Program (FAP)," May 1, 2019
(i) DoD Instruction 1010.04, "Problematic Substance Use by DoD Personnel," February 20, 2014
(j) DoD Directive 7050.06, "Military Whistleblower Protection," April 17, 2015
(k) DoD Instruction 6490.08, "Command Notification Requirements to Dispel Stigma in Providing Mental Health Care to Service Members," August 17, 2011
(l) National Center for State Courts, "Guidelines for Involuntary Civil Commitment," 1986
(m) DoD Instruction 1332.18, "Disability Evaluation System (DES)," August 5, 2014
(n) DoD Instruction 1332.14, "Enlisted Administrative Separations," January 27, 2014, as amended

DoDI 6490.04, March 4, 2013

# ENCLOSURE 2

# RESPONSIBILITIES

1. <u>ASSISTANT SECRETARY OF DEFENSE FOR HEALTH AFFAIRS (ASD(HA))</u>. Under the authority, direction, and control of the Under Secretary of Defense for Personnel and Readiness, the ASD(HA) monitors compliance with this instruction and develop additional guidance as required.

2. <u>SECRETARIES OF THE MILITARY DEPARTMENTS</u>. The Secretaries of the Military Departments:

    a. Require departmental monitoring of compliance with this instruction.

    b. Develop policy that ensures active duty Service member involuntary psychiatric hospitalization procedures at DoD inpatient facilities are modeled after guidance prepared by professional civilian mental health organizations that serve as credible sources of nationally recognized best practices and standards of care for emergency evaluation, hospitalization, and treatment for adults (e.g., guidance written by the American Psychiatric Association regarding emergency evaluation of adults).

    c. Monitor the ability of commanders and supervisors, medical treatment facility personnel, emergency care providers, and MHPs to meet the requirements of this instruction to follow:

        (1) Military Department involuntary emergency admission procedures.

        (2) The State's civil commitment procedures, if the commitment occurs at a civilian facility, for the State in which the psychiatric emergency admission occurs, in accordance with National Center for State Courts, "Guidelines for Involuntary Civil Commitment" (Reference (l)).

        (3) Military involuntary admission procedures, if the commitment occurs at an MTF.

    d. Ensure that commanders and supervisors are proficient in fulfilling their responsibilities, as set forth by Military Department's policies and procedures, to:

        (1) Initiate and follow procedures for both emergency and non-emergency CDEs and facilitating other MHE referrals.

        (2) Execute emergency management and precautions in the referral and care of a potentially dangerous Service member.

        (3) Provide the Service member with the resources, opportunity, and encouragement to seek non-directed mental health, social service, or other types of assistance, consistent with the promotion of well-being and maintenance of the Service member's health and readiness.

*DoDI 6490.04, March 4, 2013*

 e.  Ensure that MHPs follow Military Department procedures, policy, and clinical guidance for completing clinical risk assessment evaluations and related documentation.

 f.  Ensure periodic training is provided to all commanders, supervisors, and Service members regarding the recognition of personnel who may require MHE for dangerousness to self, others, or mission, based on the individual's behavior or apparent mental state.  The training must meet the requirements in Enclosure 3 of this instruction.

 g.  Ensure medical quality management case review is completed for all cases that, subsequent to a CDE or other MHE, result in suicide, homicide, serious injury, or violence.

 h  Develop and implement effective procedures, consistent with Reference (j), to enforce the prohibition on using CDEs to retaliate against whistleblowers and the other provisions in that directive concerning protected communications.

DoDI 6490.04, March 4, 2013

ENCLOSURE 3

PROCEDURES

1. TRAINING FOR COMMANDERS, SUPERVISORS, AND SERVICE MEMBERS

   a. Periodic training provided to all commanders, supervisors, and Service members must provide instruction on how to recognize Service members who may require mental health evaluation for dangerousness to self, others, or mission based on the Service member's behavior or apparent mental state.

   b. Such training must include:

      (1) The recognition of potentially dangerous behavior.

      (2) Appropriate use of security or civilian police authorities.

      (3) Management of emergencies pending the arrival of security or civilian police.

      (4) Administrative management of such cases.

   c. Training must be specific to the needs, rank, and level of responsibility and assignment of commanders, supervisors, and Service members.

2. REFERRAL OF SERVICE MEMBER FOR COMMANDER OR SUPERVISOR DIRECTED MHE

   a. The responsibility for determining whether or not referral for MHE should be made rests with the Service member's commander or supervisor at the time of the referral.

      (1) A senior enlisted Service member may be designated by the commander or supervisor for ordering an emergency CDE for enlisted Service members.

      (2) In cases involving a commissioned officer, a commissioned officer of rank senior to the officer to be referred may be designated.

   b. When a commander or supervisor, in good faith, believes that a Service member may require a non-emergency MHE, he or she will:

      (1) Advise the Service member that there is no stigma associated with obtaining mental health services.

      (2) Refer the Service member to an MHP, providing both name and contact information.

  (3) Tell the Service member the date, time, and place of the scheduled MHE.

 c. When a commander or supervisor refers a Service member for an emergency MHE owing to concern about potential or imminent danger to self or others, the following principles should be observed:

  (1) <u>Safety</u>. When a Service member is exhibiting dangerous behavior, the first priority of the commander or supervisor is to ensure that precautions are taken to protect the safety of the Service member and others, pending arrangements for and transportation of the Service member to the location of the emergency evaluation.

  (2) <u>Communication</u>. The commander or supervisor will report to the MHP circumstances and observations regarding the Service member that led to the emergency referral either prior to or while the Service member is en route to emergency evaluation.

3. <u>COMMAND PROMOTION OF CARE SEEKING FOR THE MAINTENANCE OF TOTAL WELL-BEING</u>

 a. Commanders or supervisors may make informal, non-mandatory recommendations for Service members under their authority to seek care from an MHP when circumstances do not require a CDE based on safety or mission concerns. Under such circumstances, the commander or supervisor will inform the Service member that he or she is providing a recommendation for voluntary self-referral and not ordering the care.

 b. Commanders and supervisors will demonstrate leadership and direct involvement in development of a culture of total well-being of Service members by providing consistent and ongoing messaging and support for the benefits and value of seeking mental health care and voluntarily-sought substance abuse education.

 c. Commanders and supervisors may educate Service members with respect to additional options for assistance, including confidential counseling from family support, Military OneSource resources, consultation from chaplains, and options for obtaining assistance with financial, legal, childcare, housing, or educational issues.

 d. Commanders and supervisors will not substitute alternative approaches to CDE when there is significant concern regarding a Service member's safety or performance of duty or concern for the safety of others.

4. <u>HOSPITALIZATION FOR PSYCHIATRIC EVALUATION AND TREATMENT</u>

 a. Pursuant to a referral, only a psychiatrist, or, when a psychiatrist is not available, a physician or another MHP with admitting privileges may admit a Service member for an inpatient MHE.

    b.  The evaluation will be conducted in the most appropriate clinical setting, in accordance with the least restrictive alternative principle.

    c.  Voluntary inpatient admission is appropriate when a psychiatrist, or, when a psychiatrist is not available, a physician or another MHP with admitting privileges, determines that admission is clinically indicated and the Service member has the capacity to provide and does provide informed consent regarding treatment and admission.

    d.  An involuntary inpatient admission to an MTF is appropriate only when a psychiatrist, or, when a psychiatrist is not available, a physician or another MHP with admitting privileges, makes an evaluation that the Service member has, or likely has, a severe mental disorder or poses imminent or potential danger to self or others.  Guidelines include:

        (1)  <u>Level of Care</u>.  Placement in a less restrictive level of care would result in inadequate medical care.

        (2)  <u>Admission Criteria</u>.  Admission is consistent with applicable clinical practice guidelines.

        (3)  <u>Re-evaluation Following Admission</u>.  The Service member will be re-evaluated, under the purview of the admitting facility, within 72 hours of admission by an independent privileged psychiatrist or other medical officer if a psychiatrist is not available.

            (a)  The independent medical reviewer will notify the Service member of the purpose and nature of the review and of the member's right to have legal representation during the review by a judge advocate or by an attorney of the member's choosing at the member's own expense if reasonably available within the required time period for the review.

            (b)  The independent medical reviewer will determine and document in the inpatient medical record whether, based on clear and convincing evidence, continued involuntary hospitalization is clinically appropriate.  If so, the reviewer will document the clinical conditions requiring continued involuntary hospitalization and the circumstances required for discharge from the hospital, and schedule another review within 5 business days.

            (c)  The independent medical reviewer will notify the Service member of the results of each review.

        (4)  <u>Medical Record Documentation</u>. Documentation of the evaluation encounter, findings, and disposition must be consistent with applicable standards of care and will additionally:

            (a)  Document information pertaining to the inpatient admission in the Service member's MTF electronic health record including at a minimum communication of the assessment of risk for dangerousness, treatment plan, medications, progress of treatment, discharge assessment, and recommendations to commanders or supervisors regarding continued

fitness for duty and actions the MHP recommends be taken to assist with the continued treatment plan.

   (b)  Upon discharge, MHPs will provide, consistent with Reference (k), memorandums or copies of consultation reports to the commander or supervisor with sufficient clinical information and recommendations to allow the commander or supervisor to understand the Service member's condition and make reasoned decisions about the Service member's safety, duties, and medical care requirements.

  (5)  <u>Additional Patient Rights</u>.  The Service member has the right to contact a relative, friend, chaplain, attorney, any office of Inspector General (IG), and anyone else the member chooses, as soon as the Service member's condition permits, after admission to the hospital.

 e.  When a physician who is not an MHP admits a Service member pursuant to the referral for an MHE to be conducted on an inpatient basis, the physician will:

  (1)  Make reasonable attempts to consult with an MHP with admitting privileges prior to and during the admission (e.g., by telecommunications).

  (2)  Arrange for transfer to an MHP with admitting privileges as soon as practicable.

 f.  In the case of referral for an involuntary inpatient admission to a civilian facility, guidelines in Reference (l) will be considered and the process established under the law of the State where the facility is located will be followed.  If in a foreign country, the applicable laws of the host nation will be followed.


5.  <u>FITNESS AND SUITABILITY FOR SERVICE</u>

 a.  MHPs will report to commanders or supervisors who make CDEs, but in doing so will make the minimum necessary disclosure and, when applicable, will advise how the commander or supervisor can assist the Service member's treatment.  Additional information may be disclosed consistent with Enclosure 2 of Reference (k) as justified by other circumstances described there.

 b.  The providers will advise the commander or supervisor of any duty limitations or recommendations for monitoring or additional evaluation, recommendations for treatment, referral of the Service member to a Medical Evaluation Board for processing through the Disability Evaluation System in accordance with DoD Instruction 1332.18 (Reference (m)), or administrative separation of the Service member for personality disorder or unsuitability for continued military service under DoD Instruction 1332.14 (Reference (n)).  Any referral for consideration of potential separation from Military Service will be in accordance with Military Department procedures.

DoDI 6490.04, March 4, 2013

6. <u>DUTY TO TAKE PRECAUTIONS TO PROTECT OTHERS FROM HARM</u>

    a.  In any case in which a Service member has communicated to a privileged healthcare provider an explicit threat to kill or seriously injure a clearly identified or reasonably identifiable person, or to destroy property under circumstances likely to lead to serious bodily injury or death, and the Service member has the apparent intent and ability to carry out the threat, the responsible healthcare provider will make a good faith effort to take precautions against the threatened injury.  Such precautions include, but are not limited to:

        (1)  <u>Notifications</u>.  Privileged healthcare providers will notify:

            (a)  The Service member's commander or supervisor that the Service member is imminently or potentially dangerous.

            (b)  Military or civilian law enforcement authorities where the threatened injury may occur.

            (c)  Law enforcement of specifically named or identified potential victim(s).

            (d)  The Service member's commander or supervisor and any identifiable individuals who had been harmed or threatened harm by the Service member immediately before hospitalization about the Service member's pending discharge from inpatient status.

        (2)  <u>Recommendations and Referrals</u>.  The MHP will recommend as appropriate:

            (a)  Appropriate precautions to the Service member's commander or supervisor.

            (b)  Referral of the Service member's case to the Service's physical evaluation board.

            (c)  Admission of the Service member to an inpatient psychiatric or medical unit for evaluation and treatment.

            (d)  Administrative separation of the Service member to the commander or supervisor.

    b.  The provider will inform the Service member and document in the medical record that precautions have been taken.

7. <u>MEDICAL QUALITY MANAGEMENT CASE REVIEW</u>

    a.  Every MHE or treatment case in which a Service member ultimately commits an act resulting in suicide, homicide, serious injury, or significant violence will be systematically reviewed.  The findings will be used to inform patient care processes, risk management, and technical competence of staff members.

*DoDI 6490.04, March 4, 2013*

    b.  Reviews will focus upon the assessment, treatment, and clinical progress of the Service member, as well as the administrative recommendations and follow-through.  Quality reviews will be documented in the risk management record and, if appropriate, the credentials record.

    c.  The disposition and outcomes of Service members identified as being at increased risk of danger to self or others will be included in on-going quality management activities.  This will include review of a Service member's treatment over time, level of resolution, and ability to return to full duty.

8.  <u>COMPLAINTS OF REPRISAL FOR PROTECTED COMMUNICATION</u>.  Any Service member who believes a CDE is a reprisal for the Service member having made a protected communication may file a complaint with the DoD IG Hotline or a Military Department IG in accordance with Reference (j).

DoDI 6490.04, March 4, 2013

# GLOSSARY

## PART I. ABBREVIATIONS AND ACRONYMS

ASD(HA)                Assistant Secretary of Defense for Health Affairs

CDE                       command directed evaluation

IG                          Inspector General

MHE                       mental health evaluation
MHP                       mental healthcare provider

## PART II. DEFINITIONS

These terms and their definitions are for the purpose of this instruction.

<u>CDE.</u>  An MHE ordered by a commander or supervisor.

<u>commander</u>.  Any commissioned officer who exercises command authority over a Service member.  The term includes a military member designated in accordance with this instruction to carry out any activity of a commander under this instruction.

<u>emergency</u>.  Any situation in which a Service member is found or determined to be a risk for harm to self or others.

<u>good faith</u>.  A sincere belief without improper purpose.

<u>least restrictive alternative principle</u>.  A principle under which a Service member committed for hospitalization and treatment will be placed in the most appropriate and therapeutic setting available:

    That is no more restrictive than is conducive to the most effective form of treatment; and

    In which treatment is available and the risks of physical injury or property damage posed by such placement are warranted by the proposed plan of treatment.

<u>MHE.</u>  A psychiatric examination or evaluation, a psychological examination or evaluation, an examination for psychiatric or psychological fitness for duty, or any other means of assessing the mental health of a Service member.

*DoDI 6490.04, March 4, 2013*

<u>MHP</u>.  A psychiatrist or clinical psychologist, a person with a doctorate in clinical social work, or a psychiatric nurse practitioner.  In cases of outpatient MHEs only, licensed clinical social workers who possess a master's degree in clinical social work will also be considered MHPs.

<u>privileged healthcare provider</u>.  A MHP or other healthcare provider whose credentials for practice have been verified and have been granted permission to practice within the scope and defined limits of their current licensure, relevant education and clinical training.

<u>supervisor</u>.  A commissioned officer within or out of a Service member's official chain of command, or civilian employee in a grade level comparable to a commissioned officer, who:

   Exercises supervisory authority over the Service member owing to the Service member's current or temporary duty assignment or other circumstances of the Service member's duty assignment; and

   Is authorized due to the impracticality of involving an actual commanding officer in the member's chain of command to direct an MHE.

<u>voluntary self-referral</u>. The process of seeking information about or obtaining an appointment for an MHE or treatment initiated by a Service member without being ordered or directed by a commander or supervisor.