Exhibit D to the United States' Motion to Dismiss

*Seal v. United States*, Case No. 2:25-cv-442 (D. Me.)

**Army Regulation 600–8–4**

**Personnel-General**

# Line of Duty Policy, Procedures, and Investigations

**Headquarters**
**Department of the Army**
**Washington, DC**
**12 November 2020**

**UNCLASSIFIED**

# *SUMMARY of CHANGE*

AR 600–8–4
Line of Duty Policy, Procedures, and Investigations

This administrative revision, dated 26 October 2023—

o    Replaces stigmatizing language (throughout).

This administrative revision, dated 23 July 2021—

o    Adds clarification on how to fill out block 36 of the DA Form 2173 and block 10g on the DD Form 261 (para 2–5).

o    Changes where unit commanders sign on DA Form 2173 to block 40 (para 3–1).

o    Changes and adds clarification to military medical officers' roles and responsibilities in completing DA Form 2173 by completing block 16 (para 5–6).

o    Changes where units with no direct medical support transcribe International Statistical Classification of Diseases, tenth revision, codes to block 13 on DA Form 2713 (para 5–7*c*).

o    Changes where the commander will request a formal or informal investigation by selecting the appropriate box on DA Form 2173, SECTION II, block 37 (paras 5–8*b* and 5–8*c*).

This expedited revision, dated 12 November 2020—

o    Changes functional authority from the Commanding General, U.S. Army Human Resources Command to The Adjutant General (paras 1–7*d*, 4–17*a*(1–3), and 5–17*c* and *d*).

o    Changes the reviewing authority from "will be" to "may be" the same as the approving authority for Regular Army line of duty investigations (para 3–9).

o    Adds clarification on how to fill out blocks 10g and 11 on the DD Form 261 (Investigation, Report of Line of Duty and Misconduct Status) (para 3–12).

o    Changes "next of kin" to "court-appointed guardian" when requesting a not in the line of duty rebuttal on behalf of incapacitated Soldiers (para 3–12*b*(1)).

o    Adds an example situation that would rebut the presumption of in the line of duty for suicides and attempted suicides (para 4–12*b*).

o    Excludes Soldiers not in line of duty unfit (P3/4 profiles) conditions from one year appeal timeline (para 4–17*a*(3)).

o    Adds the process for the U.S. Army Physical Disability Agency and physical evaluation boards to request a review of non-duty related cases when it believes the case is actually duty related to U.S. Army Human Resources Command (para 4–19).

o    Changes the process for the U.S. Army Physical Disability Agency and physical evaluation boards to request a review of improperly submitted line of duty investigations (formal vs. informal) from the component level to U.S. Army Human Resources Command (para 4–19).

o   Updates guidance on the process for Reserve Component Soldiers to submit a line of duty determination up to 180 days from completion of duty (para 5–4*a*(1–3)).

o   Captures the requirement that Reserve Component Soldiers with more than 30 days of active duty do not require a line of duty investigation and authorizes care (para 5–4*b*).

o   Provides guidance on a memorandum in lieu of a DA Form 2173 (Statement of Medical Examination and Duty Status) in order to enter the Disability Evaluation System (para 5–4*c*).

o   Discusses restricted and unrestricted line of duty investigations (para 5–5*c*).

**Headquarters
Department of the Army
Washington, DC
12 November 2020**

**\*Army Regulation 600–8–4**

**Effective 12 December 2020**

**Personnel-General**

# Line of Duty Policy, Procedures, and Investigations

By Order of the Secretary of the Army:

**JAMES C. MCCONVILLE**
*General, United States Army
Chief of Staff*

Official:

*Kathleen S. Miller*

**KATHLEEN S. MILLER**
*Administrative Assistant
to the Secretary of the Army*

**History.** This publication is an administrative revision. The portions affected by this administrative revision are listed in the summary of change.

**Summary.** This regulation prescribes policies, procedures, and mandated tasks governing line of duty determinations of Soldiers who die or sustain certain injuries, illnesses, or diseases. It implements Titles 5, 10, and 32 United States Code. It takes precedence over all other Army publications relating to line of duty. The definition of "line of duty" in this regulation is confined to the purpose of this regulation and is completely distinct from usage under Section 2671, Title 28, United States Code. It has no bearing on the meaning or application of the phrase "acting within the scope of his office or employment" as used in the context of Section 2671, Title 28, United States Code.

**Applicability.** This regulation applies to the Regular Army, the Army National Guard/Army National Guard of the United States, and the U.S. Army Reserve, unless otherwise stated. It also applies to Individual Ready Reserves individual mobilization augmentees; members of the Reserve Officers' Training Corps Simultaneous Membership Program; cadets of the United States Military Academy; and cadets and students enrolled in Senior Reserve Officers' Training Corps and applicants for enrollment while engaged in a flight or in flight instruction authorized by Section 2110, Title 10, United States Code, or while performing authorized travel to, from, or while attending training or a practice cruise under Section 2109, Title 10, United States Code. During mobilization, the proponent may modify chapters and policies in this regulation.

**Proponent and exception authority.** The proponent of this regulation is the Deputy Chief of Staff, G–1. The proponent has the authority to approve exceptions or waivers to this regulation that are consistent with controlling law and regulations. The proponent may delegate this approval authority, in writing, to a division chief within the proponent agency or its direct reporting unit or field operating agency, in the grade of colonel or the civilian equivalent. Activities may request a waiver to this regulation by providing justification that includes a full analysis of the expected benefits and must include formal review by the activity's senior legal officer. All waiver requests will be endorsed by the commander or senior leader of the requesting activity and forwarded through their higher headquarters to the policy proponent. Refer to AR 25–30 for specific requirements.

**Army internal control process.** This regulation contains internal control provisions in accordance with AR 11–2 and identifies key internal controls that must be evaluated (see appendix E).

**Supplementation.** Supplementation of this regulation and establishment of command and local forms are prohibited without prior approval from the Deputy Chief of Staff, G–1 (DAPE–HR), 300 Army Pentagon, Washington, DC 20310–0300.

**Suggested improvements.** Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) directly to the Deputy Chief of Staff, G–1 (DAPE–HR), 300 Army Pentagon, Washington, DC 20310–0300.

**Distribution.** This regulation is available in electronic media only and is intended for the Regular Army, the Army National Guard/Army National Guard of the United States, and the U.S. Army Reserve.

## Contents (Listed by paragraph and page number)

**Chapter 1
Introduction,** *page 1*

*Section I
Information, page 1*
Purpose • 1–1, *page 1*
References and forms • 1–2, *page 1*
Explanation of abbreviations and terms • 1–3, *page 1*
Responsibilities • 1–4, *page 1*
Records management (recordkeeping) requirements • 1–5, *page 1*

Contents—Continued

*Section II*
*Responsibilities, page 1*
Chief, National Guard Bureau • 1–6, *page 1*
Deputy Chief of Staff, G–1 • 1–7, *page 2*
Chief, Army Reserve • 1–8, *page 2*
The Surgeon General • 1–9, *page 3*
Commanders of Army commands, Army service component commands, and direct reporting units • 1–10, *page 3*
Commanding General, U.S. Army Forces Command • 1–11, *page 4*
Commanding General, U.S. Army Training and Doctrine Command • 1–12, *page 4*
Commanding General, U.S. Army Materiel Command • 1–13, *page 4*
Immediate commanders • 1–14, *page 5*
Appointing authority • 1–15, *page 5*
The approval authority • 1–16, *page 6*

**Chapter 2**
**Program Elements,** *page 6*
Overview • 2–1, *page 6*
Requirements for line of duty investigations • 2–2, *page 6*
Benefits affected by line of duty Investigation • 2–3, *page 7*
Standards applicable to line of duty determinations • 2–4, *page 8*
Line of duty determination(s) • 2–5, *page 8*

**Chapter 3**
**The Line of Duty Investigation Process,** *page 9*

*Section I*
*Informal Line of Duty Investigations, page 9*
General • 3–1, *page 9*
Timeline • 3–2, *page 10*
Evidence collection • 3–3, *page 10*
Line of duty determination • 3–4, *page 10*
Forwarding the investigation • 3–5, *page 10*
Actions by appointing authority • 3–6, *page 11*

*Section II*
*Formal Line of Duty Investigations, page 11*
General • 3–7, *page 11*
Investigating officer • 3–8, *page 11*
Reviewing authority • 3–9, *page 11*
Timeline • 3–10, *page 11*
Evidence collection • 3–11, *page 12*
Formal investigation finding • 3–12, *page 13*

**Chapter 4**
**Special Considerations and Other Matters Affecting Line of Duty Investigations,** *page 13*
Relationship to disciplinary actions • 4–1, *page 13*
Criminal Investigation Division and safety investigations • 4–2, *page 13*
Combining investigations • 4–3, *page 13*
Time limitations for processing and initiating • 4–4, *page 14*
Legal • 4–5, *page 14*
Civilian reports and records • 4–6, *page 14*
Absent without leave • 4–7, *page 14*
Medical treatment or evaluation • 4–8, *page 15*
Traveling • 4–9, *page 16*
Intoxication and drug use • 4–10, *page 16*
General rule regarding mental responsibility • 4–11, *page 16*

Contents—Continued

Suicide or attempted suicide • 4–12, *page 16*
Vehicle accidents • 4–13, *page 17*
Firearm incidents • 4–14, *page 17*
Statements • 4–15, *page 18*
Soldier Recovery Unit • 4–16, *page 18*
Appeals • 4–17, *page 18*
Revision or correction of line of duty determinations • 4–18, *page 19*
Processing cases for physical disability evaluation • 4–19, *page 19*
Members of other Armed Services • 4–20, *page 19*
Limits on use of a line of duty investigation • 4–21, *page 19*

**Chapter 5**
**Line of Duty Determination Procedures for Soldiers of the Army National Guard and U.S. Army Reserve,** *page 20*
Army National Guard and U.S. Army Reserve procedures • 5–1, *page 20*
Prompt and accurate processing • 5–2, *page 20*
Responsibilities • 5–3, *page 20*
Entitlement to medical care, pay and allowances for Soldiers who incur an injury, illness, disease, or incur aggravation in the line of duty • 5–4, *page 21*
Reserve Component line of duty procedures for sexual assault • 5–5, *page 22*
Military medical officer • 5–6, *page 23*
Unit administrative action • 5–7, *page 23*
Unit commander's review • 5–8, *page 23*
The appointing authority • 5–9, *page 24*
Reviewing a completed formal line of duty investigation • 5–10, *page 24*
Investigating officer • 5–11, *page 24*
Reviewing authority • 5–12, *page 24*
Army National Guard Deputy State Surgeon and Health Services Specialist • 5–13, *page 24*
U. S. Army Reserve Command G–1 and Reserve readiness command • 5–14, *page 25*
Staff judge advocate review • 5–15, *page 25*
National Guard Bureau Personnel Division Administrators/U.S. Army Reserve Command Readiness Division Administrator • 5–16, *page 25*
The approval authority • 5–17, *page 25*
Notification to Soldier after the investigation for Army National Guard • 5–18, *page 25*
Notification to Soldier after the investigation for U.S. Army Reserve • 5–19, *page 26*

**Appendixes**

**A.** References, *page 27*

**B.** Guide for Investigating Officers, *page 31*

**C.** Procedures for Proposed Not in the Line of Duty Finding, *page 34*

**D.** Rules Governing Line of Duty and Misconduct Determinations, *page 35*

**E.** Internal Control Evaluation, *page 38*

**Figure List**

Figure C–1: Sample letter of not in the line of duty action, *page 34*

**Glossary**

# Chapter 1
# Introduction

## Section I
## Information

### 1–1. Purpose
This regulation prescribes policies and procedures for investigating the circumstances of injury, illness, disease, or death of a Soldier. It provides standards and considerations used in making line of duty (LOD) determinations.

### 1–2. References and forms
See appendix A.

### 1–3. Explanation of abbreviations and terms
See the glossary.

### 1–4. Responsibilities
Responsibilities are listed in section II of this chapter.

### 1–5. Records management (recordkeeping) requirements
The records management requirement for all record numbers, associated forms, and reports required by this publication are addressed in the Records Retention Schedule–Army (RRS–A). Detailed information for all related record numbers, forms, and reports are located in Army Records Information Management System (ARIMS)/RRS–A at https://www.arims.army.mil. If any record numbers, forms, and reports are not current, addressed, and/or published correctly in ARIMS/RRS–A, see DA Pam 25–403 for guidance.

## Section II
## Responsibilities

### 1–6. Chief, National Guard Bureau
The CNGB will—

*a.* Be responsible for LOD investigation and determination process for all non-mobilized Army National Guard (ARNG) Soldiers.

*b.* Act as approval authority for formal and informal LOD investigations for non-mobilized ARNG Soldiers. The CNGB may delegate this authority, but not lower than to field grade officers or Department of the Army (DA) Civilians in the grade of general schedule (GS)–12 or above within the G–1 Personnel Division. These delegations will not be further delegated, will be in writing, and will remain valid until revoked in writing. A copy of the delegation of authority memorandum will be included when exercised.

*c.* Ensure State/Territory Adjutants General provide a white cell for all demobilizing units (company-size or larger) from the unit's organic command. An individual of the white cell will be designated to officially complete and sign SECTION II of the DA Form 2173 (Statement of Medical Examination and Duty Status) for informal LODs.

*d.* Ensure all death investigations are forwarded to The Adjutant General, U.S. Army Human Resources Command (AHRC–PDC–C), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5405.

*e.* Ensure all not in line of duty (NLD) findings are forwarded to The Adjutant General, U.S. Army Human Resources Command (AHRC–PDC–C), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5405.

*f.* Ensure all LOD appeals are forwarded to The Adjutant General, U.S. Army Human Resources Command (AHRC–PDC–P), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5405.

*g.* For all investigations involving the death of an ARNG Soldier, provide 30-day investigative updates, until the investigation is complete, to The Adjutant General, U.S. Army Human Resources Command (AHRC–PDC–C), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5405.

*h.* When findings from an informal investigation require further review, request that a formal investigation will be conducted. At the conclusion of the formal investigation, the supporting legal office will determine if the findings are legally sufficient.

*i.* Ensure each state administrator is responsible for all ARNG electronic Medical Management Personnel System (eMMPS) operations in their state or territory. Their duties include, but are not limited to—

(1) Monitoring all state users requesting access to the eMMPS.

(2) Granting access approval to all authorized State users.

(3) Conducting annual training/certification for all State users on the Health Insurance Portability and Accountability Act (HIPAA) core.

(4) Training in the use of the eMMPS operations.

(5) Training the chain of command role users in their state.

(6) Monitoring all LOD information inputted by their state users.

(7) Verifying all LOD information for accuracy, completeness, and timeliness prior to submission to state or National Guard Bureau (NGB) for approval.

*j.* Provide quarterly update listings by name of all personnel delegated by the CNGB as approval authorities for formal and informal LOD investigations are provided to The Adjutant General, U.S. Army Human Resources Command (AHRC–PDC–P), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5405.

## 1–7. Deputy Chief of Staff, G–1

The DCS, G–1 will—

*a.* Publish policies and procedures related to LOD determinations.

*b.* Provide oversight throughout the LOD process, ensuring all LOD determinations are made in accordance with applicable published laws, regulations, directives, and policies.

*c.* Maintain functional responsibility for LOD determinations.

*d.* The following tasks are delegated to The Adjutant General (TAG) of the U.S. Army. TAG may further delegate these tasks, in writing, to a division chief within U.S. Army Human Resources Command (HRC) in the grade of colonel or the civilian equivalent.

(1) Have functional responsibility for LOD determinations and act for the Secretary of the Army (SECARMY) on all LOD determinations and appeals referred to Headquarters, Department of the Army and all exceptions to provisions described in this regulation.

(2) The approval authority to initiate the Disability Evaluation System (DES) process via memorandum in lieu of a DA Form 2173 and will coordinate with the CNGB and Chief, Army Reserve (CAR) to delegate this authority within their respective organizations.

(3) Take final action on all death investigations, to include overturning the approving authority recommendation.

(4) Take final action on all injury, illness, or disease LOD investigations with an NLD finding to include overturning the approving authority recommendation. Forward all NLD findings to: The Adjutant General, U.S. Army Human Resources Command (AHRC–PDC–C), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5405.

(5) Take final action on all LOD appeals to include overturning the approving authority recommendation. Forward all LOD appeals to: The Adjutant General, U.S. Army Human Resources Command (AHRC–PDC–P), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5405.

(6) Presumptive LOD determinations.

*e.* The following tasks are delegated to the Commanding General (CG), HRC. The CG, HRC may further delegate these tasks, in writing, to a division chief within HRC, in the grade of colonel or the civilian equivalent.

(1) Act as the appointing authority for Individual Ready Reserve (IRR) Soldiers.

(2) Act on behalf of the SECARMY as the final approval authority for LOD determinations for IRR.

## 1–8. Chief, Army Reserve

The CAR will—

*a.* Be responsible for the oversight of LOD investigation and determination process within the U.S. Army Reserve (USAR) for select Reserve Soldiers assigned to troop program units (TPUs), excluding drilling individual mobilization augmentees (DIMAs) (see AR 140–1 for assignment status).

*b.* Act as the approval authority for formal and informal LOD investigations for non-mobilized U.S. Army Reserve Command (USARC) Soldiers. The CAR may delegate this authority, but not lower than to field grade officers or DA Civilians in the grade of GS–12 or above within USARC G–1 and/or Office of the Chief of the Army Reserve. These delegations will not be further delegated, will be in writing, and will remain valid until revoked in writing. A copy of the delegation document will be included in all cases where delegated approval authority has been exercised.

*c.* Ensure all death investigations are forwarded to: The Adjutant General, U.S. Army Human Resources Command (AHRC–PDC–C), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5405.

*d.* Ensure all NLD findings are forwarded to: The Adjutant General, U.S. Army Human Resources Command (AHRC–PDC–C), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5405.

*e.* Ensure all LOD appeals are forwarded to: The Adjutant General, U.S. Army Human Resources Command (AHRC–PDC–P), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5405.

*f.* Provide 30-day investigative updates on all death investigations for USAR Soldiers until complete to: The Adjutant General, U.S. Army Human Resources Command (AHRC–PDC–C), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5405.

*g.* When findings from an informal investigation require further review, request that a formal investigation be conducted. At the conclusion of the formal investigation, the supporting legal office will determine if the findings are legally sufficient.

*h.* Ensure the Readiness Division (RD) assign administrative roles to be responsible for USAR eMMPS operations in their RD.

(1) Monitor all users requesting access to the eMMPS.

(2) Grant access approval to all major subordinate command (MSC) users.

(3) Responsible for HIPAA core and annual training/certification for all users.

(4) Responsible for training in the use of the eMMPS operations.

(5) Responsible for training the chain of command role users.

(6) Monitor unit level of LOD information.

(7) Ensure all LOD information is accurate, complete, and timely before submission to USARC G–1 for approval.

*i.* Provide quarterly update listings by name of all personnel delegated by the CG, USARC as approval authorities for formal and informal LOD investigations to: The Adjutant General, U.S. Army Human Resources Command (AHRC–PDC–P), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5405.

## 1–9.  The Surgeon General

TSG will—

*a.* Provide oversight of the LOD investigation and determination process within the U.S. Army Medical Command.

*b.* Coordinate with the Director, Defense Health Agency (DHA) to ensure medical treatment facility (MTF) commanders, military medical authorities (MMAs), or an authorized representative (attending physician, patient administrator, physician assistant, or nurse practitioner)—

(1) Complete SECTION I of DA Form 2173 and forward to the Soldier's unit commander. (An autopsy or death certificate is not required to initiate section 1 of DA Form 2173.)

(2) Make determinations that involve—

*(a)* Total physical incapacitation of a Soldier for more than 24 hours because of use of alcohol or other drugs.

*(b)* Determining whether medical conditions, to include diseases, existed prior to service (EPTS), whether the condition or disease was aggravated by service, whether the condition or disease was related to misconduct or negligence, and how the condition was incurred.

*c.* Coordinate with the Director, DHA to ensure a medical provider (physician, physician assistant, or nurse practitioner) reviews the medical condition and records of the Soldier to determine whether the condition EPTS and if so, determine service aggravation as defined in DoDI 1332.18. Attach the provider's memorandum to the DA Form 2173 and forward to the unit commander.

*d.* Coordinate with the Director, DHA to ensure that a military behavioral health expert prepares mental health assessments for suicides and attempted suicides.

*e.* Assist the investigating officer (IO) with obtaining the medical records of the Soldier subject of the LOD investigation.

## 1–10.  Commanders of Army commands, Army service component commands, and direct reporting units

The Commanders, ACOMs, ASCCs, and DRUs will—

*a.* Supervise the LOD investigation process under their area of operation as defined in AR 638–8, and will—

(1) Facilitate the LOD investigation process within their jurisdiction, ensuring all NLD injury, illness, or disease LOD investigations are routed through the assigned casualty assistance center (CAC).

(2) Ensure LOD investigations are initiated within the timelines specified in this regulation.

(3) Ensure LOD investigations are submitted in the proper format.

(4) Ensure DA Forms 2173 are initiated at the initial point of care when Soldiers are treated for a condition requiring an LOD.

(5) Train subordinate commanders on the purpose of LODs and how to complete DA Form 2173 and DD Form 261 (Investigation, Report of Line of Duty and Misconduct Status).

*b.* Ensure all subordinate commanders have access and are trained on how to complete DA Form 2173 and DD Form 261 in the eMMPS module where Reserve Component (RC) Soldiers are assigned and/or attached.

## 1–11. Commanding General, U.S. Army Forces Command

The CG, FORSCOM will—

*a.* Provide oversight of the LOD investigation and determination process during demobilization (DEMOB) of RC Soldiers (USAR and ARNG) and DIMA Soldiers to include injury, illness, disease, and death.

*b.* Initiate and complete informal LODs at DEMOB sites that were not initiated and completed on RC Soldiers for injuries, illness, or disease sustained during mobilization or deployment, prior to the Soldier being released from active duty (REFRAD). If a formal LOD is required, the DEMOB site will contact the respective component force provider for guidance.

*c.* Complete and sign SECTION II of the DA Form 2173 and the approval memorandum for RC Soldiers who DEMOB as drilling individual mobilization augmentees or Soldiers returning not as a part of a company or larger size element. The report will be entered into the eMMPS.

*d.* Ensure RC Soldiers are evaluated by a medical provider (physician, physician's assistant, or nurse practitioner) during the completion of a DD Form 2796 (Post Deployment Health Assessment (PDHA)), upon return from deployment. A DA Form 2173 is required for all conditions that require further medical consultation as a result of the Post Deployment Health Assessment.

*e.* The eMMPS module is the only approved mechanism for generating LODs for RC Soldiers. A hardcopy DA Form 2173, if generated in theater, will be scanned and used as supporting documentation for electronic version of the DA Form 2173 (see para 1–14d for other guidance).

## 1–12. Commanding General, U.S. Army Training and Doctrine Command

The CG, TRADOC will—

*a.* Ensure LODs are initiated and completed for injury, illness, disease, or death on all initial entry training, advanced training, or reclassification Soldiers (officers or enlisted) in the One Army School System (OASS). Ensure all EPTS conditions are considered before the LOD is completed.

*b.* Ensure all death investigations are forwarded to: The Adjutant General, U.S. Army Human Resources Command (AHRC–PDC–C), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5405.

*c.* Ensure all NLD findings are forwarded to: The Adjutant General, U.S. Army Human Resources Command (AHRC–PDC–C), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5405.

*d.* Ensure all LOD appeals are forwarded to: The Adjutant General, U.S. Army Human Resources Command (AHRC–PDC–P), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5405.

*e.* Ensure a 30-day investigative update is provided on all LODs until complete to The Adjutant General, U.S. Army Human Resources Command (AHRC–PDC–C), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5405.

## 1–13. Commanding General, U.S. Army Materiel Command

The CG, AMC, through the CG, U.S. Army Installation Management Command, will—

*a.* Ensure CACs—

(1) Process LOD investigations within the timelines specified in this regulation.

(2) Ensure LODs are initiated, reported, and submitted in the proper format for any injury, illness, disease, or death of a Soldier that requires an LOD investigation within their area of responsibility and in accordance with this regulation.

(3) Electronically submit detailed 30-day investigative updates to AHRC–PDC–C, until the investigation is completed and approved by the reviewing authority.

(4) Ensure all death investigations are forwarded to: The Adjutant General, U.S. Army Human Resources Command (AHRC–PDC–C), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5405.

(5) Ensure all NLD findings are forwarded to: The Adjutant General, U.S. Army Human Resources Command (AHRC–PDC–C), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5405.

*b.* Ensures garrison commanders with DEMOB sites sign the DA Form 2173 and provide an approval memorandum for informal LODs at the DEMOB sites. These approvals may be delegated to field grade officers only.

## 1–14. Immediate commanders

Immediate commander will—

*a.* Verify Soldier's duty status at the time of the incident. Attach a DA Form 31 (Request and Authority for Leave) or DA Form 4187 (Personnel Action), as applicable.

*b.* Evaluate the circumstances surrounding the injury, illness, disease, or death and determine if a formal investigation is required in accordance with paragraph 2–2.

*c.* Collect initial evidence to include serious incident report, casualty report, police, or Criminal Investigation Division (CID) report.

*d.* Ensure SECTION II of DA Form 2173 is completed and forwarded through channels to the appointing authority.

*e.* Forward completed DA Form 2173 along with all available evidence to the appointing authority for approval of an informal recommendation or appointment order for a formal investigation.

*f.* In informal injury, illness, or disease cases, informs Soldier of action taken by the appointing authority.

*g.* In informal death cases, provide a 30-day investigative update until investigation is complete and submitted to the approval authority for approval. The update will include evidence obtained to date, delays encountered, expected completion date and any other relevant issues or delays that is foreseen.

*h.* Ensure unit administrator or adjutant/S–1 uploads informal or formal investigation documents (DA Form 2173, DD Form 261, approval memorandum for informal LOD, IO's appointment order, IO's findings for an injury, illness, or disease investigation) which results in an in line of duty (ILD) finding into the Soldier's Interactive Personnel Electronic Records Management System (iPERMS). Medical records and CID reports are not to be uploaded.

## 1–15. Appointing authority

*a.* Generally, the LOD appointing authority is the special court-martial convening authority (SPCMCA) for the subject Soldier at the time the incident is reported.

(1) For Soldiers assigned to USAR TPU units and ARNG Soldiers not Federalized and/or not attending in OASS, the appointing authority is the first commander, in the grade of O–6 (or above), who exercises Uniform Code of Military Justice (UCMJ) authority over the Soldier.

(2) For individual mobilized Reserve Soldiers (IRR, DIMA, TPU, ARNG) the current unit of assignment during the mobilization is responsible for the investigation.

(3) When the subject Soldier is away from their unit (for example, leave, absent without leave (AWOL)), a SPCMCA aligned with the host CAC with responsibility for the area in which the incident occurred will be responsible for appointing the IO and conducting the LOD investigation.

*(a)* In the event that the Soldier's unit of assignment wishes to assume responsibility for and conduct the investigation the unit will contact and coordinate with the CAC and command with responsibility for the area in which the incident occurred in order to assume responsibility for the investigation.

*(b)* Once it is agreed that the unit of assignment will be responsible, the unit of assignment will appoint an IO and provide a copy of the IO appointment orders to the CAC with area of responsibility and host CAC.

(4) During a period when the Soldier and their unit are training or otherwise away from their assigned installation, the unit commander and the assigned installation remain responsible for conducting the LOD investigation. Supporting documents can be requested from the host CAC and MTF commander.

*b.* For formal LOD investigations, the appointing authority will—

(1) Appoint an IO to conduct an investigation of the circumstances surrounding the Soldier's injury, illness, disease, or death; the appointment must be in writing, cite this regulation as authority, state the reason for the appointment and designate a suspense date for submission of the report. The IO must be a disinterested (neutral, unbiased, impartial person who has nothing to gain or lose in the outcome of the investigation and is not in the Soldier's chain of command) commissioned or warrant officer senior by date of rank to the Soldier being investigated.

*(a)* Consider appointing the same officer to complete the AR 15–6 and LOD investigations, if both are required and the Soldier is at their home station at the time of incident.

*(b)* If the Soldier is outside of their home station, the IO can only be dual-appointed, if prior coordination between CACs/appointing authorities is complete.

(2) Require 30-day investigative updates from IO until the investigation is complete.

(3) Require a written legal review prior to approving or disapproving the IO findings. The servicing legal office will ensure that a legal review is performed. The legal review will follow the guidelines in AR 15– 6.

*(a)* Whether the proceedings complied with legal requirements, including the requirements established in the appointing memorandum.

*(b)* Whether there are errors and, if so, whether the errors are substantial or harmless; the effect, if any, that the errors had on the determinations and, what action, if any, is recommended to remediate the errors.

*(c)* Whether the findings of the investigation are supported by a greater weight of the evidence than supports a contrary conclusion.

*(d)* Whether the recommendations are consistent with the findings.

(4) Complete block 13 on the DD Form 261 and approve or disapprove the IO findings. Mandatory comments are required in block 19 on the DD Form 261 when disapproving the IO findings.

*c.* For formal LOD investigations, the appointing authority may delegate duties and responsibilities to other appropriate field grade staff officers who have demonstrated the appropriate LOD training. All delegations will be—

(1) In writing.

(2) Valid until revoked in writing.

(3) Not permit further delegation.

(4) Included with the LOD investigation report.

*d.* For informal LOD investigations (to include assigned mobilized USAR and ARNG Soldiers prior to DEMOB), the appointing authority is also the approving authority. Duties and responsibilities with respect to informal LOD investigations may not be delegated. An informal investigation also requires a written legal review before approval.

## 1–16. The approval authority

The first general court-martial convening authority (GCMCA) in the chain of command will—

*a.* Act as approval authority for formal LOD investigations with an ILD finding, NLD finding, or a death case, except as specified in paragraphs 1–6 and 1–8 through 1–12. Review LOD investigations for compliance with this regulation.

*b.* Make recommendations only for all death and NLD findings (see para 1–16*f*).

*c.* If desired, delegate approval authority in writing to a field grade officer or a DA Civilian in the grade of GS–13 or above. This delegation will not be further delegated. A copy of the delegation document will be included in all cases where delegated authority has been exercised.

*d.* Provide mandatory comments in block 21 on the DD Form 261 when disapproving the previous authority's finding.

*e.* In injury, illness, or disease cases that result in a finding of ILD, retain a copy and forward the original investigation to the unit commander who will inform the Soldier.

*f.* Forward all death cases and NLD recommendations to: The Adjutant General, U.S. Army Human Resources Command (AHRC–PDC–C), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5405 for final review and notification to the Soldier.

# Chapter 2
# Program Elements

## 2–1. Overview

The Army LOD Program is a commander's program which essentially protects the interest of both the Soldier and the U.S. Government where service is interrupted by injury, illness, disease, or death.

## 2–2. Requirements for line of duty investigations

LOD investigations determine duty status at the time of incident and whether misconduct was involved and, if so, to what degree. Additionally, LOD investigations may be required to determine an EPTS condition, and, if so, determine service aggravation.

*a.* An LOD investigation will be conducted for all Soldiers, regardless of Component, if the Soldier experiences a loss of duty time for a period of more than 24 hours and—

(1) The injury, illness, or disease is of lasting significance (to be determined by a physician, physician assistant, or nurse practitioner) (see para 5–4*b* for other guidance).

(2) There is a likelihood that the injury, illness, or disease will result in a permanent disability.

(3) If an RC Soldier requires follow-on care for an injury, illness, or disease incurred during a period of active duty.

*b.* An injury, illness, or disease diagnosed while serving on active duty or in a duty status as outlined in AR 638–8 does not mean that the injury, illness, or disease was incurred while serving on active duty or that an EPTS condition was service aggravated. An expert medical opinion from an appropriate provider is required and must address when the condition was incurred, if the condition existed prior to the current military service, and whether the condition was service aggravated (see para 4–8). If an LOD determination has been made during a period of prior military service

and the same condition arises in a subsequent period of military service, the prior determination will remain unchanged unless intervening events exist.

*c.* Depending on the circumstances of the case, an LOD investigation may or may not be required to make this determination. Only HRC can make a presumptive in line of duty (PILD) determination with the exception of identifying service connection for RC Soldiers who were previous members of one compo and transferred to another compo for which clear evidence is documented in the active duty medical records. In the situation described above (Regular Army (RA) to RC; ARNG to USAR; USAR to ARNG), the only individuals authorized to approve a PILD for the RC are individuals specified in the delegation of authority memorandum signed by TAG of the U.S. Army. Only USARC/NGB personnel on the delegated authority memorandum may initiate a PILD memorandum (non-fatal cases only) with proper medical documentation and a medical review from a physician, physician assistant, or nurse practitioner from the active duty medical records to support the injury, illness, or disease that may have been diagnosed and/or treated while on active duty. HRC is the only organization authorized to render a PILD finding in the following situations:

(1) In the case of injuries clearly incurred as a result of enemy action or attack by terrorists.

(2) In the case of death due to natural causes.

(3) Injury or death as a passenger in a common commercial carrier or military aircraft or vehicle.

*d.* In all other cases of injury, illness, disease, or death, except minor injuries that will not result in a permanent disability (for example, sprain, contusion, or minor fracture), an LOD investigation must be conducted.

(1) Conduct an informal LOD investigation in cases where no intentional misconduct or gross negligence is suspected.

(2) Conduct a formal LOD investigation in the following circumstances:

*(a)* Injury, illness, disease, or death that occurs under strange or doubtful circumstances or is apparently due to intentional misconduct or gross negligence.

*(b)* Injury, illness, or death involving the use of alcohol or other drugs.

*(c)* Self-inflicted injuries or suspected suicide.

*(d)* Injury, illness, or death incurred while AWOL.

*(e)* Injury or death that occurs while an individual was enroute to final acceptance in the Army.

*(f)* When a USAR or ARNG Soldier serving on orders for less than 30 days who becomes disabled due to injury, illness, disease, or death.

*(g)* When directed by higher authority (HRC, approval authority, or appointing authority).

*(h)* Conditions that the MTF commander or other medical provider determine EPTS.

*(i)* Injury or death of a USAR or ARNG Soldier while traveling to or from authorized training or duty.

*(j)* Death of a USAR or ARNG Soldier while participating in authorized training or duty.

*(k)* Under any circumstances the commander believes should be fully investigated.

(3) Currently a restricted LOD is authorized by the Army for sexual assault-related cases. Victims of sexual assault may receive medical care for sexually-related assaults through a restricted or unrestricted LOD investigation. Only the unit sexual assault response coordinator (SARC) is authorized to process restricted LODs.

*e.* At no time will an LOD be initiated, regardless of the circumstance(s), for a Soldier not in an authorized duty status at the time of injury, illness, disease, or death. A Soldier must be in an authorized duty status, as determined by the unit commander, before an LOD can be initiated.

*f.* Any Soldier, retired or separated from Service and requesting a LOD investigation be initiated and/or adjudicated, must submit a request and proper documentation to the Army Review Boards Agency.

## 2–3. Benefits affected by line of duty Investigation
The following are possible consequences of an LOD investigation:

*a. Extension of enlistment.* An enlisted Soldier who is unable to perform duties for more than one day because of their use of drugs or alcohol or because of disease or injury resulting from the Soldier's intentional misconduct is liable after returning to duty to serve for a period that, when added to the period that they served before the absence from duty, amounts to the term for which they were enlisted or inducted (see Section 972, Title 10, United States Code (10 USC 972)).

*b. Longevity and retirement multiplier.* Eligibility for increases in pay because of longevity and the amount of retirement pay to which a Soldier may be entitled depends on the Soldier's cumulative years of creditable service. An enlisted Soldier who is unable to perform duties for more than one day because of their intemperate use of drugs or alcohol or because of disease or injury resulting from misconduct is not entitled to include such periods in computing creditable service, in accordance with the Department of Defense (DoD) Financial Management Regulation.

*c. Forfeiture of pay.* Pay is forfeited for any Soldier on active duty who is absent from regular duties for a continuous period of more than one day because of disease or injury that is directly caused by and immediately following their use of unauthorized drugs or alcohol. Pay is not forfeited for absence from duty caused by injuries or a disease not directly caused by and immediately following the use of unauthorized drugs and alcohol. Forward, in a timely manner, pay adjustment document(s) to the Soldier's supporting military pay office (see 10 USC 972).

*d. Disability retirement and severance pay.* Soldiers who sustain permanent disabilities while on active duty must meet requirements of the applicable statutes to be eligible to receive certain retirement and severance pay benefits. One of these requirements is that the disability must not have resulted from the Soldier's intentional misconduct or gross negligence and must not have been incurred during a period of AWOL (see 10 USC 1201, 10 USC 1203, 10 USC 1204, and 10 USC 1206).

*e. Medical and dental care for Soldiers on duty other than active duty.* A Soldier of the ARNG/USAR is entitled to hospital benefits, pensions, and other compensation, similar to that for Soldiers of the RA for injury, illness, or disease incurred ILD, under the following conditions prescribed by law (see 10 USC 1074a):

(1) While performing active duty for a period of 30 days or less.

(2) While performing inactive duty training.

(3) While performing duty or service on funeral honors duty.

(4) While traveling directly to or from the place at which that Soldier is to perform or has performed—

*(a)* Active duty for a period of 30 days or less.

*(b)* Inactive duty training.

*(c)* Service on funeral honors duty.

(5) While remaining overnight immediately before the commencement of inactive duty training, or while remaining overnight, between successive periods of inactive duty training, at, or in the vicinity of the site of the inactive duty training.

(6) While remaining overnight immediately before serving on funeral honors duty, at or in the vicinity of the place at which the Soldier was to serve, if the place is outside reasonable commuting distance from the Soldier's residence.

*f. Benefits administered by the Department of Veterans Affairs.* In determining whether a veteran or their survivors or Family members are eligible for certain benefits, the Veterans Administration will make an independent decision with respect to benefit eligibility.

*g. Survivor Benefits Plan.* Makes the Survivor Benefits Plan available to eligible beneficiaries of Soldiers with less than 20 years' time in service, whose death HRC officially determines in the line of duty while on active duty without the benefit of being retired from active service (see AR 600–8–7).

## 2–4. Standards applicable to line of duty determinations

*a.* A Soldier's injury, illness, disease, or death is presumed to have occurred ILD unless rebutted by the evidence.

(1) Injury, illness, disease, or death proximately caused by the Soldier's intentional misconduct or gross negligence is "not in line of duty-due to own misconduct (NLD–DOM)."

(2) Simple negligence, alone, does not constitute misconduct and is, therefore, still considered to be ILD.

*b.* Consider all the evidence.

(1) All direct evidence, that is, evidence based on actual knowledge or observation of witnesses.

(2) All indirect evidence, that is, facts or statements from which reasonable inferences, deductions, and conclusions may be drawn to establish an unobserved fact, knowledge, or state of mind.

(3) No distinction will be made between the relative value of direct and indirect evidence. In some cases, direct evidence may be more convincing than indirect evidence. In other cases, indirect evidence may be more convincing than direct evidence (for example, statement of a witness).

*c.* Evaluate factors such as a witness's demeanor, opportunity for knowledge, information possessed, ability to recall and relate events, and relationship to the matter to be decided.

*d.* The rules in appendix D and the terms in section II of the glossary will be considered when making an LOD finding. The rules elaborate upon, but do not modify, the standards for making LOD determinations.

## 2–5. Line of duty determination(s)

One of the following eight determinations will be applied to the Soldier's injury, illness, disease, or death. On the DA Form 2173 or DD Form 261, if the finding is not listed on the current form, annotate the finding in block 36 of the DA Form 2173 and block 10g on the DD Form 261. Any NLD finding of an LOD investigation must be forwarded to: The Adjutant General, U.S. Army Human Resources Command (AHRC–PDC–C), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5405.

*a. In line of duty.*  The injury, illness, disease, or death did not occur while the Soldier was AWOL and was not due to the Soldier's own intentional misconduct or gross negligence. For USAR/ARNG Soldiers, the injury, illness, disease, or death occurred while the Soldier was in a duty status, as defined in AR 638–8 or direct travel status. This finding also applies in suicide cases when Soldiers are AWOL and considered mentally unsound at both the inception of AWOL and at time of death (mental soundness can only be determined by a behavioral health expert).

*b. Not in line of duty-not due to own misconduct.*  A formal investigation with supporting evidence, that the injury, illness, disease, or death occurred during a period when a Soldier was AWOL, was mentally sound at the inception of AWOL, and which was not directly caused by Soldier's own intentional misconduct or gross negligence (mental soundness can only be determined by a behavioral health expert). EPTS conditions typically falls under this determination.

*c. Not in line of duty-due to own misconduct.*  A formal investigation determined that the Soldier's injury, illness, disease, or death was proximately caused by the Soldier's own intentional misconduct or gross negligence. Mental soundness can only be determined by a behavioral health expert.

*d. In line of duty-existed prior to service-service aggravated.*  This finding is made when there is clear and unmistakable evidence the Soldier's injury, illness, or disease existed prior to service and the condition has been service aggravated. Aggravation will be determined by an appropriate provider in accordance with DoDI 1332.18. (Annotate in remarks section of DD Form 261, ILD–EPTS–SA). Mental soundness can only be determined by a behavioral health expert.

*e. Not in line of duty-existed prior to service-not service aggravated.*  This finding is made when there is clear and unmistakable evidence the member's injury, illness, or disease EPTS and the condition has not been service aggravated. Aggravation will be determined by an appropriate military provider in accordance with DoDI 1332.18. (Annotate in remarks section of DD Form 261, NLD–EPTS–NSA). Mental soundness can only be determined by a behavioral health expert.

*f. In line of duty-this episode only.*  This determination relates to a one-time event, where no serious injury or illness has occurred, but warranted the Soldier be attended to by a medical physician. This incident occurred while the Soldier was in an authorized duty status at the time of the incident. Treatment should be limited for this particular episode only. A RC Soldier is not authorized military treatment if episode occurs while not in an authorized duty status. A Formal LOD should be conducted to determine the cause of episode.

*g. Presumptive in line of duty-Reserved for U.S. Army Human Resources Command and Reserve Component for purposes of Soldiers transferring components only.*  HRC uses this determination in cases of hostile action, death of natural causes, or death of passengers in a commercial carrier or military vehicles (see para 2–2$c$(1–3)). Specific RC personnel (specified in the delegation of authority memorandum from the TAG of the U.S. Army) can use this determination in cases of Soldiers transferring between components with the proper medical documentation. (See para 2–2$c$ for eligible RC personnel and who is responsible within the RC and guidelines for issuing a PILD finding).

*h. No finding-reserved for U.S. Army Human Resources Command purposes only.*  Used in cases where an LOD investigation was completed but was not required in accordance with paragraph 2–2. If the RC has an LOD case and feels that a No Finding is necessary, the RC can send the case to AHRC–PDC–P, HRC will review and grant approval/disapproval on a case-by-case basis.

# Chapter 3
# The Line of Duty Investigation Process

## Section I

## Informal Line of Duty Investigations

### 3–1. General

The unit commander may, if approved by the appointing authority, elect to conduct an informal investigation so long as intentional misconduct or gross negligence is not suspected on the part of the Soldier and a formal investigation is not required in accordance with paragraph 2–2$d$(2). The unit commander will complete a DA Form 2173 as outlined in paragraph 1–13. A DD Form 261 is not to be used for informal investigations. By signing in block 40, the unit commander indicates that they have read this regulation, verified the Soldier's duty status, and confirmed that all information contained in the investigation is accurate. An informal LOD investigation can only result in a finding of ILD or EPTS.

### 3–2. Timeline

All informal LOD investigations must be initiated within 5 calendar days of the command's discovery of the injury, illness, disease, or death. When an informal investigation is not completed within the given time, the reasons the report is late should be included in the remarks section of DA Form 2173 (Statement of Medical Examination and Duty Status). The timeline for completing an informal investigation is no more than 60 days. If evidence required to support an ILD determination is not available within the prescribed time frame, the unit commander must provide the reason(s) in the 30-day investigative update to the appointing authority.

### 3–3. Evidence collection

The investigation will establish dates, places, persons, and events as conclusively and accurately as possible. It is essential to provide the approving authority with an accurate understanding of the incident. The commander must ensure that the investigation contains all relevant information to enable subsequent reviews, if required.

*a.* All findings of fact will be supported by exhibits. Copies of DA Form 31, military and/or civilian police reports, pertinent medical records to include prescription lists, toxicology reports, military orders, unit training schedule, medical opinions and autopsy reports, must be attached as exhibits (labeled A, B, C, and so forth), when appropriate.

*b.* If there is reason to believe the Soldier who is the subject of the LOD investigation has received medical treatment, for a condition related to the investigation, from a civilian doctor, the immediate commander must do the following:

(1) Request the Soldier present those applicable medical documents to the commander for consideration during the investigation.

(2) Advise the Soldier that failure to comply with the request could result in a finding of insufficient evidence, the initiation of a formal LOD investigation, or a NLD finding.

*c.* Warning from the immediate commander to the Soldier before requesting statements regarding injury or disease.

(1) A Soldier may not be required to sign a statement relating to the origin, incurrence, or aggravation of their injury or disease.

(2) Prior to requesting statements regarding injury or disease, the immediate commander must provide the Soldier with a rights warning in writing, and the Soldier must read and sign acknowledging that they understand their rights. A Soldier will be allowed to ratify a previously made statement once properly advised of their rights.

(3) If any such information is obtained directly from the Soldier, written or verbal, the statement attesting that the above warning was given to the Soldier must be attached to the DA Form 2173. Any written correspondence requesting information from the Soldier will also contain the above warning and be attached to the DA Form 2173. The Soldier must acknowledge that they understand their rights, in writing, for the rights warning to be valid.

*d.* If the Soldier is also suspected or accused of any offense under the UCMJ, the Soldier must be advised of their rights under UCMJ, Art. 31 and their right to counsel. A DA Form 3881 (Rights Warning Procedure/Waiver Certificate) should be used for such advice and must be signed by the Soldier.

*e.* The commander will review chapters 2, 3, and 4 for any additional procedures or special considerations before conducting and completing the investigation.

### 3–4. Line of duty determination

*a.* The final determination of an informal LOD investigation will only result in a determination of "ILD" with the exception of EPTS-Service Aggravated (EPTS–SA).

*b.* The determination that the Soldier was in an "authorized status" (duty, pass, leave, and so forth) does not by itself support a determination of ILD.

### 3–5. Forwarding the investigation

The commander will forward the investigation to the appointing authority for review and approval. The investigation should contain the following:

*a.* DA Form 2173.

*b.* Supporting evidence, as applicable.

(1) Statement or written correspondence indicating that the Soldier was advised in writing of their applicable right not to make a statement, and the Soldier's written acknowledgement.

(2) Police and/or CID report.

(3) Medical documents (toxicology, emergency room records, and so forth).

(4) Expert medical opinion addressing progression or aggravation of disease.

(5) USAR/ARNG: Proof of duty status to include— copy of military orders, DA Form 1380 (Record of Individual Performance of Reserve Duty Training), sign-in/sign-out rosters, leave and earning statements, DD Form 214 (Certificate of Release or Discharge from Active Duty), and so forth.

(6) Other documentation pertinent to the investigation (serious incident report, post deployment health assessment, and post deployment health reassessment).

### 3–6. Actions by appointing authority

*a.* If the appointing authority concurs with the unit commander's finding(s)—

(1) Obtains a legal review from the servicing staff judge advocate (SJA) or other designated legal advisor.

(2) Prepares and submits an approval memorandum which at a minimum contains the diagnosis, the date of injury "REVIEWED FOR COMPLETENESS," and appropriate LOD determination in accordance with paragraph 2–5. For ARNG/USARC, please see chapter 5 for informal process.

(3) For injury, illness, or disease cases return to S1 for final processing (iPERMS and filing in accordance with AR 25–400–2).

(4) For death cases forward to responsible CAC for final processing.

*b.* Non-concurs with unit commander's finding(s): Appoint IO to conduct formal LOD investigation (see sec II of this chapter).

### Section II

### Formal Line of Duty Investigations

### 3–7. General

A formal LOD investigation is required in cases outlined in paragraph 2–2*d*(2). An IO is appointed, by the appointing authority, in writing to investigate the circumstances and collect all available evidence of an incident (refer to paragraph 1–13*b*). The finding will be submitted on DD Form 261 through the responsible chain of command to the GCMCA as the approval authority.

### 3–8. Investigating officer

An IO will be a commissioned (no less than O2) or warrant officer (no less than CW2) who is senior in rank to the Soldier being investigated. Commanders will not assign chaplains as IOs, members, or advisors to investigative boards of officers. The IO will be familiar with the Investigating Officers Guide in appendix B. A legal advisor to the IO will be assigned in the appointment order. Once appointed, the IO will complete the investigation and forward to the appointing authority.

### 3–9. Reviewing authority

For RA Soldiers, the reviewing authority may be the same as the approving authority. The use of a reviewing authority in the RA is optional, and the approving authority has the discretion to designate, if desired, a reviewing authority in a particular investigation or as a matter of course in all investigations. If the reviewing authority and approving authority are the same person, that official will complete the approving authority section of the DD Form 261 only. The reviewing authority will—

*a.* Review the investigation for completeness and accuracy. The report of investigation may be returned through review channels for corrective action, if necessary.

*b.* Complete block 14 on the DD Form 261, approve or disapprove the appointing authority findings. Mandatory comments are required in block 20 on the DD Form 261 when disapproving the appointing authority's recommendation. The reviewing authority will state the reasoning for disapproval and state the new findings. The identity of the headquarters must be clear and include a complete address.

*c.* Attach delegation of authority documents, if applicable, and forward the report of investigation to the final approval authority.

### 3–10. Timeline

All formal LOD investigations must be initiated within 5 calendar days of the command's discovery of the injury, illness, disease, or death. In general, RC Soldiers have up to 180 days after completion of the qualified duty status to request consideration for an LOD determination absent special circumstances. Special circumstances are those that predate the 180-day period (for example, latent onset symptoms of post-traumatic stress disorder). If evidence required to support a determination is not available within the prescribed time frame, the IO must provide the reason(s) in the

30-day investigative update to the appointing authority, CAC, GCMCA, and The Adjutant General, U.S. Army Human Resources Command (AHRC–PDC–C), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5405. If evidence required to support a determination is not available within the prescribed time frame, the IO must request, in writing, an extension from the appointing authority.

### 3–11. Evidence collection

The IO will ascertain dates, places, persons, and events definitively and accurately. It is essential to provide the approving, reviewing, and approval authority with an accurate understanding of the incident. The IO must ensure that the investigation contains all available and pertinent evidence to support their findings.

*a.* Prior to requesting statements regarding injury, illness, disease, or death, the IO must provide the Soldier with a rights warning in writing, and the Soldier must read and sign acknowledging that they understand their rights.

(1) A Soldier may not be required to sign a statement relating to the origin, incurrence, or aggravation of their injury or disease. Any such signed statement against a Soldier's interests is invalid (see 10 USC 1219). Any Soldier, prior to being asked to sign any statements relating to the origin, incurrence, or aggravation of any injury or disease that the Soldier has suffered, must be advised of their right to not sign such a statement. A Soldier will be allowed to ratify a previously made statement once the Soldier has been properly advised of their rights.

(2) If the IO obtains any such information directly from the Soldier, written or verbal, the statement attesting that the above warning was given must be attached to the case file as supporting evidence. Any written correspondence requesting information from the Soldier will also contain the above warning and be attached to the case file, along with the Soldier's written acknowledgement of the rights warning.

*b.* If the Soldier is also suspected or accused of any offense under the UCMJ, the Soldier must be advised of their rights under UCMJ, Art. 31 and their right to counsel. A DA Form 3881 (Rights Warning Procedure/Waiver Certificate) should be used for such advice, and the Soldier's signature is required.

*c.* All findings of fact should be supported by exhibits and documented on a separate, detailed memorandum of findings.

*d.* The following is a non-exclusive list of evidence that may be included (as applicable) in formal reports of investigation conducted under the provisions of this regulation.

(1) *Law enforcement reports.* Civilian and/or military police reports provide an unbiased summary of the incident. The reports should contain any charges against the Soldier and should be considered when determining if misconduct or gross negligence is present. In most cases, HRC does not require a final CID report when taking action.

(2) *Pertinent medical records.* Medical records are critical in many cases to determine if simple negligence, misconduct, or gross negligence is present. A prescription list is essential evidence to consider. If there is reason to believe the Soldier who is the subject of the LOD investigation has received medical treatment, for a condition related to the investigation, from a civilian doctor, the immediate commander must do the following:

*(a)* Request the Soldier present those applicable medical documents to the commander for consideration during the investigation.

*(b)* Advise the Soldier that failure to comply with the request could result in a finding of insufficient evidence or a NLD finding.

(3) *Autopsy and/or toxicology reports.* Required if conducted.

(4) *Death certificate.* Particular attention should be given to the "manner of death." "Accident" as manner of death does not imply, nor should be interpreted as an absence of misconduct or gross negligence. If the IO questions the manner of death, military, and/or civilian authorities should be consulted for final resolution.

(5) *Sworn witness statements.*

*(a)* Statements from leadership concerning the military background of the Soldier (that is, pending legal or disciplinary actions, negative counseling, any command-directed programs).

*(b)* Statements pertaining to Soldier's social background will be attached as exhibits (labeled A, B, C, and so forth), when appropriate.

(6) *Mental health assessments.* In cases of suicide or attempted suicide, mental health assessments will be made pursuant to DHA or DoD policies and procedures. If DHA or DoD policies and procedures for these mental health assessments are not prescribed, the responsible MTF (nearest place of incident) behavioral health officer will review the evidence collected by the IO and render an opinion as to the Soldier's mental soundness at the time of the incident. The IO is not bound by the behavioral health opinion. When investigating a suicide or attempted suicide, the IO must consider the provisions of paragraph 4–12 of this regulation, and collect relevant evidence accordingly.

(7) *State of intoxication and extent of impairment of faculties.* Evidence regarding the state of intoxication and the extent of impairment of the physical or mental faculties of any person involved and connected with the incident, when relevant. Evidence as to the general appearance and behavior, clear and rational speech, coordination of muscular

effort, and all other facts, observations, and opinions of others bearing on the question of actual impairment will be made to estimate the quantity and nature of the intoxication agent used and the period of time over which used by the person. Results of any blood, breathe, urine, or tissue tests for the intoxicating agent should also be obtained and submitted (actual lab results if possible).

(8) *Miscellaneous.* Collect any information concerning the site and terrain where the incident occurred and also include any photographs, maps, charts, diagrams, or any other information that may be deemed helpful to obtain a complete understanding of the incident.

### 3–12. Formal investigation finding
The finding will be annotated on block 10g (see para 2–5 for determinations) and marked in block 11 on DD Form 261. For a finding of ILD–EPTS–SA or ILD-This Episode Only, select "In Line of Duty" and for NLD–EPTS–NSA, select "Not In Line of Duty - Not Due to Own Misconduct" in block 11 on the DD Form 261. Disregard the comment on DD Form 261 that states, "Do Not Complete in Death Cases."

*a.* All terms (see glossary, sec II) and rules (see app E) listed in this regulation must be considered along with the evidence when making the finding.

*b.* The first time a NLD finding is being contemplated against a Soldier in an injury, illness, or disease case, at any level, the individual considering the finding (IO, appointing authority, or approving authority) will notify the Soldier in writing of the proposed NLD finding and provide a copy of any supporting documents before the approval authority makes the official NLD finding.

(1) Once the initial notification has been made, the Soldier must be given ample time to rebut, normally 30 days, but the time period allowed is at the discretion of the individual providing the notification (IO, appointing authority, or approving authority). The 30-day response period will only be reduced after consultation with the legal advisor. If a Soldier is incapacitated, the notification will go to the court-appointed guardian or, in the absence of such an individual, to a person that the Soldier has designated to act in the matter. If there is no such person, the notification will go to the Soldier's primary next of kin.

(2) If there is no evidence that the Soldier has been notified in writing, any subsequent reviewer will assume the Soldier was not notified and proceed with initial notification.

(3) If the Soldier is unavailable for any reason, certified mail should be used and the mailing and/or return receipt (if any) will be attached to the LOD investigation.

(4) If no response is received in the given time period, the IO or subsequent reviewer may conclude the investigation and finalize their findings.

(5) If a response is received, the IO or subsequent reviewer will consider the response along with all evidence collected prior to making their finding.

## Chapter 4
## Special Considerations and Other Matters Affecting Line of Duty Investigations

### 4–1. Relationship to disciplinary actions
An LOD determination is an administrative action and is not to be used for punitive/judicial action. The LOD determination does not prohibit a commander from pursuing disciplinary and/or other administrative actions for the same incident.

### 4–2. Criminal Investigation Division and safety investigations
CID and reports of investigations conducted under the provisions of AR 15–6 may be used as evidence when making LOD determinations. Accident and safety investigations conducted under AR 385–10 and DA Pam 385–40 may not be used in order to safeguard privileged information; however, access to factual information such as safety reports is authorized under the provisions of AR 385–10.

### 4–3. Combining investigations
For efficiency, it is recommended that the same IO be used to conduct—

*a.* An LOD investigation for more than one person involved in the same incident; however, a "separate" LOD investigation must be conducted for each Soldier involved.

*b.* An AR 15–6 investigation, when also required.

### 4–4. Time limitations for processing and initiating

LOD actions must be completed within the time limits given in paragraphs 3–2 and 3–10.

*a.* In death cases, significant benefits to the survivors may be pending until unit leadership has reviewed the investigation and final action has been taken by HRC.

*b.* In injury, illness, or disease cases, final action by the medical evaluation board (MEB), physical evaluation board (PEB), and the U.S. Army Physical Disability Agency (USAPDA) may be pending an LOD determination.

*c.* In general, an RC Soldier has 180 calendar days from the end of the qualified duty status to request a LOD determination for the purpose of determining eligibility for medical and dental treatments and incapacitation pay entitlements, absent special circumstances (see DoDI 1241.01). Submission of Active Guard Reserve (AGR) LOD investigations, solely for the purpose of retirement, is not authorized. Exceptions to the 180-day timeline include: (1) A behavioral health diagnosis which may occur at some point beyond the 180-day period; (2) A Soldier is currently enrolled in the integrated DES (MEB/PEB) and a LOD is directed by the Physical Disability Agency; (3) The covered condition pre-dated the 180 day period (such as with latent onset symptoms of post-traumatic stress disorder).

*d.* In general, a Soldier who transfers from RA to RC has 180 calendar days from their separation date from RA to request an LOD determination, for the purpose of determining eligibility for medical and dental treatments and incapacitation pay entitlements, absent special circumstances. The accepting RC will initiate and/or adjudicate an LOD provided the Soldier can provide substantiating medical documentation to support an LOD determination. In RA–RC transfers, the Soldier can seek medical attention directly through the Veterans Administration using all current medical documentation.

*e.* For sexual assault-related incidents, medical entitlements for RC Soldiers are dependent on a LOD determination as to whether or not the sexual assault incident occurred in a duty status allowing such entitlements (see DoDI 6495.02, Volume 1).

### 4–5. Legal

*a. Support.* Due to the potential for serious and/or permanent consequences from a LOD finding, the unit commander (in informal investigations) and IO (in formal investigations) must obtain legal advice from the supporting SJA office. Legal support can also be useful if the IO experiences difficulties in obtaining reports and records from various civilian agencies.

*b. Due process rights.* Formal hearings and verbatim transcripts are not required, and the Soldier has no right to cross-examine witnesses. Any rights warning must be reflected by a written acknowledgement from the Soldier, and sworn statements are preferred if possible. Prior to any individual recommending or approving any finding other than "ILD," evidence against the Soldier must be presented to them as prescribed in paragraph 3–12*b* with appropriate time to respond. Soldiers subject to LOD investigation may seek legal advice from the servicing legal assistance office.

### 4–6. Civilian reports and records

During the course of the investigation, it may be necessary to obtain civilian police reports, medical records, coroner's reports, and so forth. This information is normally provided to the Provost Marshal's office or the MTF's patient administrator. The IO may request that military authorities obtain this information for them if the IO is experiencing difficulties, assistance and legal support may be sought from the servicing SJA.

### 4–7. Absent without leave

For any injury, illness, disease, or death incurred during a period of AWOL, the finding will be NLD unless a behavioral health provider has determined that the Soldier was mentally unsound, such that the Soldier did not possess the ability to form the intent to go AWOL. In cases of suicide or attempted suicide or suspected mental unsoundness, a behavioral health provider will render an opinion of the Soldier's mental soundness at both the inception of AWOL as well as at the time of incident. Any Soldier that is found not mentally sound at the time of inception and at the time of the incident will be handled as ILD. In cases of suicide or attempted suicide, a behavioral health provider assigned to the nearest military treatment facility will render an opinion as to the Soldier's mental soundness at both the inception of AWOL as well as at the time of incident.

*a.* To establish that a Soldier was AWOL for LOD purposes, it must be shown that at the time of the incident causing injury, illness, disease, or death, the Soldier—

(1) Was mentally sound.

(2) Voluntarily left their unit/organization or other place of duty without proper authority.

(3) Was absent from a scheduled duty or restriction at the time of injury or disease.

*b.* A requirement that a person be present at a specific time and place is an administrative restriction for LOD purposes. To confirm this, documentary or testimonial evidence to establish this requirement should be attached to the report of investigation.

*c.* If the driver of a government vehicle on an authorized trip is injured during an unjustified deviation from their assigned route, the driver should be considered AWOL for LOD purposes. A DA Form 4187 is not a requirement to be considered AWOL for LOD purposes but unit commanders should generate the forms when prescribed by other Army regulations.

*d.* The immediate commander reports absent Soldiers in accordance with AR 630–10.

*e.* Absences that are initially considered AWOL may only be changed by proper authority (see AR 630–10 for guidance).

*f.* If a Soldier has been granted leave or special pass, they will not be considered AWOL if they fail to sign out. Additionally, if a Soldier travels outside the authorized pass radius authorized by unit leadership, this in and of itself is not considered AWOL.

## 4–8. Medical treatment or evaluation

The following information addresses medical evaluations, operations, and treatment, elective surgeries, and EPTS conditions:

*a. Medical evaluation.* A medical evaluation solely to determine if the condition, which causes injury, illness, disease, or death, existed prior to service is required to determine service aggravation or service connection.

*b. Operations and treatment.*

(1) The LOD determination for surgery or treatment of an injury or disease generally will be the same as that required for the initial injury or disease.

(2) Any ill effect directly caused by treatment, anesthetic, or surgery will be considered "ILD" if such treatment, anesthetic, or surgery was not a criminal offense under Federal or State law and was administered or performed by an authorized person.

(3) In accordance with AR 40–400, elective care in civilian medical treatment facilities or from other civilian sources is not authorized at Army expense. Individuals choosing to seek medical/dental care outside the military health system, without prior approval pursuant to AR 40–400, do so at their own risk. An injury, illness, disease, or death caused by elective care provided by civilian sources could result in an NLD finding and preclude the Soldier from receiving disability benefits from the DES.

(4) Elective cosmetic procedures are not a TRICARE-covered benefit. However, a limited number of cosmetic surgery cases are permitted in the military. Personnel serving on active duty who undergo cosmetic surgery procedures must have written permission from their unit commander prior to scheduling the procedure. An injury, illness, disease, or death caused by unapproved cosmetic surgery provided by civilian sources could result in a NLD finding and preclude the Soldier from receiving disability benefits from the DES.

*(a)* A Soldier is presumed to have been in sound physical and mental condition upon entering active service except for medical defects and physical disabilities noted and recorded at the time of entrance.

1. The term "EPTS" may be added to a medical diagnosis if there is a preponderance of evidence the injury, illness, or disease or underlying condition existed prior to the current period of military service or it happened between periods of active service. Included in this category are chronic diseases with an incubation period that clearly prevents a conclusion that the injury, illness, or disease started during short tours of authorized training or duty.

2. During an examination, treatment, or diagnosis of the Soldier, a medical provider (to include appropriate specialists depending on the medical issue) will determine an EPTS condition. These providers will state on the DA Form 2173 whether the condition EPTS. The specialized physician will prepare a separate memorandum and attach to the DA Form 2173 explaining the Soldier's diagnosis, natural progression, and service aggravation of the condition. When determining service aggravation, the opinion of the medical provider, using medical records and all-inclusive periods of military orders will be used to support a conclusion that an EPTS condition was or was not aggravated by military service. If an EPTS condition was aggravated by military service, the determination will be "ILD." If an EPTS condition is not aggravated by military service, the determination will be "NLD–EPTS–NSA."

3. Specific findings of natural progress of the pre-existing injury or disease based upon well-established medical principles alone are enough to overcome the presumption of service aggravation.

4. Service aggravation is defined as a permanent worsening of a pre-service medical condition over and above the natural progression caused by trauma or the nature of military service. A permanent worsening of a condition, as a result of the performance of military duties, is required to find there is service aggravation.

*(b)* Eight Year Rule states an injury, illness, or disease is not considered to be EPTS for the following:

1. The Soldier has 8 years of total cumulative active Federal military service.

2. The Soldier must have been on active duty orders of greater than 30 days at the time the condition became unfitting as subsequently determined by the PEB.

## 4–9.  Traveling

In determining whether an injury, illness, or death of an RC Soldier was caused by any incident while traveling to or from an active duty order, or duties defined in paragraph 2–3*e*, consider—

*a.* Whether training was authorized or required, that is, complying with orders.

*b.* The hour travel began.

*c.* The time when the Soldier was scheduled to arrive for duty, or when the Soldier ceased to perform such duty.

*d.* The method of travel.

*e.* The travel time authorized.

*f.* Whether the best or most direct route was used.

*g.* The immediate cause of injury, illness, or death.

*h.* If death was due to disease, whether it existed before discharge or release, or whether it was contracted on or aggravated by active duty or duties defined in paragraph 2–3*e*.

## 4–10.  Intoxication and drug use

A Soldier who voluntarily becomes intoxicated is held to the same standards of conduct as one who is sober. While merely drinking alcohol is not misconduct, intoxication does not excuse misconduct.

*a.* If an injury is incurred as the proximate cause of voluntary intoxication, it is incurred as the result of misconduct. For intoxication alone to be the basis for determining misconduct with respect to a related injury there must be a clear showing that the Soldier's physical or mental faculties were impaired due to intoxication at the time of the injury, that the impairment was voluntary, and that the impairment was the proximate cause of the injury.

*b.* Development of a disease (cirrhosis of liver) that may be a result of the use of alcohol or other legal drugs is not misconduct. It would be considered as "ILD."

## 4–11.  General rule regarding mental responsibility

A Soldier may not be held responsible for their acts and their foreseeable consequences if, at the time of commission of such acts, as the result of mental disorder or disease, the Soldier was unable to comprehend the nature of such acts or to control their actions. That is, if the Soldier does not have the ability to form the intent to undertake the underlying conduct, then the Soldier is mentally unsound, and therefore not mentally responsible, for the purposes of LOD investigations.

## 4–12.  Suicide or attempted suicide

*a.* Suicide refers to a death resulting from purposeful action to result in one's own death. In order for suicide to constitute misconduct, the act of self-destruction must be intentional. A Soldier who is not mentally sound is incapable of forming intent, which is an essential element of intentional misconduct.

*b.* Due to the human instinct for self-preservation, suicide and bona fide suicide attempts create a rebuttable presumption that a Soldier who died by or attempted suicide lacked mental responsibility and was unable to comprehend the nature of or to control their actions. A failure to rebut this presumption will support a finding of ILD.

*c.* In the event of a suicide or attempted suicide, the mental health provider must identify, evaluate, and document mental and emotional disorders. A Soldier may not be held responsible for their acts if the Soldier was unable to comprehend the nature and quality or wrongfulness of their actions as a result of mental disorder or disease. Self-inflicted injuries or death arising from a Soldier's actions during such time that the Soldier lacked the mental capacity to appreciate the nature and quality, or wrongfulness of the Soldier's self-inflicted injury or death is considered "ILD."

*d.* When conducting a LOD investigation for a suicide or attempted suicide, the IO must request a behavioral health opinion to determine whether the Soldier was mentally sound (capable of forming intent) at the time of the incident, to be determined by all available evidence. The question of mental soundness can only be resolved by inquiring into and obtaining evidence of the Soldier's social background, actions, and mood immediately prior to the suicide or suicide attempt, to include troubles that might have motivated the incident and examinations or counseling by specially experienced or trained personnel. (Personal notes or diaries of a deceased Soldier are valuable evidence). The IO must consider the Soldier's deployment history and assigned duties while deployed when investigating suicide cases. In all cases of suicide or suicide attempts, a behavioral health officer will review the evidence collected to determine the bio-psychosocial factors that contributed to the Soldier's desire to end their life. The behavioral health officer will render an opinion as to the probable causes of the self-destructive behavior and whether the Soldier was mentally sound at the time of the incident.

*e.* If the Soldier is found mentally unsound, the behavioral health officer should determine whether the Soldier's mental condition was an EPTS condition aggravated by military service or was due to the Soldier's own misconduct.

*f.* In cases of suicide or attempted suicide during AWOL, mental soundness at the inception of the absence must be determined.

*g.* When manner of death cannot be determined by local or MMAs (for example, manner of death is "undetermined" but evidence suggests or supports suicide) further investigation or action may be required. This normally includes a coordinated effort by law enforcement and medical examiners to amend a previously issued death certificate. In some cases, the Armed Forces Medical Examiner may be asked to complete a full forensic psychological autopsy to assist in the process. This report is a thorough investigation into the Soldier's life history and may take in excess of one year to complete. This request is made through CID.

## 4–13. Vehicle accidents

A Soldier who operates a motor vehicle in a wrongful or grossly negligent manner that was the proximate cause of an injury, illness, or death may be found to have engaged in misconduct. Some factors when considering the reasonableness of behavior while operating a motor vehicle include, but are not limited to—

*a.* Speed of vehicle involved, as evidenced by testimony of witnesses, skid marks, condition of roads, and the damage to the vehicle.

*b.* Road factors, including all road characteristics, natural obstructions to the driver's vision, and traffic signs.

*c.* Distracted driving, the practice of driving a motor vehicle while engaged in another activity to include, but not limited to, non-hands free cell phone usage, texting, eating, reading, and personal hygiene.

*d.* Other vehicles, including any part played by them in creating the conditions that resulted in the accident.

*e.* Traffic conditions at the scene of the accident and their effect on the accident.

*f.* Traffic laws and regulations in force pertinent to the accident, including speed limits and required safety devices.

*g.* Light and weather conditions and their effect on driving conditions.

*h.* Mechanical condition of the vehicles involved.

*i.* Physical condition of the driver or drivers, including sobriety, fatigue, and exhaustion, and the effect of their physical condition on the accident.

*j.* Driving experience of the driver or drivers.

*k.* Whether safety devices, when installed, were being used at the time of the accident.

*l.* Whether the driver or drivers had a valid license and related endorsements (commercial, motorcycle, and so forth) and whether any restrictions (corrective lenses, day only, and so forth) were complied with.

*m.* The following information should be provided with respect to passengers:

(1) Conduct of passengers and their effect on the driver.

(2) Knowledge of driver impairment at the time the passenger entered the vehicle or had a reasonable opportunity to leave the vehicle once the impairment became known (medications, sleep, alcohol, illicit drugs, and so forth).

(3) Installation of safety devices and whether they were being used at the time of the accident.

*n.* Some factors to consider when determining negligence are, but not limited to, experience, licensing, learning permit, safety measures, safety classes, age, physical condition, and whether the ability to drive safely was influenced by voluntary intoxication or use of drugs.

## 4–14. Firearm incidents

The IO should document all of the relevant circumstances surrounding an incident involving self-inflicted gunshot wounds.

*a.* Since many firearm incidents/accidents occur with no witnesses other than the victim, it is imperative that advisement concerning the Soldier's rights set forth in accordance with paragraph 3–11 (formal investigation, if applicable), be given and documented before a Soldier is interviewed in the course of the investigation.

*b.* The following information should be included in the report of investigation:

(1) Date, time, place, and name of witnesses.

(2) Description of the physical location of the incident and the physical injuries sustained, including entry and exit wounds, if applicable.

(3) Description of the firearm and its mechanical condition, especially safety mechanisms and whether the safety mechanisms were used by the firearm handler.

(4) Description of firearm handler's formal training, experience, and familiarity with the firearm's mechanical condition, safety mechanisms, and proper use.

(5) Full disclosure of any psychological problems, disclosure of any mental impairment due to drugs or alcohol use, and, if applicable, statement of mental responsibility from a behavioral health provider.

**4–15. Statements**

Oral or written accounts of matters within the personal knowledge of individuals usually constitute an indispensable part of the evidence considered in an investigation. The Soldier's statement, if any (and subject to an appropriate rights advisement), as well as statements by witnesses, will be recorded on DA Form 2823 (Sworn Statement) when possible. Sworn statements carry more weight than unsworn statements and are the preferred form of evidence; however, persons making statements may be sworn at the discretion of the IO. An IO is authorized to administer oaths under UCMJ, Art.136 in the performance of their duty.

**4–16. Soldier Recovery Unit**

For Soldiers who are assigned to the Soldier Recovery Unit (SRU) without an approved or initiated LOD, it is the responsibility of the Soldier's parent command of which the Soldier was assigned at the time of the injury, illness, or disease to conduct and/or forward the LOD investigation to the SRU commander within the timeframe outlined in this regulation. The SRU commander will initiate informal LODs once reasonable attempts have been made to obtain the LOD from the parent unit without action.

*a.* For RC Soldiers medically evacuated from outside the continental United States (OCONUS) operations, the SRU commander will complete the LOD investigation within the timeframe outlined in this regulation.

*b.* For RC Soldiers not medically evacuated from OCONUS operations and require a completed LOD investigation for any injury, illness, or disease that occurred during a current activation of Federal Service, the Soldier will assist the SRU commander, by providing medical evidence and incident report(s) in completing the LOD investigation within the timeframe outlined in this publication.

*c.* For RC Soldiers requesting additional LODs for injuries/illnesses not associated with their medically evacuated condition or prior to the current activation of Federal Service, the Soldier's parent command of which the Soldier was assigned at the time of the injury, illness, or disease will conduct and/or forward the LOD investigation to the SRU commander within the timeframe outlined in this regulation.

**4–17. Appeals**

The following information addresses policy and procedures concerning appeals to NLD determinations:

*a.* The Soldier may appeal, in writing, within 30 days after receipt of the notice of the LOD determination to the approval authority of their unit. For appeals not submitted within the 30-day time limit, the reason for delay must be fully explained and a request for exception to the time limit justified. The appeal must be personally signed by the Soldier unless the Soldier is physically unable to sign or is determined by a court to lack decisionmaking capacity or pose a threat to self or others. In such cases, the appeal will include evidence of the condition that prevented the Soldier from personally signing. Appeals will be submitted as follows:

(1) If a Soldier is assigned within the geographic area of responsibility of the original approval authority or is a Soldier of the ARNG, the appeal will be sent through channels to the approval authority. The approval authority may change their previous determination of NLD to ILD if there is substantial new evidence to warrant it. If the approval authority determines that there is no basis for a change in the determination, it will be so stated by endorsement and the appeal will be sent to The Adjutant General, U.S. Army Human Resources Command (AHRC–PDC–P), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5405, for final review and determination.

(2) If a Soldier is no longer assigned in the geographic area of responsibility of the original approval authority, the Soldier may send the appeal directly to The Adjutant General, U.S. Army Human Resources Command (AHRC–PDC–P), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5405. To appeal, new evidence must be submitted.

(3) A Soldier with injury, illness, or disease has one year from the date of notification of NLD from The Adjutant General, U.S. Army Human Resources Command (AHR–PDC) to appeal a LOD determination to The Adjutant General, U.S. Army Human Resources Command (AHRC–PDC–P), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5405. To appeal, new evidence must be submitted. This excludes unfitting conditions for service (Permanent 3/4). Separation actions will continue whether the Soldier elects to attend a Non-Duty Related Physical Evaluation Board or honorable discharge. Under such afore mentioned conditions, the Soldier will be given 30 days to submit an appeal.

*b.* Qualified survivors of a deceased Soldier who passes away while serving on active duty before becoming eligible to receive retirement pay, may on behalf of the Soldier and for the same basis for which a Soldier could, appeal an NLD determination in a death case under the provisions of paragraph 4–17. The appeal must be submitted within 3 years from the date final action was taken by HRC.

*c.* A Soldier who incurs an injury, illness, or disease while serving on active duty may appeal an NLD determination under the provisions of paragraph 4–17. The appeal must be submitted within 18 months from the date final action was taken by HRC.

*d.* Any change made to the LOD finding requires notification of intent to overturn a finding to the Soldier or individual appealing on behalf of the Soldier by the approval authority or HRC.

*e.* Assistance with appeals may be obtained from the Soldier's supporting legal assistance office.

*f.* If the TAG agrees with NLD determination upon appeal, a Soldier or primary next of kin may appeal a NLD determination to Army Review Board Agency, 251 18th Street South, Suite 385, Arlington, VA 22202–3531. The Army Review Board Agency can only address issues after all administrative recourse or appeals available to the applicant have been exhausted.

## 4–18. Revision or correction of line of duty determinations

TAG of the Army, acting on behalf of the DCS, G–1 and acting for the SECARMY as delegated, may change a determination made under this regulation. The correct conclusion based on the facts must be shown. However, if the change is from ILD to NLD or, if other evidence is considered which supports a NLD determination, the Soldier must be informed of the proposed change, its basis, and their rights under paragraph 3–3*b*, and be given a chance to respond in writing in accordance with paragraph 3–12*b*. Any statement or evidence that the Soldier submits must be considered before taking corrective action. When a determination is changed after final action has been taken to award statutory benefits (such as entitlement to physical disability pay), it does not necessarily change the determination on the statutory award. Final statutory determinations, which are otherwise regular and approved by competent authority, may not normally be reopened or revoked. Exceptions may be considered with one of the following conditions:

*a.* In cases of fraud, mistake of law, mathematical miscalculations, or pertinent new evidence that was not considered at the time of original determination.

*b.* When reopening or revocation is permitted by the law granting the authority for the statutory determination in question.

## 4–19. Processing cases for physical disability evaluation

The USAPDA or PEB, when processing cases for physical disability separation, may request a review when they believe that a prior LOD finding may be incorrect, that an LOD investigation has been submitted improperly (informal vs. formal), or that a non-duty related case is actually duty related (based off of medical documentation). The PEB will send requests for review with supporting documentation to: The Adjutant General, U.S. Army Human Resources Command (AHRC–PDC–P), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5405, clearly detailing the reason for the review request.

## 4–20. Members of other Armed Services

When a member of an Armed Service other than the Army is injured, dies, or incurs a disease under circumstances that would warrant an investigation under this regulation, and it would be appropriate to conduct an investigation (for example, the individual is attached to an Army unit/command), the nearest command of the parent Service of the individual will be notified by the MTF commander pursuant to DHA or DoD policies and procedures or CAC. If requested, an appropriate investigation will be conducted and the report of investigation forwarded in accordance with the request. No further action need be taken within DA.

## 4–21. Limits on use of a line of duty investigation

An LOD determination will not be used for the following purposes:

*a. Disciplinary action and other administrative action.* A NLD determination is an administrative determination and not a punitive or judicial action. Disciplinary and other administrative actions, if warranted, will be taken independently of any LOD determination. A determination of ILD does not preclude separate disciplinary or administrative actions. An LOD determination is not binding on the issue of guilt or innocence of the Soldier in a separate disciplinary action, the issue of pecuniary liability in a financial liability investigation of property loss, or any other administrative determination.

*b. Reimbursement of medical expenses.* An LOD determination does not authorize the U.S. Government to recoup the cost of medical care from a Soldier. Soldiers on active duty for a period of more than 30 days cannot be denied treatment based on an LOD determination. However, future access to care may be limited by the LOD determination.

# Chapter 5
# Line of Duty Determination Procedures for Soldiers of the Army National Guard and U.S. Army Reserve

## 5–1. Army National Guard and U.S. Army Reserve procedures
This chapter governs the processing of LOD determinations for Soldiers in the USAR and ARNG.

## 5–2. Prompt and accurate processing
All LODs for RC Soldiers will be processed by using the electronic website eMMPS. An LOD must be completed promptly, to include 10 USC and 32 USC AGR RC Soldiers, as the determination will impact the Soldier's eligibility for Federal benefits, such as access to medical care, compensation, and disability entitlements. The LOD will not be entered into eMMPS until all required documentation is received, except in emergent care. A Soldier will not be separated or retire, without the Soldiers consent, while an LOD determination, MEB, or PEB is pending unless otherwise permitted by law. A formal LOD is required for disease incurred while performing annual training, inactive duty training, or ordered to active duty for less than 30 days.

## 5–3. Responsibilities
Commanders, medical officers, S1s, SJAs, unit administrators, noncommissioned officers, and RC Soldiers who learn of a Soldier's injury, illness, disease, or death that occurred under circumstances that might warrant an LOD investigation/determination must take an active role in ensuring that an investigation/determination is initiated, completed, and uploaded into eMMPS in a timely manner.

 *a.* DIMAs will be processed by the RA command to which they are assigned or attached. When an DIMA Soldier dies or incurs an injury, illness, or disease that warrants an LOD determination, the DIMA coordinator or RC liaison officer will initiate and coordinate with the RA command to ensure the LOD is completed and forwarded to The Adjutant General, U.S. Army Human Resources Command (AHRC–SG), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5405.

 *b.* IRR Soldiers are processed by the RA command to which they are assigned or attached when in an active status. The LOD for an injury, illness, disease, or death incurred while on active duty is the responsibility of the RA command to which the Soldier is assigned to include SRUs. The LOD will be initiated and completed before the IRR Soldier REFRADs. If the LOD cannot be completed prior to REFRAD, the commander will work with Reserve Personnel Management Directorate-HRC to extend the Soldier's orders appropriately. An LOD will be completed for any injury, illness, or disease for which the IRR Soldier is receiving treatment while assigned to a SRU that warrants an LOD. In exceptional cases the HRC Surgeon General's office (AHRC–SG) will complete an LOD after REFRAD (for example, post-traumatic stress disorder). Once the LOD is completed, it will be uploaded into the Soldier's personnel file, if approved. If the LOD is disapproved, it will be forwarded to AHRC–PDC–P for review.

 *c.* For RA Soldiers who have transferred or transitioned to the RC whose medical conditions are reported after the Soldier is a member of the RC, only the named personnel from the delegation of authority memorandum signed by the TAG of the U.S. Army may initiate a PILD memorandum with proper medical documentation and a medical review from a physician, physician assistant, or nurse practitioner from the active duty medical records to support the injury, illness, or disease that may have been diagnosed and/or treated while serving on active duty. This does not include RC Soldiers who are/were mobilized or who are/were in a federalized duty status.

 *d.* The S1 has overall responsibility for the management and processing of LOD's as outlined in this regulation.

 *e.* For Soldiers assigned to the IRR and ordered to perform muster duty, an LOD will be initiated by the muster officer in charge or authorized representative. DA Form 2173 and all supporting medical documents will be forwarded to: Commanding General, U.S. Army Human Resources Command (AHRC–SG), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5405 for processing and completion.

 *f.* For USAR, the Army Reserve Medical Management Center, the MSC or RD surgeon's office are responsible for assisting commanders in understanding the diagnosis, prognosis, and treatment plan for the Soldier and whether the injury, illness, or disease was caused or aggravated through military service while in a duty status or was EPTS. This responsibility includes making a definitive diagnosis that has not been accomplished by the initial treating MTF, initial civilian treatment facility, or Veterans Administration MTF.

 *g.* For ARNG, the State surgeon is responsible for assisting commanders in understanding the diagnosis, prognosis, and treatment plan for the Soldier and whether the injury, illness, or disease was caused or aggravated through military service while in a duty status or was EPTS. This responsibility includes making a definitive diagnosis that has not been accomplished by the initial treating MTF, initial civilian treatment facility or Veterans Administration MTF. The

State health services specialist (HSS) or State administrator has access to forward LOD to the State surgeon's office through eMMPS. Unit commanders who require assistance will need to forward LOD through the CNGB to the State HSS or State administrator in order to receive a State surgeon opinion.

### 5–4. Entitlement to medical care, pay and allowances for Soldiers who incur an injury, illness, disease, or incur aggravation in the line of duty

This guidance establishes criteria for initiating and processing LODs to ensure access to care and a timely resolution of Soldiers' medical conditions.

*a.* Soldiers will have up to 180 days following the completion of their qualified duty to request consideration for a LOD determination, absent special circumstances. Special circumstances are those in which the covered condition predates the 180-day period (for example, latent onset symptoms of post-traumatic stress and unreported sexual assault in accordance with paragraph 4–4*c*).

(1) At a minimum, Soldiers will provide—

*(a)* Medical and dental documentation from the period of qualified service (military, civilian, or U.S. Department of Veterans Affairs) sufficient to substantiate the medical condition.

*(b)* Documentation supporting a qualifying duty status at the time of the illness, disease injury, or death as applicable (for example, sign-in roster, DA Form 1380, Defense Finance and Accounting Service pay documentation (leave and earning statement/master military pay account), orders for periods of active duty, or DD Form 214 (Certificate of Release or Discharge from Active Duty)).

*(c)* DA Forms 3349 (Physical Profile) relevant to the condition.

(2) The component approving authority makes a decision on whether or not to grant the request for LOD determination. Upon approval or denial, uploads the approval/disapproval memorandum to the Soldier Treatment Record/Health Readiness Record, eMMPS, and iPERMS.

*(a)* For approvals, the component approving authority sends the decision in an endorsement memorandum to the requestor.

*(b)* For disapprovals, the component approving authority sends the decision in a memorandum detailing the rebuttal process to the requestor.

(3) The Soldier may request a one-time rebuttal, via memorandum, to the component approval authority. The component approval authority will determine whether or not there is substantial new evidence to warrant overturning the determination.

*(a)* If the component approval authority determines that there is no basis for a change in the determination, they will state the reason(s) for no change in a memorandum and will forward as an appeal to the appellate authority for final review and determination.

*(b)* If the component approval authority determines that there is basis for a change in the determination, they will state the reason(s) for change in a memorandum and will send the memorandum to the requestor.

*b.* A Soldier serving a period of active duty of more than 30 days is entitled to medical and dental care in any facility of any uniformed Service (pursuant to 10 USC 1074). LOD investigations are not required for injuries, illnesses, or diseases incurred while the Soldier was serving a period of active duty of more than 30 days that is not the result of the RC Soldier's gross negligence or misconduct.

*c.* Soldiers whose conditions arose and were documented during periods of prior active duty, who are subsequently referred to the DES while serving in the RC, will receive a memorandum in lieu of a DA Form 2173 (Statement of Medical Examination and Duty Status). This memorandum is referred to as the Integrated Disability Evaluation System Referral Memorandum (IDRM). The IDRM will grant approval to initiate the DES process in lieu of a DA Form 2173 for the referred condition. Soldiers reporting prior active duty conditions that are the basis for referral to the DES are responsible for providing the required documentation when requesting consideration for an LOD determination. The owning RC will review the following documents, at a minimum, in consideration of an LOD determination for referral to the DES:

(1) Medical and dental documentation from the prior period of service (military, civilian, or U.S. Department of Veterans Affairs) sufficient to substantiate the medical condition.

(2) Documentation supporting a qualifying duty status at the time of the illness or injury, as applicable (for example, active duty orders or DD Form 214 (Certificate or Release or Discharge from Active Duty)).

(3) DA Forms 3349 relevant to the referred condition.

*d.* LOD determinations for injury, illness, or disease that have no lasting effect, defined as not requiring follow-on care ultimately affecting a Soldier's overall health or career, will not be accepted in accordance with paragraph 2–2(a)(1). LODs where the diagnoses are minor and resolved without further medical care, including abrasions, generalized pain, headaches (not associated with behavioral health or other more serious, continuing issues such as

tumors), hernia, pregnancy, among others, are injuries or illness that leave no lasting effect on the Soldier or require hospitalization for further treatment. These are not appropriate cases for LOD determinations.

*e.* A Soldier requiring treatment for an emergency medical or dental condition while in a qualified duty status must have a DA Form 2173, proof of a qualified duty status and supporting medical documentation of the emergent condition submitted through eMMPS for initial medical care only. This authorizes emergent care, unless clear and unmistakable evidence shows the condition was the result of the member's gross negligence or misconduct. An LOD must be initiated within 10 days following completion of qualified duty to continue treatment, if indicated, for covered conditions. The appropriate DHA office will serve as the MMA for approval and authorization of emergency medical and dental treatment with a civilian provider. The LOD will be adjudicated within 30 days of completion of the qualified duty status to continue further medical and/or dental treatment.

*f.* The LOD determination is required to authorize follow-on medical and dental treatment for the covered condition(s). Under no circumstances will care be authorized after one year from diagnosis without being identified for referral to the DES. A Soldier must be referred to the DES when the criteria for referral is met in accordance with AR 40–502 and DoDI 1332.18.

*g.* Should the approval authority, at any time, find that the injury, illness, or disease was not incurred or aggravated in a qualified duty status or was the result of gross negligence or intentional misconduct, all authorizations for medical and dental treatment, incapacitation pay, travel and transportation allowances provided related to ILD determination must be terminated immediately. The Soldier is financially responsible for all treatment to include emergency treatment for noncovered condition(s), if a finding such as described above is rendered.

## 5–5. Reserve Component line of duty procedures for sexual assault

Members of the RCs, whether they file a restricted or unrestricted report, or no report, will have access to medical treatment and counseling for injuries, illness, and/or diseases incurred from a sexual assault inflicted upon a Soldier when performing active service, as defined in 10 USC 101, and inactive duty training.

*a.* Medical entitlements remain dependent on a LOD determination as to whether or not the sexual assault incident occurred in an active service or inactive duty training status. However, regardless of their duty status at the time that the sexual assault incident occurred, or at the time that they are seeking sexual assault prevention and response (SAPR) services, Soldiers can elect either the restricted or unrestricted reporting options and have access to the SAPR services of a SARC and a SAPR VA.

*b.* Any alleged collateral misconduct by a Soldier victim associated with the sexual assault incident will be excluded from consideration as intentional misconduct or gross negligence under the analysis required by 10 USC section 1074a(c) in LOD findings for healthcare to ensure sexual assault victims are able to access medical treatment and mental health services.

*c.* The following LOD procedures will be followed by RC commanders:

(1) To safeguard the confidentiality of restricted reports, LOD determinations may be made without the victim being identified to DoD law enforcement or command, solely for the purpose of enabling the victim to access medical care and psychological counseling, and without identifying injuries from sexual assault as the cause.

*(a)* Restricted LOD allows a sexual assault victim to confidentially disclose the details of their assault to specified individuals and receive medical treatment and counseling, without triggering the official investigative process. Sexual assault victims who are sexually assaulted and desire restricted reporting may only report the assault to the SARC, Victim Advocate (VA), or a healthcare provider.

*(b)* Unrestricted LOD follows the guidelines of the unrestricted reporting per AR 600–20 and is protected similar to the restricted LOD; however, it is more accessible based on the need to know.

(2) For LOD determinations for sexual assault victims, the CNGB and CAR will designate individuals within their respective organizations to process LODs for victims of sexual assault when performing active service, as defined in 10 USC 101, and inactive duty training.

*(a)* Designated individuals will possess the maturity and experience to assist in a sensitive situation, will have SAPR training, so they can appropriately interact with sexual assault victims, and if dealing with a restricted report, to safeguard confidential communications and preserve a restricted report (for example, SARCs and healthcare personnel). These individuals are specifically authorized to receive confidential communications for the purpose of determining LOD status.

*(b)* The appropriate SARC will brief the designated individuals on restricted reporting policies, exceptions to restricted reporting, and the limitations of disclosure of confidential communications as specified in DoDI 6495.02, Volume 1. The SARC and these individuals, or the healthcare provider, may consult with their servicing legal office, in the same manner as other recipients of privileged information, for assistance in how to protect confidential communications in restricted reports. Unauthorized disclosure may result in disciplinary action.

(3)  For LOD purposes, the victim's SARC may provide documentation that substantiates the victim's duty status as well as the filing of the restricted report to the designated official.

(4)  If medical or mental healthcare is required beyond initial treatment and follow-up, a licensed medical or mental health provider must recommend a continued treatment plan.

(5)  RC members who are victims of sexual assault may be retained or returned to active duty in accordance with DoDI 6495.02, Volume 1 and 10 USC 12323.

*(a)*  A request described in DoDI 6495.02, Volume 1 submitted by a Soldier must be answered with a decision within 30 days from the date of the request.

*(b)*  If the request is denied, the Soldier may appeal to the first general officer in their chain of command. A decision must be made on that appeal within 15 days from the date of the appeal.

## 5–6.  Military medical officer

The LOD determination process for RC Soldiers in an active duty status is initiated with a medical provider's review of the Soldier's injury, illness, or disease. For death cases, the LOD determination process for Soldiers serving on active duty is initiated at the time of death. The medical provider conducting the review should be the medical provider that first provided treatment, where possible.

*a.*  Based on the examination of the patient by the physician and medical documentation received, the provider will render a medical opinion that the Soldier's injury, illness, or disease was incurred ILD by completing block 14 of the DA Form 2173.

*b.*  The provider will provide medical documentation and a hand-written copy of SECTION I of DA Form 2173 to the patient administrator for the purpose of initiating the LOD in eMMPS.

*c.*  Upon completing the LOD in eMMPS, the patient administrator will forward the LOD to the Soldier's assigned command S1 for processing. The patient administrator will also file one copy of the LOD in the Soldier's medical records.

*d.*  The USARC or ARNG surgeon's office health care provider will review formal LODs and may review informal LODs as required/requested.

## 5–7.  Unit administrative action

The unit administrator will process the medical portion of the LOD and upload documentation provided by the patient administrator into eMMPS. The medical portion of the LOD will be forwarded to the unit commander.

*a. Informal determination.*  The unit commander will initiate the LOD investigation as an informal LOD unless a formal LOD is required by chapter 2. The unit commander reviews the circumstances of the case to ascertain if the Soldier's injury, illness, disease, or cause of death requires a formal investigation. The unit administrator completes the electronic DA Form 2173 in eMMPS using the hard copy provided by patient, medical provider, or State case managers.

*b. Formal determination.*  The unit administrator will initiate the LOD completing DA Form 2173. The unit commander will forward the DA Form 2173 to their higher command to initiate an investigation as a formal LOD if Soldier's injury, illness, disease, or death occurred in accordance with paragraph 2–2*d*. The unit administrator will complete electronic DA Form 2173 and initiate a military medical support office pre-authorization of initial medical care.

*c. No direct medical support.*  For those units without direct medical support, the Soldier must bring their medical documentation to the unit administrator to be transcribed into block 12, DA Form 2173, using International Statistical Classification of Diseases, tenth revision (ICD10), codes block 13. The unit administrator will upload all pertinent medical documentation into the eMMPS system.

## 5–8.  Unit commander's review

The unit commander must determine the purpose and which course of action to take regarding LOD investigations using the following:

*a. Line of duty for access to care.*  The LOD is comprised of the completed medical portion of sections I and II of DA Form 2173. SECTION I must contain a description and preliminary diagnosis of the Soldier's injury, illness, or disease, and the date it occurred. The commander's finding of the Soldier's duty status at the time the medical condition occurred, as well as the commander's signature, will be annotated in section II. Once the unit commander completes and signs section II of the DA Form 2173, the Soldier is authorized to receive medical care at government expense with authorization from the Defense Health Agency-Great Lakes, a military treatment facility, or the Veterans Administration and may initiate request for other benefits and compensation as authorized by law or regulation.

*b. Informal investigation.* Commanders will process the LOD investigation as an informal LOD unless a formal LOD is required by paragraph 2–2. The commander reviews the circumstances of the case to determine if the Soldier's injury, illness, disease, or cause of death requires a formal investigation. If no formal investigation is required, the commander will make the determination using the procedures for an informal LOD. The commander's recommendation regarding the injury, illness, disease, or death will be ILD if supported by a preponderance of the evidence. The commander will indicate this on the DA Form 2173, SECTION II, block 38 and the findings must be supported by factual evidence and/or documentation (see app B). If a finding of ILD is not supported by the evidence, the commander will request a formal investigation by selecting the appropriate box on DA Form 2173, SECTION II, block 37.

*c. Formal investigation.* If a formal LOD investigation is required or if the commander believes an investigation should be conducted due to potential intentional misconduct, negligence, or strange and unusual circumstances of a Soldier's injury, illness, disease, or death, the commander recommends on the DA Form 2173, SECTION II, block 37, that a formal investigation be conducted (see app B).

## 5–9. The appointing authority

Use paragraph 1–13 to determine the appointing authority. The appointing authority should be consistent throughout each case, initiating a formal LOD determination. If the appointing authority determines the case should be formally investigated, an IO is—

*a.* Appointed to conduct an investigation of the circumstances surrounding the Soldier's injury, illness, disease, or death.

*b.* Appointment must be in writing, citing this regulation as authority, stating the reason for the appointment and designating a suspense date for submission of the report.

*c.* The IO must be a disinterested (person who has nothing to gain or lose in the outcome of the investigation) commissioned or warrant officer senior by date of rank to the Soldier being investigated.

## 5–10. Reviewing a completed formal line of duty investigation

The appointing authority reviews the complete LOD investigation file and may—

*a.* Return the file to the IO for further investigation or reinvestigation.

*b.* Complete DD Form 261, block 13, and if applicable block 19.

*c.* Forward the file through the CNGB to the State HSS (ARNG only).

## 5–11. Investigating officer

The IO conducts the investigation in accordance with the rules set forth in appendix C, and forwards the investigation report and supporting appendices to the appointing authority.

## 5–12. Reviewing authority

The reviewing authorities for the ARNG and USAR are stated below in subparagraph 5–12*a* and 5–12*b*.

*a.* For ARNG Soldiers, the reviewing authority is the State Adjutant General (AG). The State AG may delegate this authority to a field grade officer or a DA Civilian in the grade of GS–12 or above on their staff.

*b.* For USAR Soldiers, the reviewing authority is the RD CG. The RD CG may delegate this authority to a field grade officer or a DA Civilian in the grade of GS–12 or above on their staff.

*c.* The reviewing authority will—

(1) Review the investigation for completeness and accuracy. The report of investigation may be returned through review channels for corrective action, if necessary.

(2) Complete block 14 on the DD Form 261, approve or disapprove the appointing authority findings. Mandatory comments are required in block 20 on the DD Form 261 when disapproving the appointing authority's recommendation. The reviewing authority will state the reasoning for disapproval and state the new findings. The identity of the headquarters must be clear and include a complete address.

(3) Attach delegation of authority documents, if applicable, and forward the report of investigation to the approval authority.

## 5–13. Army National Guard Deputy State Surgeon and Health Services Specialist

The Director, Army National Guard will ensure that ARNG Deputy State Surgeon and Health Services Specialist are responsible for—

*a.* Training the state authorized users on roles and responsibilities within eMMPS.

*b.* Monitoring all LOD cases input by users of their state.

*c.* Ensuring that all LOD cases are complete and accurate before submission to State approval or NGB.
*d.* Monitoring all users requesting access to eMMPS in their respective State.
*e.* Granting access approval for all State users.
*f.* Ensuring users are HIPAA compliant.
*g.* Correcting unit identification code for users.
*h.* Training users.
*i.* Corresponding LOD cases with State surgeon's office through eMMPS.
*j.* Corresponding LOD cases with State SJA through eMMPS.

## 5–14.  U. S. Army Reserve Command G–1 and Reserve readiness command
The USARC G–1 and Reserve readiness commands are responsible for—
*a.* Training the RD and operational and functional command level authorized users on roles and responsibilities within eMMPS.
*b.* Monitoring all LOD cases input by users.
*c.* Ensuring that all LOD cases are complete and accurate before submission to the health services branch within the respective RDs.
*d.* Monitoring all users requesting access to eMMPS in their respective commands.
*e.* Granting access approval for all users.
*f.* Ensuring users are HIPAA compliant.
*g.* Correcting unit identification code for users.
*h.* Training users.

## 5–15.  Staff judge advocate review
The SJA will review the IO's findings and recommendations for legal sufficiency and forward to the State HSS for ARNG or the regional readiness command administrator for USAR.

## 5–16.  National Guard Bureau Personnel Division Administrators/U.S. Army Reserve Command Readiness Division Administrator
The Director, Army National Guard will ensure that the NGB Personnel Division use procedures that conform to chapter 2 of this regulation for analyst actions. USARC will ensure that the Readiness Division Administrator use procedures that conform to chapter 2 of this regulation for analyst actions.
*a. Informal determination.* The NGB Personnel Division administrators/ USARC Readiness Division Administrator will process the LOD determination as an informal LOD unless a formal LOD is required in chapter 2. The NGB Administrator/ USARC RD Administrator reviews the circumstances of the case to determine if the Soldier's injury, illness, disease, or cause of death requires a formal investigation. The NGB Administrators/ USARC RD Administrator will create a findings memorandum.
*b. Formal determination.* The NGB Administrator/USARC RD Administrator will process the LOD determination as a formal LOD if Soldier's injury, illness, disease, or death occurred in accordance with chapter 2. The NGB Administrator/USARC RD Administrator creates an Appeal's memorandum for a NLD finding.

## 5–17.  The approval authority
See paragraph 1–16 to determine the approval authority. The approval authority reviews the complete investigation file and may—
*a.* Return the file to the reviewing authority for additional action or missing documents.
*b.* Approve determination for an LOD with a finding of ILD.
*c.* Recommend a finding for an LOD with a finding of NLD to: The Adjutant General, U.S. Army Human Resources Command (AHRC–PDC–C), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5405.
*d.* Recommend a finding for any death case to: The Adjutant General, U.S. Army Human Resources Command (AHRC–PDC–C), 1600 Spearhead Division Avenue, Fort Knox, KY 40122–5405.

## 5–18.  Notification to Soldier after the investigation for Army National Guard
The S1/HSS servicing the Soldier's unit commander will provide the Soldier a copy of the LOD determination. If the finding is NLD, inform the Soldier of the appeal process. AHRC–PDC–C will provide a determination for all NLD findings.

**5–19. Notification to Soldier after the investigation for U.S. Army Reserve**
The Soldier's unit commander or the intermediate commander will provide the Soldier with a copy of the LOD determination. If the finding is NLD, inform the Soldier of the appeal process. AHRC–PDC–C will provide a determination for all NLD findings.

## Appendix A

## References

### Section I

### Required Publications

Unless otherwise indicated, all Army publications are available on the Army Publishing Directorate website at https://armypubs.army.mil. DoD publications are available on the Executive Services Directorate website at https://www.esd.whs.mil. USCs are available on the USC website at https://uscode.house.gov.

**AR 15–6**
Procedures for Administrative Investigations and Boards of Officers (Cited in para 1–15*b*(1)(*a*).)

**AR 40–400**
Patient Administration (Cited in para 4–8*b*(3).)

**AR 140–1**
Mission, Organization, and Training (Cited in para 1–8*a*.)

**AR 630–10**
Absence Without Leave, Desertion, and Administration of Personnel Involved in Civilian Court Proceedings (Cited in para 4–7*d*.)

**AR 638–8**
Army Casualty Program (Cited in para 1–10*a*.)

**DoDI 1300.18**
DoD Personnel Casualty Matters, Policies, and Procedures (Cited in para B–1*b*.)

**DoDI 1332.18**
Disability Evaluation System (Cited in para 1–9*c*.)

**DoDI 6495.02, Volume 1**
Sexual Assault Prevention and Response: Program Procedures (Cited in para 4–4*e*.)

**UCMJ, Art. 31**
Compulsory self-incrimination prohibited (Cited in para 3–3*d*.)

**UCMJ, Art. 136**
Authority to administer oaths and to act as notary (Cited in para 4–15.)

**10 USC 972**
Members: effect of time lost (Cited in para 2–3*a*.)

**10 USC 1074a**
Medical and dental care: members on duty other than active duty for a period of more than 30 days (Cited in para 2–3*e*.)

**10 USC 1201**
Regulars and members on active duty for more than 30 days: retirement (Cited in para 2–3*d*.)

**10 USC 1203**
Regulars and members on active duty for more than 30 days: separation (Cited in para 2–3*d*.)

**10 USC 1204**
Members on active duty for 30 days or less or on inactive-duty training: retirement (Cited in para 2–3*d*.)

**10 USC 1206**
Members on active duty for 30 days or less or on inactive-duty training: separation (Cited in para 2–3*d*.)

**10 USC 1219**
Statement of origin of disease or injury: limitations (Cited in para 3–11*a*(1).)

**21 USC 812**
Schedules of controlled substances (Cited in glossary.)

**28 USC 2671**
Definitions (Cited in glossary.)

**Section II**

**Related Publications**

A related publication is a source of additional information. The user does not have to read it to understand this publication. Unless otherwise indicated, all Army publications are available on the Army Publishing Directorate website at https://armypubs.army.mil. DoD publications are available on the ESD website at https://esd.whs.mil. USCs are available on the USC website at https://uscode.house.gov.

**AR 11–2**
Managers' Internal Control Program

**AR 15–185**
Army Board for Correction of Military Records

**AR 25–22**
The Army Privacy and Civil Liberties Program

**AR 25–30**
Army Publishing Program

**AR 25–55**
The Department of the Army Freedom of Information Act Program

**AR 25–400–2**
Army Records Management Program

**AR 27–20**
Claims

**AR 40–3**
Medical, Dental, and Veterinary Care

**AR 40–66**
Medical Record Administration and Healthcare Documentation

**AR 40–502**
Medical Readiness

**AR 135–18**
The Active Guard Reserve Program

**AR 135–200**
Active Duty for Missions, Projects, and Training for Reserve Component Soldiers

**AR 135–210**
Order to Active Duty as Individuals for Other than a Presidential Reserve Call-up, Partial or Full Mobilization

**AR 385–10**
The Army Safety and Occupational Health Program

**AR 600–8–7**
Retirement Services Program

**AR 600–8–104**
Army Military Human Resource Records Management

**AR 600–20**
Army Command Policy

**AR 600–110**
Identification, Surveillance, and Administration of Personnel Infected with Human Immunodeficiency Virus

**AR 635–40**
Disability Evaluation for Retention, Retirement, or Separation

**DA Pam 25–403**
Army Guide to Recordkeeping

**DA Pam 385–40**
Army Mishap Investigations and Reporting

**DoDI 1241.01**
Reserve Component (RC) Line of Duty Determination for Medical and Dental Treatments and Incapacitation Pay Entitlements

**DoDI 6490.04**
Mental Health Evaluations of Members of the Military Services

**UCMJ, Art. 15**
Commanding officer's non-judicial punishment

**5 USC 8140**
Members of the Reserve Officers' Training Corps

**10 USC 101**
Definitions

**10 USC 115**
Personnel strengths: requirement for annual authorization

**10 USC 1074**
Medical and dental care for members and certain former members

**10 USC 2109**
Practical military training

**10 USC 2110**
Logistical support

**10 USC 12323**
Active duty pending line of duty determination required for response to sexual assault

**32 USC**
National Guard

**32 USC 503**
Participation in field exercises

**32 USC 504**
National Guard schools and small arms competitions

**32 USC 505**
Army and Air Force schools and field exercises

**38 USC 105**
Line of duty and misconduct

**Section III**

**Prescribed Forms**

Unless otherwise indicated, DA Forms are available on the Army Publishing Directorate (APD) website at https://armypubs.army.mil; DD Forms are available on the Executive Services Directorate website at https://www.esd.whs.mil.

**DA Form 2173**
Statement of Medical Examination and Duty Status (Prescribed in para 1–6*c*.)

**DD Form 261**
Investigation, Report of Line of Duty and Misconduct Status (Prescribed in para 1–10*a*(5).)

**Section IV**

**Referenced Forms**

Unless otherwise indicated, DA Forms are available on the Army Publishing Directorate (APD) website at https://armypubs.army.mil; DD Forms are available on the Executive Services Directorate website at https://www.esd.whs.mil.

**DA Form 11–2**
Internal Control Evaluation Certification

**DA Form 31**
Request and Authority for Leave

**DA Form 1379**
U.S. Army Reserve Components Unit Record of Reserve Training

**DA Form 1380**
Record of Individual Performance of Reserve Duty Training

**DA Form 2028**
Recommended Changes to Publications and Blank Forms

**DA Form 2823**
Sworn Statement

**DA Form 3349**
Physical Profile

**DA Form 3881**
Rights Warning Procedure/Waiver Certificate

**DA Form 4037**
Officer Record Brief

**DA Form 4187**
Personnel Action

**DD Form 214**
Certificate of Release or Discharge from Active Duty

**DD Form 2796**
Post Deployment Health Assessment (PDHA)

## Appendix B

## Guide for Investigating Officers

### B–1. Duty

*a.* The IO must be a disinterested (neutral, unbiased, impartial) person who has nothing to gain or lose in the outcome of the investigation and not in the Soldier's chain of command, and be a commissioned or warrant officer senior by date of rank to the Soldier being investigated. Requests for exceptions must be submitted to and approved by AHRC–PDC–P. The IO will determine all the facts leading up to and connected with a death, injury, illness, or disease. After a review of all documents the IO will render a comprehensive detailed report, which will include recommended findings of whether or not the injury, illness, disease, or death occurred ILD or not. The report must contain enough pertinent data to enable subsequent reviews to be made without additional information.

*b.* In accordance with DoDI 1300.18, an investigative update is required every 30 days until complete. The 30-day update will be submitted to the appointing authority and the reporting CAC. The update will include evidence obtained to date, delays encountered, expected completion date and any other relevant issues or delays that is foreseen.

### B–2. Investigating the circumstances

The IO will ascertain dates, places, persons, and events definitively and accurately. The IO will also consult with the appointed legal advisor. The IO will consult with the legal advisor before beginning the investigation and as often as necessary during the investigation, especially regarding sensitive reports.

*a. Obtainment of pertinent records.* The IO will obtain copies of all pertinent records including—

(1) *All relevant facts with respect to the duty, leave, pass, or absent without leave status of the Soldier at the time of the incident resulting in death, injury, illness, or disease.* When the Soldier is a member of the USAR or ARNG, include a copy of the current military orders (DA Form 1379 (U.S. Army Reserve Components Unit Record of Reserve Training) Active Guard Reserve, annual training orders, and so forth).

(2) *All relevant military police reports, including extracts of summaries of the Criminal Investigation Division.* The release of military police and/or CID reports or information may not be immediately available or releasable to the LOD IO when there is a concern that the release could interfere with ongoing investigative or prosecutorial efforts.

(3) *All relevant civilian police reports.* While civilian agencies will make traffic investigations available to an IO, CID assistance may be necessary to obtain civilian reports of criminal investigations.

(4) *All relevant medical reports including autopsy, toxicology, and analysis of blood (to include legal blood alcohol test, prescription lists, emergency room, death certificate (if applicable)).*

(5) *When relevant, information concerning the site and terrain at the place of incident to include photographs, maps, charts, diagrams, or other exhibits which may be helpful in order to completely understand the incident.*

(6) *Witness statements from—*

(a) *Soldier's unit leadership.* Any facts concerning the Soldier which may be relevant (Army Substance Abuse Program history, favorable or unfavorable developmental counseling, administrative actions, Art 15 and UCMJ actions and so forth) to complete the investigation.

(b) *Any other witnesses to the incident itself.*

*b. Obtaining mental soundness opinions.* For cases involving a suicide attempt or suicide, obtain a mental soundness opinion from a behavioral health expert (see para 4–12). The following responsibilities apply:

(1) *General rule.* A Soldier may not be held responsible for their acts and their foreseeable consequences if, as the result of mental disorder or disease, the Soldier was unable to comprehend the nature of such acts or to control their actions. That is, if the Soldier does not have the ability to form the intent to undertake the underlying conduct, then the Soldier is mentally unsound for purposes of LOD investigations.

(2) *Presumption.* In the absence of evidence to the contrary, all Soldiers are presumed to be mentally responsible for their acts. The presumption may be rebutted by a preponderance of the evidence. The Soldier's mental soundness must be established before a NLD determination can be made.

(3) *Suicide or attempted suicide.* Suicide and bona fide suicide attempts create a rebuttable presumption that a Soldier who died by or attempted suicide lacked mental responsibility and was unable to comprehend the nature of or to control their actions.

*c. Obtaining a statement by subject (formal injury, illness, or disease cases).* The IO will attempt to obtain a sworn statement by the subject of the investigation in injury/illness cases. If the subject is unable or unwilling to make a statement, the IO must include an explanation in the report as to why there is no such statement included in the report in accordance with appendix C–2, (c), (4a), and (4b). The IO must be familiar with—

(1) *Section 1219 rights.* In all cases, the subject of the investigation must be advised before being interviewed that: "A member of an armed force may not be required to sign a statement relating to the origin, incurrence, or aggravation of a disease or injury that (they) have. Any such statement against their interest, signed by a member, is invalid." (10 USC 1219).

(2) *Article 31 rights.* Advise the subject of their rights under UCMJ, Art. 31, only if you suspect the commission of an offense. Consult with the appointed legal advisor on the form of the advice. Soldiers must receive a rights warning in writing and the Soldier must sign and acknowledge that they understand their rights.

(3) *Witness statements.* Obtain statements of witnesses with relevant information. If witnesses are not available for personal interview, obtain copies of available sworn or unsworn statements made by those witnesses to other investigators. If no such statements are available, arrange where possible, for others to take the statements.

(4) *Advising witnesses.*

*(a)* Section 1219 rights do not apply to witnesses.

*(b)* Article 31 rights do not apply to civilian witnesses. Advise a military witness of their rights under UCMJ, Art. 31, only when you suspect the commission of an offense. Consult with the appointed legal advisor on the form of the advice.

*d. Analysis of evidence.* When the use of alcohol or drugs are relevant to an investigation, thoroughly explore their contribution to the injury, illness, disease, or death under investigation. Relevant inquiries may include the amount and type of liquor consumed, the period of time during which it was consumed, and the outward appearance and/or observable behavior of the person before the incident (staggering, bellicose, and unable to speak rationally). The results of any blood alcohol content testing must be included in the IO report, if available.

## B–3. Duty status/mental soundness

The duty status reported by the unit commander on DA Form 2173 is binding. If the IO believes the duty status is in question, consult with the legal advisor.

*a.* A Soldier being mentally unsound at the inception of AWOL and considered mentally unsound at the time of the incident will be found ILD, barring mental unsoundness being a direct result of their own misconduct. If a Soldiers mental unsoundness is a direct result of their own misconduct, the correct consideration will be NLD.

*b.* A Soldier being mentally unsound at the inception of AWOL and mentally sound at the time of the incident will be considered NLD–DOM.

*c.* A Soldier being mentally sound at the inception of AWOL and mentally unsound at the time of the incident will be considered NLD–NDOM.

*d.* A Soldier being mentally sound at the inception of AWOL and mentally sound at the time of the incident will be considered NLD–DOM.

*e.* In cases of suicide or attempted suicide while AWOL, mental soundness and/or mental unsoundness can only be determined by a licensed DoD behavioral/mental health specialist.

## B–4. Compiling the report

DD Form 261 serves as a cover sheet and forwarding document. Complete lines 1 through 12 of the form.

*a. Investigating officer report.* At the conclusion of the investigation, the IO prepares a memorandum of findings. The report will include an appointment memorandum of the authority under which the investigation was conducted, identification of any duty time lost by the Soldier being investigated, the matter investigated, the facts, a discussion of those facts as they relate to the issues under investigation, conclusions, and a statement of findings as they relate to the findings within this regulation (reference chapter/rule and paragraph used to support the findings). The IO will clarify any discrepancy in the date and place of death, injury, illness, or disease or in the evidence as to the duty status of the Soldier. When relevant, comment on the credibility of statements of witnesses.

*b. Supporting documents.* All documents in the report must be of good quality. Original documents will be in the report if at all possible, scanned and fax copies of readable quality are acceptable.

(1) The applicable documents will be assembled as follows, using DD Form 261 as a cover sheet for two copies:

*(a)* Tab A - DA Form 2173.

*(b)* Tab B - Index of exhibits.

*(c)* Tab C - IO report of findings.

*(d)* Tab D - IO appointment orders.

*(e)* Tab E - Subject's sworn statement or IO statement explaining why subject's statement is unavailable. This will include the Soldiers rights and warning statement in injury and illness cases. (Not applicable in death cases).

*(f)* Tab F - Statements of witnesses.

*(g)* Tab G - Copies of orders or other documents relating to duty status.

*(h)* Tab H - Copies of other investigative reports, to include police reports, prepared by military or civilian authorities.

*(i)* Tab I - Maps, photographs or sketches.

*(j)* Tab J - Medical records relevant to the LOD determination. (That is. autopsy, death certificate, toxicology, emergency room records, prescription list).

*(k)* Tab K - Legal review(s).

*(l)* Tab L - Post mortem mental health assessment (suicide/attempted suicide ONLY).

*(m)* Tab M - DA Form 4037 (Officer Record Brief).

(2) The IO may add additional tabs as needed. If more than one exhibit appears under a given tab, label the exhibits separately; for example, paragraphs F–1, F–2, and F–3.

(3) Misconduct determination. Determine whether misconduct or gross negligence was present on the part of the Soldier (see app E and section II (terms)).

**Appendix C**

**Procedures for Proposed Not in the Line of Duty Finding**

**C–1. Initial not in the line of duty notification**

As addressed in paragraph 3–12, any authority (IO, appointing authority, reviewing authority, approval authority, or HRC) contemplating an initial NLD finding against a Soldier must provide notification to the Soldier in writing and allow ample time to rebut the proposed action. Normally, this is between 10 and 30 days.

**C–2. Sample format of proposed notification of not in the line of duty finding**

See figure C–1 for a sample letter of proposed NLD action to the Soldier.



**DEPARTMENT OF THE ARMY**
ORGANIZATION
STREET ADDRESS
CITY STATE ZIP

AHRC-PDC                                                              [Date]

MEMORANDUMRANDUM FOR SFC [Insert Name], Medical Holding Detachment, Dewitt Army Hospital, Ft. Belvoir, VA 22060

SUBJECT: Notice of proposed Not in Line of Duty (NLD) finding

1. As you are aware, I have been appointed as the investigating officer (or higher authority) to conduct a Line of Duty Investigation for the purpose of obtaining details surrounding the circumstances of your injuries which occurred on [Insert Date].

2. Based upon the attached evidence that I have collected, I believe your injuries were incurred "NOT IN LINE OF DUTY - DUE TO YOUR OWN MISCONDUCT". This evidence is attached for your review.

3. Due to the adverse impact this determination may have, you are invited to make a statement on your own behalf; however, as you were informed previously, you have the right to not make any statement relative to the origin, incurrence, or aggravation of your injuries. [If you were required to advise the Soldier of his or her Article 31 rights earlier, then you should also remind him or her of that previous rights warning.]

4. If you desire to make a statement, it will be taken into consideration before my finding is made. Your statement must be completed and forwarded to me within 10 business days after receipt of this notification. If your rebuttal is not received within the time frame allotted my finding will be made and forwarded for approval.

[    Signature Block    ]

Encls

All evidence collected

**Figure C–1. Sample letter of not in the line of duty action**

## Appendix D

## Rules Governing Line of Duty and Misconduct Determinations

Soldiers' training and professional values must be considered in all LOD determinations. In every formal investigation, the purpose is to find out whether there is evidence of misconduct or gross negligence and if so, whether the preponderance of the evidence rebuts the presumption of ILD. To arrive at such decisions, the following rules will be applied and considered when making LOD findings or determinations.

### D–1. Rule 1
Injury, illness, disease, or death directly caused by the individual's misconduct or gross negligence is NLD.

### D–2. Rule 2
Violation of military regulations, orders, or instructions, or of civil laws, if there is no further sign of misconduct, may be no more than simple negligence. Simple negligence is not misconduct. Therefore, a violation as described under this rule alone may not be enough to determine that the injury, illness, disease, or death resulted from misconduct. However, the violation is one circumstance to be examined and weighed with all the other circumstances. Depending on the facts of a particular case, a combination of multiple (two or more) violations may be considered gross negligence.

### D–3. Rule 3
*a.* Incapacitation because of the use of alcohol or other drugs that results in injury, illness, disease, or death is due to misconduct and is NLD. This is not intended to prohibit the otherwise lawful use of alcoholic beverages. Controlled substance analogues (designer drugs) such as synthetic cannabis and other tetrahydrocannibinol substitutes ("Spice"), derivatives of 2-aminopropanal ("Bath Salts"), synthetic cocaine ("RTI–126"), or any other substance similarly designed to mimic the effects of a controlled substance on the human body without an approved medical use in the United States. Chemicals, propellants, or inhalants (huffing) which result in injury, illness, disease, or death is due to intentional misconduct and will therefore be considered NLD.

*b.* In accordance with medical command regulations, prescribed medications have a 6-month expiration date. Voluntarily ingesting prescription medication 6 months past its expiration date without medical provider approval is misconduct.

### D–4. Rule 4
Injury or death incurred while knowingly resisting or avoiding a lawful arrest, or while attempting to escape from a guard or other lawful custody, is due to intentional misconduct and is NLD. One who resists arrest, or who attempts to escape from custody, can reasonably expect that necessary force, even which may be excessive under the circumstances, will be used to restrain them and is acting with gross negligence.

### D–5. Rule 5
Injury or death incurred while tampering with, attempting to ignite, or otherwise handling an explosive, firearm, or highly flammable liquid in disregard of its dangerous qualities is incurred NLD. It is due to intentional misconduct. Unexploded ammunition, highly flammable liquids, and firearms are inherently dangerous. Their handling and use require a high degree of care. A Soldier who voluntarily or willfully handles or tampers with these items in disregard of their dangerous qualities is acting with gross negligence. All Soldiers will be held to a higher standard regarding firearm safety than an average person. Incidents involving firearms will be considered negligence. This rule does not apply when a Soldier is required by assigned duties or authorized by appropriate authority to handle the explosive, firearm, or liquid and reasonable precautions have been taken.

### D–6. Rule 6
Injury or death caused by wrongful aggression or voluntarily taking part in a fight or similar conflict, in which one is equally at fault in starting or continuing the conflict when one could have withdrawn or fled, is due to misconduct and is NLD. An injury received or death suffered by a Soldier in a fight in which they are the aggressor is caused by their own misconduct. The Soldier's provocative actions or language, for which a reasonable person would expect retaliation, is a willful disregard for personal safety, and injuries or death directly resulting from them are due to misconduct. When an adversary uses excessive force or means that could not have been reasonably foreseen in the incident, the resulting injury or death is not considered to have been caused by misconduct. Except for self-defense, a Soldier who persists in a fight or similar conflict after a combatant produces a dangerous weapon is acting in willful disregard for

safety and is therefore grossly negligent. This rule does not apply when a Soldier is the victim of an unprovoked assault and sustains injuries or dies while acting in self-defense.

## D–7. Rule 7

A Soldier who operates a motor vehicle in a negligent manner that was the proximate cause of an injury, illness, disease, or death may be found to have engaged in misconduct depending on the circumstances as a whole. Simple negligence alone does not constitute misconduct.

*a.* A Soldier who knew or should have reasonably known they were unfit to drive, and who is injured or deceased as a result of driving a motor vehicle when unfit to do so, may be found to have engaged in misconduct. Voluntary intoxication, use of drugs or other circumstances that affect the Soldier's mental or physical faculties may cause a Soldier to be unfit.

*b.* It is not necessarily misconduct when a Soldier has a motor vehicle accident because they fell asleep while driving. Injury, illness, or death incurred while not wearing safety devices such as seat belts or safety helmets is one factor to consider. The violation must, under the circumstances, amount to gross negligence to constitute misconduct. For example, in motorcycle accident investigations, the IO should determine whether the motorcycle operator took the required safety course prior to the accident and obeyed traffic laws in determining the proximate cause of the accident.

*c.* The failure to use safety devices may have nothing to do with the proximate cause of the injury, illness, disease, or death. For example, the failure to wear a safety helmet may have nothing to do with a motorcyclist who breaks a leg.

*d.* Failure to use safety devices can aggravate the illness, injuries, or disease but will not be the proximate cause of the illness, injuries, or disease. Do not focus solely upon whether or not the Soldier was wearing seat belts or other protective devices at the time of the accident, instead carefully examine the facts and circumstances of each case.

## D–8. Rule 8

Injury or death because of erratic or reckless conduct, without regard for personal safety or the safety of others, is due to misconduct and is NLD. This rule may be applied with any reckless conduct that risks the safety of self or others. "Thrill" or "dare-devil" type activities may be considered gross negligence. All circumstances will be considered, including the Soldier's training and experience. This rule may be applied to any reckless conduct, thrill, or dare-devil type activity.

## D–9. Rule 9

*a.* For purposes of making LOD findings, there is a presumption that a mentally sound person will not die by suicide (or make a bona fide attempt to die by suicide). This presumption prevails until rebutted by a greater weight of the evidence than supports any different conclusion (see para 4–12*b*).

*b.* In all cases of suicide or suicide attempts, a behavioral health officer will review the evidence collected to determine the bio-psychosocial factors that contributed to the Soldier's desire to end their life. If the Soldier is found mentally unsound, the behavioral health officer should determine whether the Soldier's mental condition was service connected, EPTS or EPTS–SA. The behavioral health officer will render an opinion as to the probable causes of the self-destructive behavior and whether the Soldier was mentally sound at the time of the incident.

*c.* Mental and emotional disorders will be identified, evaluated, and documented pursuant to DHA or DoD policies and procedures. If DHA or DoD policies and procedures have not been prescribed, then MTF personnel must identify, evaluate, and document mental and emotional disorders. A Soldier may not be held responsible for their acts if, as the result of mental disorder or disease, the Soldier was unable to comprehend the nature of such acts or to control their actions. Therefore, these disorders are considered "ILD" unless they existed before entering the Service and were not aggravated by military service. Personality disorders by their nature are considered as EPTS.

## D–10. Rule 10

A third party's misconduct or grossly negligent act is attributed to the Soldier if the Soldier exercises sufficient influence over the third party's conduct or if the misconduct or gross negligence demonstrates sufficient intent or failure to exercise due care to establish misconduct by association. (For example, a Soldier willingly becomes a passenger in a motor vehicle with knowledge that the driver had been consuming alcohol or drugs prior to driving).

## D–11. Rule 11

For purposes of making LOD findings, a Soldier injured or incurring disease or death while in an authorized duty status but taking part in outside activities, such as business ventures, hobbies, contests, or professional or amateur

athletic activities, is determined under the same rules as other situations. To determine whether an injury or death is due to gross negligence, the nature of the outside activity should be considered, along with the training and experience of the Soldier.

**D–12.  Rule 12**

Any illness, disease, or death that proximately results from a Soldier unreasonably refusing or failing through neglect or design, to submit to medical, surgical, or dental treatment, may be considered gross negligence, even where gross negligence did not cause the original condition. Sincerely held religious beliefs constitute a reasonable reason to refuse such treatment and do not constitute misconduct.

**Appendix E**

**Internal Control Evaluation**

**E–1.  Function**
The function covered by this evaluation is Line of Duty Policy, Procedures, and Investigations Program.

**E–2.  Instructions**
These key internal controls must be formally evaluated at least once every 5 years or whenever the internal control administrator changes. Certification that this evaluation has been conducted must be accomplished on DA Form 11–2 (Internal Control Evaluation Certification). Evaluation test questions are outlined in paragraph E–4, below, and are intended as a starting point for each applicable level of internal control evaluation. Answers must be based on the actual testing of key internal controls (for example, document analysis, direct observation, sampling, simulation, other). Answers that indicate deficiencies must be explained and corrective action indicated in supporting documentation.

**E–3.  Purpose**
The purpose of this evaluation is to assist the commander and internal control administrators in evaluating key internal controls. It is not intended to cover all controls.

**E–4.  Test questions**
  *a.*  What is the commander's role in the LOD process?
  *b.*  What are the time restrictions for initiating an LOD?
  *c.*  What Soldiers are entitled to receive an LOD?
  *d.*  Why are LOD investigations conducted?
  *e.*  Who is the approving authority?
  *f.*  Is HIPAA training current for commander and unit staff who, in the performance of their duties, are required to put LODs in the system?
  *g.*  Have selected staff personnel been familiarized with AR 600–8–4?
  *h.*  Is the commander informed of LODs found to be caused by misconduct on the Soldier's part?

**E–5.  Supersession**
This evaluation replaces the evaluation for the execution of the Line of Duty Policy, Procedures, and Investigations Program previously published in AR 600–8–4, dated 15 March 2019.

**E–6.  Comments**
Help to make this a better tool for evaluating internal controls. Submit comments to Deputy Chief of Staff, G–1 (DAPE–HR), 300 Army Pentagon, Washington, DC 20310–0300.

## Glossary

**Section I**

**Abbreviations**

**ACOM**
Army command

**AG**
Adjutant General

**AGR**
Active Guard Reserve

**AMC**
U.S. Army Materiel Command

**AR**
Army regulation

**ARIMS**
Army Records Information Management System

**ARNG**
Army National Guard

**ASCC**
Army service component command

**AWOL**
absent without leave

**CAC**
casualty assistance center

**CAR**
Chief, Army Reserve

**CG**
commanding general

**CID**
Criminal Investigation Division

**CNGB**
Chief, National Guard Bureau

**DA**
Department of the Army

**DCS**
Deputy Chief of Staff

**DEMOB**
demobilization

**DES**
Disability Evaluation System

**DHA**
Defense Health Agency

**DIMA**
drilling individual mobilization augmentee

**DoD**
Department of Defense

**DoDI**
Department of Defense instruction

**DRU**
direct reporting unit

**eMMPS**
electronic Medical Management Personnel System

**EPTS**
existed prior to service

**EPTS–SA**
existed prior to service-service aggravated

**FORSCOM**
U.S. Army Forces Command

**GCMCA**
general court-martial convening authority

**GS**
general schedule

**HIPAA**
Health Insurance Portability and Accountability Act

**HRC**
U.S. Army Human Resources Command

**HSS**
health services specialist

**IDRM**
Integrated Disability Evaluation System Referral Memorandum

**ILD**
in line of duty

**ILD–EPTS–SA**
in line of duty-existed prior to service-service aggravated

**IO**
investigating officer

**iPERMS**
Interactive Personnel Electronic Records Management System

**IRR**
Individual Ready Reserve

**LOD**
line of duty

**MEB**
medical evaluation board

**MMA**
military medical authority

**MSC**
major subordinate command

**MTF**
medical treatment facility

**NGB**
National Guard Bureau

**NLD**
not in line of duty

**NLD–DOM**
not in line of duty-due to own misconduct

**NLD–EPTS–NSA**
not in line of duty-EPTS-not service aggravated

**NLD–NDOM**
not in line of duty-not due to own misconduct

**OASS**
One Army School System

**OCONUS**
outside the continental United States

**PEB**
physical evaluation board

**PILD**
presumptive in line of duty

**RA**
Regular Army

**RC**
Reserve Component

**RD**
Readiness Division

**REFRAD**
released from active duty

**RRS–A**
Army Records Retention Schedule-Army

**SAPR**
sexual assault prevention and response

**SARC**
sexual assault response coordinator

**SECARMY**
Secretary of the Army

**SJA**
staff judge advocate

**SPCMCA**
special court-martial convening authority

**SRU**
Soldier Recovery Unit

**TAG**
The Adjutant General

**TPU**
troop program unit

**TRADOC**
U.S. Army Training and Doctrine Command

**TSG**
The Surgeon General

**UCMJ**
Uniform Code of Military Justice

**USAPDA**
U.S. Army Physical Disability Agency

**USAR**
U.S. Army Reserve

**USARC**
U.S. Army Reserve Command

**USC**
United States Code

## Section II

## Terms

**Absent without authority**
Consider member "absent without authority" if they are voluntarily AWOL for more than 24 hours or was voluntarily absent from a scheduled duty or formation, a restriction or an arrest. Scheduled duty or formation means doing a specified task at a specified time and place for a specified purpose. It is not the same as regularly scheduled duty.

**Active duty**
The term "active duty" means full-time duty in the active military service of the United States. Such term includes full-time training duty, annual training duty, and attendance, while in the active military service, at a school designated as a service school by law or by the Secretary of the military department concerned. Such term does not include full-time National Guard duty. The term "active duty for a period of more than 30 days" means active duty under a call or order that does not specify a period of 30 days or less.

**Active duty for training**
A tour of active duty that is used for training members of the RCs to provide trained units and qualified persons to fill the needs of the Armed Forces in time of war or national emergency and such other times as the national security requires. The member is under orders that provide for return to non-active status when the period of active duty for training is completed. It includes annual training, special tours of active duty for training, school tours, and the initial duty for training performed by non-prior service enlistees.

**Active Service**
Service on Active Duty or Full-time National Guard duty.

**Alcohol use**
The illegal or improper use or possession of alcohol, on or off duty, that results in, but is not limited to, impaired duty performance, intoxicated driving, domestic disturbances, assault, aberrant behavior, altercations, underage drinking or other behavior inconsistent with Army standards.

**Alcoholism**
A psychological or physical dependence on alcohol.

**Appointing authority**
The special court-martial convening authority for the Soldier at the time the incident is reported. Also is the final approval authority for informal LOD investigations.

**Approval authority**
An official with the authority to formally assume responsibility for operating a system at an acceptable level of risk. The first GCMCA in the Soldier's chain of command.

**Behavioral health officer**
A person in mental health settings who has achieved professional recognition and standing as defined by their respective discipline, including, but not limited to medicine, social work, psychology, nursing, occupational and recreational therapy and vocational rehabilitation and who has obtained, if applicable, license, registration, or certification.

**Clear and unmistakable evidence**

Undebatable information that the condition existed prior to military service or if increased in service, was not aggravated by military service. In other words, reasonable minds could only conclude that the condition existed prior to military service from a review of all of the evidence in the record. Used for pre-existing condition analysis.

**Demobilization**

Short term used for demobilization of armed forces. It is an act of changing from a war basis to a peace basis including disbanding or discharging troops; "demobilization of factories;" "immediate demobilization of the reserves."

**Disease**

A condition of an organ, part, structure, or system of the body in which there is incorrect function resulting from the effect of heredity, infection, diet, or environment. It is the same as an illness, sickness, or ailment.

**Drug use**

The illegal or improper use, possession, sale, transfer, or trafficking of any controlled substance included in schedules I, II, III, IV, and V in 21 USC 812, drug use paraphernalia, or any intoxicating substance, other than alcohol, that is inhaled, injected, consumed, or introduced into the body in any manner to alter mood or function. This includes prescription medications used in a manner other than prescribed by medical providers.

**Drugs**

Any controlled substance included in schedules I, II, III, IV, and V in 21 USC 812, including anabolic or androgenic steroids, or any intoxicating substance other than alcohol, that is inhaled, injected, consumed, or introduced into the body in any manner to alter mood or function.

**Erratic or reckless conduct**

Spontaneous and unpredictable behavior with lack of concern regarding personal consequences and/or safety of others.

**Existing prior to service**

Any injury, illness, or disease to include the underlying causative condition, which was sustained or contracted prior to the present period of active duty or authorized training or had its inception between prior and present periods of active duty or training is considered to have EPTS. A medical condition may in fact be present or developing for some time prior to the point when it is either diagnosed or manifests symptoms. Consequently, the time at which a medical condition "exists" or is "incurred" is not dependent on the date of diagnosis or when the condition becomes symptomatic. (Examples of some conditions which may be pre-existing are slow-growing cancers, heart disease, diabetes, or mental conditions, which can all be present well before they manifest themselves by becoming symptomatic.)

**Gross negligence**

An act or acts of omission or commission that evidence a reckless or wanton disregard for their attendant consequences. Conduct that indicates a member exhibited a reckless or wanton disregard for their own personal well-being or for the well-being of another. Gross negligence is likely to cause harm or injury to persons, property, or both, and includes the deliberate disregard of self or another person's safety. Gross negligence is considered misconduct for the purposes of this regulation.

**In line of duty**

A death, injury, illness, or disease suffered by a member is presumed to be in the LOD, unless a preponderance of the evidence supports the finding that the Soldier's injury, illness, disease, or death happened while the member was absent from duty without leave or due to the member's own misconduct. Confine the meaning of "line of duty" in this instruction to the purpose of this regulation. It is completely distinct from usage under the Federal Tort Claims Act, 28 USC 2671, and has no bearing on the meaning or application of the phrase "acting within the scope of their office or employment" as used in that Act.

**Inactive duty training**

Authorized training performed by a member of a RC not on active duty or active duty for training and consisting of regularly scheduled unit training assemblies, additional training assemblies, periods of appropriate duty or equivalent training, and any special additional duties authorized for RC personnel by the Secretary concerned, and performed by them in connection with the prescribed activities of the organization in which they are assigned with or without pay. This does not include work or study associated with correspondence course.

**Incident**

The circumstances including facts, location, date, and time of the initial happenings, occurrences, or events. (For example, if a Soldier is injured in area A and is transported to area B where the Soldier later passes, area A is

responsible for conducting the LOD investigation and area B is responsible for submitting a change of status in Defense Casualty Information Processing System).

**Injury**
Injury includes such conditions as fractures, wounds, strains, sprains, dislocations, concussions, post-traumatic stress disorder, and compressions. In addition, it includes conditions resulting from extremes of temperature or prolonged exposure. Acute poisoning (except those due to contaminated food) resulting from exposure to toxic or poisonous substances are also injuries. This also includes non-visual injuries that might also require a Soldier to experiences a loss of duty time for a period of more than 24 hours, or that may result in permanent disability and/or separation from service, such as Traumatic Brain Injuries and post-traumatic stress disorder.

**Intoxication**
Maladaptive behavior such as aggressiveness, impaired judgment, and impaired social or occupational functioning, be- cause of recent ingestion, inhalation, or injection of any mood-altering substance into the body including alcohol. Signs include flushed face, slurred speech, unsteady gait, lack of coordination, impaired attention, irritability, euphoria, or depression.

**Line of duty investigation**
An investigation which documents the circumstances regarding a Soldier's injury, illness, disease, or death, including a Soldier's duty status at the time of the incident, and whether intentional misconduct was involved.

**Lost time**
Time (if more than 24 hours) which must be made up (served) by an enlisted member who is unable to perform military duties because of intemperate use of drugs or alcohol, or because of injury, illness, or disease resulting from misconduct.

**MEDCHART**
The Medical Electronic Data (for) Care History and Readiness Tracking system is a customizable, centralized approach to managing all aspects of a Soldier's medical readiness and care history.

**Medical providers**
Physician, Physician Assistant, Nurse Practitioner

**Mental responsibility**
Soldiers are not responsible for their misconduct and its foreseeable consequences if, as a result of mental disorder, they lack substantial capacity either to appreciate that their conduct is wrong or to conform the conduct to the requirements of law. Members with impaired mental faculties as a result of their own misconduct, such as by taking a hallucinogen other illegal (controlled) substance or deliberately ingesting any harmful/dangerous substance, or by voluntary intoxication, are mentally responsible for purposes of LOD investigations. All members are presumed mentally responsible for their acts unless there is contrary evidence. This presumption usually means it is unnecessary to pursue the issue of mental responsibility unless there is credible evidence of lack of mental responsibility. Such evidence may consist of the circumstances surrounding the injury, illness, disease, or death, previous abnormal or unusual behavior, expert opinion or other evidence directly or indirectly pointing toward lack of mental responsibility.

**Mental soundness**
Mental soundness means that a Soldier possesses the requisite mental responsibility to intend their conduct. A Soldier may not be held responsible for their acts and their foreseeable consequences if, as the result of mental disorder or disease, the Soldier was unable to comprehend the nature of such acts or to control their actions. That is, if the Soldier does not have the ability to form the intent to undertake the underlying conduct, then the Soldier is mentally unsound for purposes of LOD investigations.

**Military medical authority**
A DoD credentialed medical, dental, or behavioral health provider; or, in certain instances, the appropriate office in the DHA.

**Misconduct**
Conduct that is wrongful, improper, illegal, or grossly negligent. In the context of this regulation, misconduct is considered intentional or willful.

**Muster duty**
A gathering of military personnel for a call to duty.

**Natural progression**
The worsening of a pre-Service injury, illness, or disease that would have occurred within the same timeframe regardless of military service.

**Not in line of duty-due to own misconduct**
A determination supported by a preponderance of the evidence that the member's injury, illness, disease, or death, was proximately caused by the member's own misconduct, regardless of whether the member was absent without authority.

**Not in line of duty-not due to own misconduct**
A determination supported by a preponderance of the evidence that the member's injury, illness, disease, or death happened while the member was absent without authority, and the injury, illness, disease, or death was not proximately caused by the member's own misconduct. If the Soldier was AWOL at the time, only a Behavioral Health expert can determine mental soundness for that Soldier. EPTS conditions also fall under this finding unless negligence or misconduct is found.

**Preponderance of evidence**
Findings must be supported by a greater weight of evidence (more likely than not) than supports any different conclusion. The evidence must establish a degree of certainty so that a reasonable person is convinced of the truth or falseness of a fact. This standard of proof used in LOD determinations is more analogous to the "preponderance of the evidence" standard used in administrative proceedings than "beyond a reasonable doubt" standard used in courts-martial.

**Presumption**
An inference of the truth of a proposition or fact reached through a process of reasoning and based on the existence of other facts. Matters that are presumed need no proof to support them, but may be rebutted by evidence to the contrary.

**Proximate cause**
The cause of an action that, in a natural and continuous sequence unbroken by an independent and unforeseeable new cause, resulting in the injury, illness, disease, or death and without which the death, injury, illness, or disease would not have been incurred.

**Reserve Components**
The Army Reserve and the Army National Guard of the United States.

**Restricted line of duty**
An LOD that allows a sexual assault victim to confidentially disclose the details of their assault to specified individuals and receive medical treatment and counseling, without triggering the official investigative process. Sexual assault victims who are sexually assaulted and desire restricted reporting may only report the assault to the SARC, Victim Advocate (VA), or a Healthcare Provider.

**Service aggravation**
The permanent worsening of a pre-service medical condition over and above the natural progression of the condition.

**Simple negligence**
A failure to exercise the degree of care, which a person of ordinary prudence would usually take in the same or similar circumstance(s), taking into consideration age, maturity of judgment, experience, education, and training of the Soldier. Simple negligence alone does not constitute misconduct. An injury, disease, illness, or death caused solely by simple negligence is ILD unless it existed prior to entry into the service or occurred during a period of AWOL (except when the Soldier was mentally unsound at the inception of the AWOL).

**Suicide**
Refers to a death resulting from purposeful action intended to result in one's own death. In order for suicide to constitute misconduct, the act of self-destruction must be intentional; a Soldier who is not mentally sound is incapable of forming intent. Whether a person, at the time of suicide, was so unsound mentally that they did not realize the consequence of such an act, or was unable to resist such impulse, is a question to be determined in each individual case, based on all available lay and medical evidence pertaining to their mental condition at the time of suicide. The act of suicide or a bona fide attempt is, in and of itself, considered evidence of mental unsoundness. All instances of suicide or a bona fide attempt will create a rebuttable presumption of lack of mental responsibility, and failure to rebut the presumption will support a finding of ILD.

**Under the influence of alcohol or drugs**
Any intoxication caused by alcohol or by drugs that is sufficient to impair the rational and full exercise of the mental or physical faculties.

**Unrestricted line of duty**
A LOD that follows the guidelines of the unrestricted reporting per AR 600–20 and is protected similar to the restricted LOD, however it is more accessible based on the need to know.

**White cell**
A deployment support cell established to assist in successfully completing Mobilization, Redeployment, Demobilization, and Reintegration activities. A white cell is established for all DEMOB units of company-size or larger from the RC unit's organic command.

**Wrongful aggression**
An actual physical act or at least a threat to inflict real imminent injury upon a person or one's self. It presupposes actual, sudden, unexpected, or imminent danger-not merely threating and intimidating action.

**UNCLASSIFIED**

PIN 080984–000