Exhibit G to the United States' Motion to Dismiss

*Seal v. United States*, Case No. 2:25-cv-442 (D. Me.)

Army Regulation 190–45

Military Police

# Law Enforcement Reporting

Headquarters
Department of the Army
Washington, DC
27 September 2016

**UNCLASSIFIED**

# *SUMMARY of CHANGE*

AR 190–45
Law Enforcement Reporting

This major revision, dated 27 September 2016--

o Adds a requirement for chain of command notification by law enforcement within 4 hours upon apprehension or initiation of investigation of a Soldier (para 1-4*g*(16)).

o Updates installations' geographical area of responsibilities (table 1-1).

o Establishes policy pertaining to the level of security clearance and background check required to use the system-generated DA Form 190-45-SG (Army Law Enforcement Reporting and Tracking System (ALERTS))(para 2-1*d*).

o Updates the policy on sex offenders on Army installations (para 2-7).

o Updates the policy pertaining to the collection of deoxyribonucleic acid samples from Soldiers (para 2-8).

o Updates the policy pertaining to the disclosure of information contained in military police reports or military police investigation reports (para 3-7).

o Adds reporting requirement of domestic incidents to the Army Family Advocacy Program (para 3-9).

o Establishes the procedure for sending a redacted version of a Law Enforcement Report to outside agencies (para 4-2*e*).

o Adds guidance on preparing and disseminating DA Form 4833 (Commander's Report of Disciplinary or Administrative Action) (para 4-7).

o Establishes a requirement for all installations to use the DA Form 190-45-SG, also known as ALERTS, to generate a blotter report (para 7-15*a*).

o Updates the serious-incident report requirement (para 8-1).

o Changes the status for incidents involving biological select agent and toxins, from a category 2 serious incident to a category 1 serious incident (para 8-1*i*).

o Clarifies serious-incident report requirements for deaths occurring on and off post (para 8-3*m*).

o Establishes procedures for suspicious activity reporting (para 8-7).

o Adds a law-enforcement-sensitive statement to all serious-incident report notifications (para 9-1).

o  Clarifies the completion of serious-incident reports that involve protected
   identities (para 9-4).

o  Authorizes the limited use of the Federal Bureau of Investigation's National
   Crime Information Center to conduct checks of visitors to an installation
   (para 12-2).

o  Establishes a procedure for reporting positive drug urinalysis results into
   the National Instant Checks System database (para 12-4).

o  Adds offense codes pertaining to Articles 112a, 120, and 134, Uniform Code of
   Military Justice (table C-1).

o  Changes phencyclidine's classification from dangerous drug to hallucinogen
   (table C-1).

o  Updates offense codes that pertain to suicide, including suicide attempts
   (table C-1).

o  Adds offense codes to register Department of Defense employee and Family
   members or dependents who are sex offenders (table C-1).

o  Incorporates policies from Army Directive 2013-06, which is hereby rescinded
   (throughout).

# PREFACE

DA Form 190–45–SG is a system-generated form, which is also referred to as the Army Law Enforcement Reporting and Tracking System (ALERTS).

**Headquarters**
**Department of the Army**
Washington, DC
27 September 2016

# *Army Regulation 190–45

**Effective 27 October 2016**

### Military Police

# Law Enforcement Reporting

By Order of the Secretary of the Army:

**MARK A. MILLEY**
*General, United States Army*
*Chief of Staff*

Official:

**GERALD B. O'KEEFE**
*Administrative Assistant to the*
*Secretary of the Army*

**History.** This publication is a major revision.

**Summary.** This regulation establishes policies and procedures for offense and serious-incident reporting within the Army; for reporting to the Department of Defense and the Department of Justice, as appropriate; and for participating in the Federal Bureau of Investigation's National Crime Information Center, the Department of Justice's Criminal Justice Information System, the National Law Enforcement Telecommunications System, and State criminal justice systems. It implements the reporting requirements of DODI 7730.47, the sex offender registration requirements of DODI 1325.07, and the victim/witness requirements contained in DODI 1030.2. It implements the portion of Section 1561a, Title 10, United States Code (The Armed Forces Domestic Security Act) that gives a civilian protection order the same force and effect on a military installation that it has within the jurisdiction that issued it. This regulation mandates the use of DA Form 190–45–SG (Army Law Enforcement Reporting and Tracking System (ALERTS)), a system-generated form. It sets forth the revised objectives and procedures applicable to the referral and trial by U.S. magistrates for misdemeanors committed on Army installations. It also

describes the proper use, preparation, and disposition of the Central Violations Bureau (CVB) Form (United States District Court Violation Notice) when referring offenders to the U.S. Magistrate. It meets law enforcement reporting requirements for selected criminal incidents and provides law enforcement agencies, such as the Department of Homeland Security and Transportation Security Administration, with the most current information available. It also provides the chain of command with timely information to respond to queries from the Department of Defense, the news media, and others.

**Applicability.** This regulation applies to the Active Army, the Army National Guard/Army National Guard of the United States, and the U.S. Army Reserve, unless otherwise stated. It also applies to Department of the Army civilian police and security guard activities. This regulation is required during mobilization. Chapters 10–12 apply to misdemeanor offenses committed on United States Army installations in the United States and its territories that have a U.S. Magistrate Court. Chapters 10–12 apply to U.S. Army military police, directorates of law enforcement and security, Department of the Army civilian police and security guard activities, and to security force operations when authorized to issue violation notices.

**Proponent and exception authority.** The proponent of this regulation is the Provost Marshal General. The proponent has the authority to approve exceptions or waivers to this regulation that are consistent with controlling law and regulations. The proponent may delegate this approval authority, in writing, to a division chief within the proponent agency or its direct reporting unit or field operating agency, in the grade of colonel or the civilian equivalent. Activities may request a waiver to this regulation by providing justification that includes a full analysis of the expected benefits and must include a formal

review by the activity's senior legal officer. All waiver requests will be endorsed by the commander or senior leader of the requesting activity and forwarded through their higher headquarters to the policy proponent. Refer to AR 25–30 for specific guidance.

**Army internal control process.** This regulation contains internal control provisions and provides an internal control evaluation for use in evaluating key internal controls (see appendix D).

**Supplementation.** Supplementation of this regulation and establishment of command and local forms are prohibited without prior approval of the Office of the Provost Marshal General (DAPM–MPO–LE), 2800 Army Pentagon, Washington, DC 20310–2800.

**Suggested improvements.** Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) directly to the Office of the Provost Marshal General (DAPM–MPO–LE), 2800 Army Pentagon, Washington, DC 20310–2800.

**Committee management.** AR 15–1 requires the proponent to justify establishing/continuing committee(s), coordinate draft publications, and coordinate changes in committee status with the U.S. Army Resources and Programs Agency, Department of the Army Committee Management Office (AARP–ZA), 9301 Chapek Road, Building 1458, Fort Belvoir, VA 22060–5527. Further, if it is determined that an established "group" identified within this regulation, later takes on the characteristics of a committee, as found in

---

*This regulation supersedes AR 190–45, dated 30 March 2007, and AD 2013-06, dated 14 February 2013.

i

the AR 15–1, then the proponent will fol-
low all AR 15–1 requirements for es-
tablishing and continuing the group as a
committee.

**Distribution.** This publication is availa-
ble in electronic media only and is in-
tended for command levels C, D, and E
for the active Army, the Army National
Guard/Army National Guard of the United
States, and the U.S. Army Reserve.

## Contents (Listed by paragraph and page number)

### Chapter 1
**Introduction,** *page 1*
Purpose • 1–1, *page 1*
References • 1–2, *page 1*
Explanation of abbreviations and terms • 1–3, *page 1*
Responsibilities • 1–4, *page 1*

### Chapter 2
**Records Administration,** *page 19*
General • 2–1, *page 19*
Safeguarding official information • 2–2, *page 20*
Special requirements of The Privacy Act of 1974 • 2–3, *page 20*
Administration of expelled or barred persons file • 2–4, *page 20*
Police intelligence and criminal information • 2–5, *page 21*
Name checks • 2–6, *page 21*
Registration of sex offenders on Army installations (inside and outside the continental United States) • 2–7, *page 22*
Collection of deoxyribonucleic acid • 2–8, *page 23*
Armed escorts and unique Federal agency number documentation • 2–9, *page 25*

### Chapter 3
**Release of Information,** *page 25*
General • 3–1, *page 25*
Guidelines for disclosure within the Department of Defense • 3–2, *page 26*
Release of information • 3–3, *page 26*
Release of information under the Freedom of Information Act • 3–4, *page 26*
Release of information under The Privacy Act of 1974 • 3–5, *page 27*
Amendment of records • 3–6, *page 27*
Accounting for military police record disclosure • 3–7, *page 28*
Release of law enforcement information furnished by foreign governments or international organizations • 3–8, *page 28*
Release of domestic incidents reports to the Army Family Advocacy Program • 3–9, *page 28*

### Chapter 4
**Offense Reporting,** *page 28*
General • 4–1, *page 28*
Law Enforcement Report • 4–2, *page 28*
Identifying criminal incidents and subjects of investigation • 4–3, *page 29*
Offense codes • 4–4, *page 30*
Military police codes • 4–5, *page 30*
Reserve component, U.S. Army Reserve, and Army National Guard personnel • 4–6, *page 30*
DA Form 4833 (Commander's Report of Disciplinary or Administrative Action) • 4–7, *page 30*

**Contents—Continued**

Updating DA Form 190–45–SG (Army Law Enforcement Reporting and Tracking System (ALERTS)) • 4–8, *page 32*

FBI Form R–84 and final disposition report submission requirements • 4–9, *page 32*

Procedures for reporting absence without leave, desertion, and special category absentee offenses • 4–10, *page 35*

Vehicle Registration System • 4–11, *page 36*

Establishing memorandums of understanding • 4–12, *page 36*

Lost, abandoned, or unclaimed property • 4–13, *page 37*

Procedures for restricted and unrestricted reporting in sexual assault cases • 4–14, *page 38*

Procedures for restricted and unrestricted reporting in domestic violence cases • 4–15, *page 38*

Domestic violence • 4–16, *page 39*

Protection orders • 4–17, *page 39*

Defense Incident-Based Reporting System/National Incident-Based Reporting System reporting responsibilities • 4–18, *page 39*

**Chapter 5**
**Army Law Enforcement Trends and Analysis Report,** *page 40*
General • 5–1, *page 40*

Crime rate reporting • 5–2, *page 41*

**Chapter 6**
**Victim and Witness Assistance Procedures,** *page 41*
General • 6–1, *page 41*

Procedures • 6–2, *page 41*

Notification • 6–3, *page 42*

Statistical reporting requirements • 6–4, *page 42*

**Chapter 7**
**Related Military Police Forms,** *page 42*
General • 7–1, *page 42*

DD Form 460 (Provisional Pass) • 7–2, *page 42*

DD Form 553 (Deserter/Absentee Wanted by the Armed Forces) • 7–3, *page 42*

DD Form 616 (Report of Return of Absentee) • 7–4, *page 43*

DD Form 2708 (Receipt for Pre Trial/Post Trial Prisoner or Detained Person) • 7–5, *page 43*

DD Form 1408 (Armed Forces Traffic Ticket) • 7–6, *page 43*

United States District Court Central Violations Bureau Form • 7–7, *page 43*

DD Form 1920 (Alcohol Incident Report) • 7–8, *page 44*

DA Form 2804 (Crime Records Data Reference) • 7–9, *page 44*

DA Form 2823 (Sworn Statement) • 7–10, *page 44*

DA Form 3881 (Rights Warning Procedure/Waiver Certificate) • 7–11, *page 44*

DA Form 3626 (Vehicle Registration/Driver Record) • 7–12, *page 44*

DA Form 3945 (Military Police Radio Log) • 7–13, *page 44*

DA Form 3946 (Military Police Traffic Accident Report) • 7–14, *page 44*

The blotter report • 7–15, *page 45*

DA Form 4002 (Evidence/Property Tag) • 7–16, *page 45*

DA Form 4137 (Evidence/Property Custody Document) • 7–17, *page 45*

Accountability of DD Form 1408 and the Central Violations Bureau Form • 7–18, *page 45*

**Chapter 8**
**Reportable Serious Incidents,** *page 46*
Policy • 8–1, *page 46*

Category 1 reportable serious incidents • 8–2, *page 46*

Category 2 reportable serious incidents • 8–3, *page 47*

Category 3 reporting criteria • 8–4, *page 49*

Operational reporting reports • 8–5, *page 49*

Incidents reportable by means other than serious-incident reports • 8–6, *page 49*

**Contents—Continued**

Suspicious activity report • 8–7, *page 49*

**Chapter 9**
**Reporting Procedures for Serious-Incident Reports,** *page 51*
Special handling of reports • 9–1, *page 51*
Time requirements and means of reporting • 9–2, *page 51*
Types of serious-incident reports and reporting formats • 9–3, *page 53*
Protected identity • 9–4, *page 56*
Reporting incidents when reporting responsibility is transferred • 9–5, *page 56*
Required information addressees on serious-incident reports • 9–6, *page 56*

**Chapter 10**
**U.S. Magistrate Court,** *page 56*
Relationship to Army • 10–1, *page 56*
U.S. Magistrate Court objectives • 10–2, *page 56*
Court appearances • 10–3, *page 56*
Central Violations Bureau • 10–4, *page 57*

**Chapter 11**
**Use of United States District Court Central Violations Bureau Form,** *page 57*
General • 11–1, *page 57*
Important guidelines for issuing the U.S. District Court Central Violations Bureau Form • 11–2, *page 58*
Issue and disposition procedures • 11–3, *page 58*
Fines, collateral, and nonpayment delinquencies • 11–4, *page 58*
Notification to commanders and supervisors • 11–5, *page 58*
Use of statement of probable cause • 11–6, *page 58*
Mandatory appearance • 11–7, *page 59*
Submitting mandatory hearing violations • 11–8, *page 59*
Submitting forms to the Central Violations Bureau • 11–9, *page 59*
Agency requests to dismiss or void a Central Violations Bureau form • 11–10, *page 59*
Request for dismissal or void by the defendant • 11–11, *page 59*
Central Violations Bureau Forms issued to unattended vehicles • 11–12, *page 60*
U.S. magistrate judge docket report • 11–13, *page 60*
Request to agency for a better address • 11–14, *page 60*
Undeliverable warning letters referred to U.S. magistrate judge • 11–15, *page 60*
Notice to appear letters • 11–16, *page 60*
Warrant • 11–17, *page 60*
Suspension notices • 11–18, *page 61*
Agency notification • 11–19, *page 61*
Hearing types • 11–20, *page 61*
Forfeiture of collateral on a court docket • 11–21, *page 61*
Payment by credit card • 11–22, *page 61*
Payroll deductions • 11–23, *page 61*
Citations on the docket to be reset • 11–24, *page 61*
Agency monthly reports • 11–25, *page 61*
Waiver of venue for plea and sentence • 11–26, *page 61*
Intra-district transfer • 11–27, *page 62*
Voice Case Information System • 11–28, *page 62*
Central Violations Bureau database search option through email • 11–29, *page 62*
Disposition of personnel subject to the Uniform Code of Military Justice • 11–30, *page 62*
Disposition of juvenile offenders • 11–31, *page 62*

**Chapter 12**
**National Crime Information Center Policy,** *page 63*
Authority • 12–1, *page 63*

**Contents—Continued**

Standards • 12–2, *page 63*
Authorized access • 12–3, *page 63*
Reports of positive urinalysis-test results entered into the National Instant Checks System database though National Crime Information Center • 12–4, *page 63*

**Chapter 13**
**National Crime Information Center Procedures,** *page 64*

Requesting an originating agency identifier • 13–1, *page 64*
Suspension or revocation • 13–2, *page 65*
Entry • 13–3, *page 65*
Modification • 13–4, *page 67*
Cancellation • 13–5, *page 67*
Validation • 13–6, *page 67*
Army participation in Criminal Justice Information System • 13–7, *page 67*

**Appendixes**

**A.** References, *page 68*

**B.** Contact information and mailing addresses for serious-incident reports, *page 78*

**C.** Offense codes for Army investigations, *page 80*

**D.** Internal Control Evaluation, *page 95*

**Table List**

Table 1–1: Geographical area of responsibilities, *page 4*
Table 4–1: List of offenses from the Uniform Code of Military Justice, *page 34*
Table C–1: Offense code list, *page 80*
Table C–2: Offense codes for Army investigation reports, *page 93*

**Figure List**

Figure 9–1: Format and instructions for preparing a serious incident report, *page 52*
Figure 9–1: Format and instructions for preparing a serious incident report, continued, *page 53*
Figure 9–2: Format for a serious incident report add-on, which is used to update an earlier report, *page 54*
Figure 9–2: Format for a serious incident report add-on, which is used to update an earlier report, continued, *page 55*
Figure 13–1: Sample request from a regional office of the Installation Management Command to obtain an originating agency identifier, *page 64*
Figure 13–2: Sample request—from an Army command, Army service component command, or direct reporting unit—to obtain an originating agency identifier, *page 65*
Figure 13–3: Sample of an originating agency identifier holder agreement, *page 66*

**Glossary**

# Chapter 1
# Introduction

## 1–1. Purpose
This regulation prescribes policies, procedures, and responsibilities on the preparation, reporting, use, retention, and disposition of Department of the Army (DA) forms and documents, listed in sections III and IV of appendix A, related to law enforcement (LE) activities. It implements Federal reporting requirements on serious incidents, crimes, and misdemeanor crimes. It also assigns the geographic areas of responsibility to a specific installation Provost Marshal Office (PMO) or Directorate of Emergency Services (DES).

## 1–2. References
See appendix A.

## 1–3. Explanation of abbreviations and terms
See the glossary.

## 1–4. Responsibilities
  *a. Provost Marshal General.* The PMG will—
  (1) Establish and develop policy and procedures for the following:
  *(a)* Preparation, use, and disposition of military police (MP) records and forms listed in sections III and IV of appendix A.
  *(b)* Army participation in the Criminal Justice Information System (CJIS), the National Crime Information Center (NCIC), the National Law Enforcement Telecommunications Systems (NLETS), and Army access to State LE and criminal justice agency information consistent with applicable State and Federal laws.
  *(c)* Reporting serious incidents to Headquarters, Department of the Army (HQDA).
  (2) Maintain the official record of serious-incident reports (SIRs) submitted to HQDA. All official records will be maintained in accordance with AR 25–400–2.
  (3) Report crime within the Army, develop Armywide crime statistics, and coordinate LE reporting to the CJIS, the Federal Bureau of Investigation (FBI), and the Department of Justice (DOJ).
  (4) Establish and manage the DA Form 190–45–SG (Army Law Enforcement Reporting and Tracking System (ALERTS)), as the automated Records Management System (RMS) within the Army. This includes procedures for entering records, retaining records, disseminating records, and using such records by DA, Department of Defense (DOD) agencies, and Federal, State, and local LE agencies.
  (5) Prepare and execute the DA's agreement to use the services of NLETS and participation in CJIS.
  (6) Ensure that those counterintelligence (CI) related incidents specified in AR 381–12 are properly reported to the local Army CI field office or the Army Counterintelligence Coordinating Authority at Fort Belvoir, VA.
  *b. Commander, Installation Management Command; Commander, U.S. Army Materiel Command; Commander, U.S. Army Medical Command; commanders of Army commands, Army service component commands, and direct reporting units—excluding the U.S. Army Criminal Investigation Command—who have reporting or oversight responsibilities under this regulation (such as the Director, Army National Guard, and Commander, Military Surface Deployment and Distribution Command).* The commanders for IMCOM, AMC, MEDCOM, ACOMs, ASCCs, relevant DRUs excluding USACIDC; the Director, ARNG; and Commander, SDDC will ensure that subordinate garrison commanders—
  (1) Use DA Form 190–45–SG, also known as ALERTS, to meet reporting requirements prescribed in this regulation.
  (2) Appoint, in writing, a system administrator for DA Form 190–45–SG, also known as ALERTS, and ensure the system's maintenance.
  (3) Comply with all referenced provisions of Federal law in this regulation.
  (4) Submit required criminal history data to the U.S. Army Crime Records Center (USACRC) for transmittal to CJIS.
  (5) Forward requests for participation in NCIC that meet the criteria of this regulation to the Director, U.S. Army Crime Records Center (CICR–CR), 27130 Telegraph Road, Quantico, VA 22134.
  (6) Ensure that installation provost marshals (PMs) or directors of emergency services (DESs) enter into State-government user agreements for access to State LE telecommunications systems and agencies.
  (7) Report serious incidents to HQDA as prescribed by this regulation.
  (8) Ensure that installation PMs or DESs execute liaison coordination and information exchange with civilian LE authorities within their geographic area of responsibility.
  (9) Report incidents occurring off the installation, in DA Form 190–45–SG also known as ALERTS, in the geographic areas for PM or DES activities prescribed by table 1–1.
  (10) If an installation is a Joint service base, ensure commanders abide by the IMCOM-facilitated memorandum of

agreement, which addresses each Service's reporting requirement. The Army chain of command reporting requirements are still required in accordance with Chairman of the Joint Chiefs of Staff Manual (CJCSM) 3150.03D for operational reporting and this regulation for serious-incident reporting.

(11) Establish additional reporting categories as prescribed in paragraph 8–4, below, if desired.

(12) Appoint in writing a victim/witness coordinator. This coordinator is responsible for the LE notification requirements to all identified victims and witnesses of crime.

*c. Senior commanders.* These leaders will—

(1) Ensure that commanders at all levels report alleged criminal incidents to the installation PMO or Directorate of Emergency Services, and the USACIDC, for appropriate inquiry and investigation.

(2) Ensure submission of DA Form 4833 (Commander's Report of Disciplinary or Administrative Action) to their local installation PMO or DES on dispositions of cases referred to them for action by an investigating officer (commander's inquiry or AR 15–6 investigation) and those incidents outlined in paragraph 4–19 of this regulation.

(3) Ensure that battalion commanders or the first lieutenant colonel in the chain of command (of the Soldier in the "SUBJECT" block) complete and return the DA Form 4833 within 60 days with supporting documentation (copies of investigations under Article 15, Uniform Code of Military Justice; court martial orders; reprimands; and so forth) for all USACIDC investigations. Army civilian and contract personnel will also have a DA Form 4833 completed by their military supervisor with special courts martial convening authority. The unit and brigade commanders, or their equivalent, will also receive a copy of the DA Form 4833 for all USACIDC investigations.

(4) Ensure that company, troop, and battery level commanders complete and return the DA Form 4833 within 60 days with supporting documentation (copies of investigations under UCMJ, Art. 15; court martial orders; reprimands; and so on) in all cases investigated by MP investigations, civilian detectives employed by the DA, and the PMO or DES.

(5) Ensure their senior MP commanders and/or installation PMs or DESs provide to their subordinate garrisons and installations staff, oversight, and technical assistance for MP-related issues.

*d. The Commanding General, U.S. Army Criminal Investigation Command.* The CG, USACIDC will provide reports and/or statistical data to installation PMs or DESs in order to support commands with the relative number and types of serious crimes and incidents investigated, subjects identified, value of property stolen or recovered, and other information reflecting the status of discipline, law, and order necessary for the completion of reports required by HQDA. Statistical data necessary to support locally established reports may be provided within the administrative and record-keeping capabilities of the supporting USACIDC element.

*e. The Commanding General, U.S. Army Training and Doctrine Command.* The CG, TRADOC will—

(1) Ensure that technical training on DA Form 190–45–SG, also known as ALERTS, for functional users, is incorporated within the instructional programs of service schools.

(2) Ensure that the requirements of completing the DA Form 4833 are incorporated within the company through a brigade-level commanders' course.

(3) Ensure the DA Form 4833 requirements are briefed to commanders and command sergeants major during the Garrison Pre-command Course.

*f. The Director, U.S. Army Crime Records Center.* The Director, USACRC will—

(1) Serve as the Army's collection point and analytic center for all Army aggregate crime data.

(2) Receive the Law Enforcement Report (LER), prepared per this regulation and related Army LE regulations, policies, and procedures.

(3) Maintain records that support entries made in the FBI's CJIS. This includes the criminal history file of the NCIC.

(4) Respond to requests for information received from local, State, Federal, and international law enforcement agencies.

(5) Process amendment requests under Section 552a, Title 5, United States Code (The Privacy Act) in coordination with installation PMs and DESs.

(6) Be responsible to the PMG for coordinating installation PM or DES participation in CJIS and NCIC, and resolution of operational issues concerning the DA's participation in CJIS and NLETS.

(7) Be responsible to the Commander, USACIDC for establishing internal NCIC operating policies based on rules and operating policies of the NCIC Advisory Policy Board and State control terminal agencies (CTAs).

(8) Appoint a CJIS systems officer to represent the PMG at working group meetings for CJIS and NLETS.

(9) Enter into a user agreement with CJIS concerning the Army's adherence to all CJIS operating policies and regulations and, where applicable, State criminal justice agencies.

*g. Other commanders.* The MP brigade or battalion combat support commanders (who may be dual-hatted as an installation PM or DES), and the ACOM, ASCC, DRU, and installation PMs and DESs in charge of LE operations will—

(1) Provide staff oversight and technical assistance for LE-related issues to installation and garrison commanders and IMCOM regional directors. They will also provide supported commands with staff review and advice concerning

doctrine, organization, training, materiel, leadership and education, personnel and facilities, and resourcing and LE policy development.

(2) Comply with crime records and reporting requirements of this regulation and ensure that documents and forms, listed in section III of appendix A, are accurately completed and forwarded as prescribed per this regulation.

(3) Respond to routine requests for information received from local, State, Federal, international law enforcement agencies, and requests for information under Title 5, United States Code, Section 552a (The Privacy Act) and Title 5, United States Code, Section 552 (The Freedom of Information Act).

(4) Enforce all laws and regulations pertaining to misdemeanors and felonies, if declined by USACIDC.

(5) Assure adherence by Army installation LE personnel to provisions of this regulation, with the exception of changes dictated by the U.S. Magistrate or U.S. District Court of the judicial district in which their installation is located.

(6) Ensure violations issued on the Central Violations Bureau (CVB) Form (United States District Court Violation Notice) are entered into the DA Form 190–45–SG, also known as ALERTS, and closed when complete. The DD Form 1408 (Armed Forces Traffic Ticket) will be entered into the DA Form 190–45–SG, also known as ALERTS, for violations outside the continental United States (OCONUS).

(7) Ensure that release of LE information complies with 5 USC 552a (The Privacy Act), 5 USC 552 (The Freedom of Information Act), and chapter 3 of this regulation.

(8) Ensure that funding requirements for NCIC equipment, software, and maintenance are submitted through the appropriate resourcing channels.

(9) Ensure that all NCIC transactions are in compliance with this regulation, operating policies of the NCIC, and the State CTA.

(10) Ensure that NCIC terminals are staffed 24 hours per day or secured to preclude access by unauthorized personnel.

(11) Ensure that NCIC terminal operators successfully complete required training on the NCIC and State systems.

(12) Appoint an NCIC terminal coordinator in writing, identifying their duties and responsibilities.

(13) Ensure execution of NCIC inquiries for the USACIDC special agents in support of criminal investigations or related inquiries.

(14) Be responsive to the Federal service coordinator and State CTA in operating the NCIC and State law enforcement telecommunications systems and for access to, and dissemination of, criminal information. (Note: OCONUS exempt from NCIC requirements throughout this regulation.)

(15) Ensure execution of necessary liaison and coordination with civilian authorities, within their geographic area of responsibility. For details on these assignments, see table 1–1.

(16) Upon apprehension or initiation of investigation of a Soldier, DOD civilian, or contractor, by installation or civilian LE officer immediately notify (within 4 hours) the chain of command (commander, deputy director, or civilian equivalent) and document via the LER. (Exception for semi-covert investigations in which notification could compromise the integrity or successful resolution of investigations, in these cases, only if the subject is notified that he or she is under investigation, then the commander will also be informed of the investigation).

(17) Release Soldiers under law enforcement control only to the commander, command sergeant major, or first sergeant via DD Form 2708 (Receipt for Pre Trial/Post Trial Prisoner or Detained Person).

(18) Ensure accountability for all Soldiers and prisoners confined in local civilian confinement facilities using the Army Corrections Information System module of DA Form 190-45-SG, also known as ALERTS. AR 190–47 authorizes installations without an Army corrections facility to contract the incarceration of Army pretrial prisoners in Federally approved local civilian jails, when military facilities are not available and prisoners are sentenced to confinement locally for 30 or fewer days. Copies of agreements will be forwarded to the Army Corrections Command for review and recommendation. See AR 190–47 for other confinement policy and procedures.

(19) Screen all LERs for possible alcohol or other drug abuse involvement, and provide the Army Substance Abuse Program (ASAP) manager with excerpts from the blotter report on all incidents involving alcohol, drugs, or other substance abuse on a daily basis.

(20) Request the assistance of civilian local and State law enforcement agencies, upon request from a reserve component commander, to determine the whereabouts and welfare of USAR Soldiers when a second unexcused absence from a unit training assembly occurs.

*h. Directors of Emergency Services.* Each Director of Emergency Services, for installations and for regions, is responsible for maintaining the DA Form 190–45–SG, also known as ALERTS. The system administrators for the DA Form 190–45–SG are appointed, in writing, by the installation.

*i. Victim/witness coordinator.* The victim/witness coordinator, who is appointed in writing by the installation PMO or DES, is responsible for fulfilling the LE notification requirements to all identified victims and witnesses of crime.

*j. U.S. Army Reserve commanders.* All U.S. Army Reserve (USAR) commanders unit, agency, or activity commanders will submit SIRs thru the Army Reserve Watch, then follow the steps in paragraph *k,* below.

*k. Commanders of active, unified, or combined command elements.* All active Army and USAR unit, agency, or activity commanders, to include commanders of Army elements of unified or combined commands, will—

(1) Notify the continental United States (CONUS) installation commander having geographic reporting responsibility or the overseas ASCC commander and the appropriate region DES, as appropriate, of serious incidents immediately.

(2) Provide follow up information for supplementary reporting, as necessary.

(3) The ARNGUS reports will include the State Adjutant General Office and the National Guard Bureau as information addressees.

(4) In accordance with AD 2011-17, dated 21 September 2011, all U.S. Army commissioned officers, warrant officers, and enlisted members above the pay grade of E–6, who are on active duty or in an active status in the reserve component, will report in writing via DA Form 4187 (Personnel Action), any conviction of such member for violation of a criminal law of the United States—whether or not the member is on active duty or in an active status at the time of the conduct that provides the basis for the conviction.

*l. Commanders of installations within the continental United States.* The commanders of CONUS installations may transfer reporting responsibility to another CONUS installation commander by mutual agreement, subject to PMG approval. Transfer procedures are described in paragraph 9–5 of this regulation.

*m. Director, U.S. Army Criminal Investigation Laboratory.* The Director, USACIL will—

(1) Be responsible to the PMG for guidance identifying live-scan, electronic, fingerprint and palm-print equipment that is compatible with the FBI's electronic fingerprint transmission specification and electronic biometric transmission standard, the American National Standards Institute, the National Institute of Standards and Technology, national LE standards for fingerprints or palm prints, and USACIL's Automated Fingerprint Identification System.

(2) Be responsible for all USACIL Integrated Automated Fingerprint Identification System (IAFIS) transactions involving latent finger and palm prints.

(3) Be responsible for Army LE coordination with the FBI concerning IAFIS databases to include the criminal master file, civil files, and special latent cognizant files.

(4) Enter into a user agreement with CJIS concerning the USACIL's adherence to all CJIS operating policies and regulations involving latent print transactions and IAFIS files.

(5) Enter into a user agreement with CJIS concerning the Army's adherence to all CJIS operating policies and regulations involving latent print transactions and special latent cognizant files.

*n. National Crime Information Center terminal coordinator.* The NCIC terminal coordinator will—

(1) Ensure the accuracy of entries and validating records.

(2) Respond to inquiries.

(3) Ensure physical security of the terminal.

*o. National Crime Information Center terminal coordinator at the U.S. Army Deserter Information Point.* The NCIC terminal coordinator at the U.S. Army Deserter Information Point (USADIP) will be responsible for—

(1) The NCIC entries concerning U.S. Army deserters.

(2) The NCIC terminal operations at the Personnel Control Facility, Fort Knox, KY.

(3) Criminal-history record checks for identifying and verifying Army deserters, parole violators, and escaped prisoners.

(4) The NCIC records of parole violators and escaped military prisoners.

*p. Installation staff judge advocates.* SJAs will advise Army installation commanders and installation PMs, DESs, or security officers concerning implementation of this regulation as requested.

**Table 1–1**
**Geographical area of responsibilities**

| Installation | Area of responsibility |
| --- | --- |
| Aberdeen Proving Ground | a. Delaware county |
| | (1) New Castle |
| | b. Maryland counties |
| | (1) Baltimore |
| | (2) Cecil |
| | (3) Harford |
| | (4) Kent |
| | c. New Jersey counties |
| | (1) Atlantic |
| | (2) Camden |
| | (3) Cape May |
| | (4) Cumberland |
| | (5) Gloucester |

**Table 1–1**
**Geographical area of responsibilities—Continued**

| Installation | Area of responsibility |
|---|---|
| | (6) Salem |
| | d. Pennsylvania counties |
| | (1) Berks |
| | (2) Bucks |
| | (3) Chester |
| | (4) Delaware |
| | (5) Lancaster |
| | (6) Lebanon |
| | (7) Lehigh |
| | (8) Montgomery |
| | (9) Northampton |
| | (10) Philadelphia |
| Fort AP Hill, VA | a. Virginia counties |
| | (1) Caroline |
| | (2) Essex |
| | (3) Hanover |
| | (4) King and Queen |
| | (5) King George |
| | (6) King William |
| | (7) Lancaster |
| | (8) Louisa |
| | (9) Northumberland |
| | (10) Richmond |
| | (11) Spotsylvania |
| | (12) Westmoreland |
| | b. West Virginia counties |
| | (1) Boone |
| | (2) Clay |
| | (3) Fayette |
| | (4) Greenbrier |
| | (5) Jackson |
| | (6) Kanawha |
| | (7) Lincoln |
| | (8) Logan |
| | (9) McDowell |
| | (10) Mercer |
| | (11) Monroe |
| | (12) Nicholas |
| | (13) Putman |
| | (14) Raleigh |
| | (15) Roane |
| | (16) Summers |
| | (16) Wyoming |
| Fort Belvoir, VA | a. Virginia counties |
| | (1) Albemarle |
| | (2) Augusta |
| | (3) Bath |
| | (4) Clarke |
| | (5) Culpeper |
| | (6) Fauquier |
| | (7) Frederick |
| | (8) Greene |
| | (9) Highland |
| | (10) Madison |
| | (11) Orange |
| | (12) Page |
| | (13) Rappahannock |
| | (14) Rockingham |
| | (15) Shenandoah |
| | (16) Stafford |
| | (17) Warren |
| | b. West Virginia counties |
| | (1) Barbour |
| | (2) Berkeley |
| | (3) Braxton |
| | (4) Brooke |
| | (5) Calhoun |
| | (6) Dodd-Ridge |
| | (7) Gilmer |
| | (8) Grant |

**Table 1–1**
**Geographical area of responsibilities—Continued**

| Installation | Area of responsibility |
|---|---|
| | (9) Hampshire |
| | (10) Hancock |
| | (11) Hardy |
| | (12) Harrison |
| | (13) Jefferson |
| | (14) Lewis |
| | (15) Marion |
| | (16) Marshall |
| | (17) Mineral |
| | (18) Monongalia |
| | (19) Morgan |
| | (20) Ohio |
| | (21) Pendleton |
| | (22) Pleasants |
| | (23) Pocahontas |
| | (24) Preston |
| | (25) Randolph |
| | (26) Ritchie |
| | (27) Taylor |
| | (28) Tucker |
| | (29) Tyler |
| | (30) Upshur |
| | (31) Webster |
| | (32) Wetzel |
| | (33) Wirt |
| | (34) Wood |
| Fort Benning, GA | a. Florida counties |
| | (1) Bay |
| | (2) Calhoun |
| | (3) Columbia |
| | (4) Dixie |
| | (5) Escambia |
| | (6) Franklin |
| | (7) Gadsden |
| | (8) Gilchrist |
| | (9) Gulf |
| | (10) Hamilton |
| | (12) Jackson |
| | (11) Holmes |
| | (13) Jefferson |
| | (14) Lafayette |
| | (15) Leon |
| | (16) Liberty |
| | (17) Madison |
| | (18) Okaloosa |
| | (19) Santa Rosa |
| | (20) Suwannee |
| | (21) Taylor |
| | (22) Wakulla |
| | (23) Walton |
| | (24) Washington |
| | b. Georgia counties |
| | (1) Baker |
| | (2) Bartow |
| | (3) Berrien |
| | (4) Bleckley |
| | (5) Calhoun |
| | (6) Carroll |
| | (7) Chattahoochee |
| | (8) Cherokee |
| | (9) Clay |
| | (10) Clayton |
| | (11) Cobb |
| | (12) Colquitt |
| | (13) Columbus-Muscogee |
| | (14) Cook |
| | (15) Coweta |
| | (16) Crawford |
| | (17) Crisp |
| | (18) Decatur |

**Table 1–1**
**Geographical area of responsibilities—Continued**

| Installation | Area of responsibility |
|---|---|
| | (19) Dooly |
| | (20) Dougherty |
| | (21) Douglas |
| | (22) Early |
| | (23) Fayette |
| | (24) Fulton |
| | (25) Grady |
| | (26) Haralson |
| | (27) Harris |
| | (28) Heard |
| | (29) Houston |
| | (30) Lamar |
| | (31) Lee |
| | (32) Macon |
| | (33) Marion |
| | (34) Meriwether |
| | (35) Miller |
| | (36) Mitchell |
| | (37) Monroe |
| | (38) Paulding |
| | (39) Peach |
| | (40) Pickens |
| | (41) Pike |
| | (42) Pulaski |
| | (43) Quitman |
| | (44) Randolph |
| | (45) Schley |
| | (46) Seminole |
| | (47) Spalding |
| | (48) Stewart |
| | (49) Sumter |
| | (50) Talbot |
| | (51) Taylor |
| | (52) Terrell |
| | (53) Thomas |
| | (54) Tift |
| | (55) Troup |
| | (56) Turner |
| | (57) Upson |
| | (58) Webster |
| | (59) Wilcox |
| | (60) Worth |
| | c. Alabama counties |
| | (1) Chambers |
| | (2) Lee |
| | (3) Russell |
| Fort Bliss, TX | a. All New Mexico counties, except |
| | (1) Catron |
| | (2) Grant |
| | (3) Hidalgo |
| | b. All Texas counties west of, and including |
| | (1) Bailey |
| | (2) Crockett |
| | (3) Dawson |
| | (3) Hockley |
| | (4) Lubbock |
| | (5) Lynn |
| | (6) Martin |
| | (7) Midland |
| | (8) Pecos |
| | (9) Terrell |
| | (10) Upton |
| | (11) Val Verde |

**Table 1–1**
**Geographical area of responsibilities—Continued**

| Installation | Area of responsibility |
|---|---|
| Fort Bragg, NC | a. All North Carolina counties<br>b. Tennessee counties<br>(1) Carter<br>(2) Johnson<br>(3) Sullivan<br>(4) Unicoi<br>(5) Washington<br>c. Virginia counties<br>(1) Bland<br>(2) Buchanan<br>(3) Carroll<br>(4) Dickenson<br>(5) Floyd<br>(6) Grayson<br>(7) Henry<br>(8) Lee<br>(9) Patrick<br>(10) Pulaski<br>(11) Russell<br>(12) Scott<br>(13) Smyth<br>(14) Tazewell<br>(15) Washington<br>(16) Wise<br>(17) Wythe |
| Fort Buchanan, PR | a. All of Puerto Rico<br>b. U.S. Virgin Islands |
| Fort Campbell, KY | a. Arkansas counties<br>(1) Crittenden<br>(2) Lee<br>(3) Mississippi<br>(4) Monroe<br>(5) Phillips<br>(6) St. Francis<br>b. All Illinois counties east and south of, and including<br>(1) Clark<br>(2) Cumberland<br>(3) Fayette<br>(4) Franklin<br>(5) Jackson<br>(6) Jefferson<br>(7) Marion<br>(8) Shelby<br>c. All Kentucky counties west of, and including<br>(1) Allen<br>(2) Butler<br>(3) Daviess<br>(4) Ohio<br>(5) Warren<br>d. All Mississippi counties north of, and including<br>(1) Clay<br>(2) Coahoma<br>(3) Grenada<br>(4) Monroe<br>(5) Tallahatchie<br>(6) Webster<br>e. All Tennessee counties not listed under Fort Bragg, Fort Knox, and Redstone Arsenal |
| Carlisle Barracks, PA | a. All Ohio counties east of, and including<br>(1) Coshocton<br>(2) Guernsey<br>(3) Holmes<br>(4) Lorain<br>(5) Medina<br>(6) Monroe<br>(7) Noble<br>(8) Wayne<br>b. All Pennsylvania counties not listed under Aberdeen Proving Ground |

**Table 1–1**
**Geographical area of responsibilities—Continued**

| Installation | Area of responsibility |
|---|---|
| Fort Carson, CO | a. All Colorado counties<br>b. All Montana counties east of, and including<br>(1) Fergus<br>(2) Park<br>(3) Phillips<br>(4) Sweet Grass<br>(5) Wheatland<br>c. All Nebraska counties west of, and including<br>(1) Arthur<br>(2) Grant<br>(3) Hayes<br>(4) Hitchcock<br>(5) Keith<br>(6) Perkins<br>(7) Sheridan<br>d. All Utah counties<br>e. All Wyoming counties |
| Fort Detrick, MD | Maryland counties<br>(1) Allegany<br>(2) Carroll<br>(3) Frederick<br>(4) Garrett<br>(5) Washington |
| Fort Drum, NY | a. All New York counties except those listed under Fort Hamilton<br>b. All Maine counties<br>c. All Massachusetts counties<br>d. All New Hampshire counties<br>e. All Vermont counties |

**Table 1–1**
**Geographical area of responsibilities—Continued**

| Installation | Area of responsibility |
|---|---|
| Fort Gordon, GA | Georgia counties<br>(1) Baldwin<br>(2) Banks<br>(3) Barrow<br>(4) Bibb<br>(5) Bulloch<br>(6) Burke<br>(7) Butts<br>(8) Candler<br>(9) Clarke<br>(10) Columbia<br>(11) Dawson<br>(12) DeKalb<br>(13) Elbert<br>(14) Emanuel<br>(15) Forsyth<br>(16) Franklin<br>(17) Glascock<br>(18) Greene<br>(19) Gwinnett<br>(20) Habersham<br>(21) Hall<br>(22) Hancock<br>(23) Hart<br>(24) Henry<br>(25) Jackson<br>(26) Jasper<br>(27) Jefferson<br>(28) Jenkins<br>(29) Johnson<br>(30) Jones<br>(31) Laurens<br>(32) Lincoln<br>(33) Lumpkin<br>(34) Madison<br>(35) McDuffie<br>(36) Montgomery<br>(37) Morgan<br>(38) Newton<br>(39) Oconee<br>(40) Oglethorpe<br>(41) Putnam<br>(42) Rabun<br>(43) Richmond<br>(44) Rockdale<br>(45) Screven<br>(46) Stephens<br>(47) Taliaferro<br>(48) Towns<br>(49) Treutlen<br>(50) Twiggs<br>(51) Union<br>(52) Walton<br>(53) Warren<br>(54) Washington<br>(55) Wheeler<br>(56) White<br>(57) Wilkes<br>(58) Wilkinson<br>f. All Rhode Island counties<br>g. All Vermont counties |
| Fort Hamilton, NY | a. All Connecticut counties<br>b. All New York counties south of, and including<br>(1) Columbia<br>(2) Greene<br>(3) Sullivan<br>(4) Ulster<br>c. All New Jersey counties except those listed under Aberdeen Proving Ground<br>d. All Rhode Island counties |

**Table 1–1**
**Geographical area of responsibilities—Continued**

| Installation | Area of responsibility |
|---|---|
| Fort Hood, TX | a. All Texas counties south, and east, of<br>(1) Cottle<br>(2) Crockett<br>(3) Dawson<br>(4) Floyd<br>(5) Foard<br>(6) Hale<br>(7) Lamb<br>(8) Lubbock<br>(9) Lynn<br>(10 Martin<br>(11) Midland<br>(12) Motley<br>(13) Upton<br>(14) Wichita<br>(15) Wilbarger<br>(16) Val Verde |
| Fort Huachuca, AZ | a. All Arizona counties<br>b. New Mexico counties<br>(1) Catron<br>(2) Grant<br>(3) Hidalgo |
| Fort Irwin, CA | a. All California counties not listed under Fort Lewis<br>b. All Nevada counties |
| Fort Jackson, SC | a. All South Carolina counties, except<br>(1) Beaufort<br>(2) Jasper<br>b. Tennessee counties<br>(1) Cocke<br>(2) Greene |

**Table 1–1**
**Geographical area of responsibilities—Continued**

| Installation | Area of responsibility |
| --- | --- |
| Fort Knox, KY | a. All Illinois counties east and north of, and including<br>(1) Boone<br>(2) Coles<br>(3) De Kalb<br>(4) DeWitt<br>(5) Edgar<br>(6) LaSalle<br>(7) Livingston<br>(8) Macon<br>(9) McLean<br>(10) Moultrie<br>b. All Indiana counties<br>c. All Kentucky counties east of<br>(1) Allen<br>(2) Butler<br>(3) Daviess<br>(4) Ohio<br>(5) Warren<br>d. All Michigan counties<br>e. All Ohio counties west of<br>(1) Coshocton<br>(2) Guernsey<br>(3) Holmes<br>(4) Lorain<br>(5) Medina<br>(6) Monroe<br>(7) Noble<br>(8) Wayne<br>f. Tennessee counties<br>(1) Campbell<br>(2) Claiborne<br>(3) Clay<br>(4) Fentress<br>(5) Hancock<br>(6) Hawkins<br>(7) Jackson<br>(8) Morgan<br>(9) Overton<br>(10) Pickett<br>(11) Scott<br>g. West Virginia counties<br>(1) Cabell<br>(2) Mason<br>(3) Mingo<br>(4) Wayne |
| Fort Leavenworth, KS | a. All Iowa counties<br>b. All Kansas counties east of, and including<br>(1) Brown<br>(2) Coffey<br>(3) Jackson<br>(4) Montgomery<br>(5) Osage<br>(6) Shawnee<br>(7) Wilson<br>(8) Woodson<br>c. All Minnesota counties<br>d. All Wisconsin counties |

**Table 1–1**
**Geographical area of responsibilities—Continued**

| Installation | Area of responsibility |
|---|---|
| Fort Lee, VA | Virginia counties<br>(1) Accomack<br>(2) Alleghany<br>(3) Amelia<br>(4) Amherst<br>(5) Appomattox<br>(6) Bedford<br>(7) Botetourt<br>(8) Brunswick<br>(9) Buckingham<br>(10) Campbell<br>(11) Charles City<br>(12) Charlotte<br>(13) Chesapeake City<br>(14) Chesterfield<br>(15) Colonial Heights<br>(16) Craig<br>(17) Cumberland<br>(18) Dinwiddie<br>(19) Franklin<br>(20) Fluvanna<br>(21) Giles<br>(22) Gloucester<br>(23) Goochland<br>(24) Greensville<br>(25) Halifax<br>(26) Hampton Cities<br>(27) Henrico<br>(28) Hopewell<br>(29) Isle of Wight<br>(30) James City<br>(31) Lunenburg<br>(32) Mathews<br>(33) Mecklenburg<br>(34) Middlesex<br>(35) Montgomery<br>(36) Nelson<br>(37) New Kent<br>(38) Newport News<br>(39) Norfolk City<br>(40) Northampton<br>(41) Nottoway<br>(42) Petersburg<br>(43) Pittsylvania<br>(44) Portsmouth City<br>(45) Powhatan<br>(46) Prince Edward<br>(47) Prince George<br>(48) Roanoke<br>(49) Rockbridge<br>(50) Southampton<br>(51) Suffolk City<br>(52) Surry<br>(53) Sussex<br>(54) Virginia Beach City<br>(55) York |
| Fort Leonard Wood, MO | a. All Arkansas counties not listed under Fort Campbell, Fort Polk, and Fort Sill<br>b. All Illinois counties not listed under Fort Campbell and Fort Knox<br>c. All Missouri counties |

**Table 1–1**
**Geographical area of responsibilities—Continued**

| Installation | Area of responsibility |
|---|---|
| Fort Lewis, WA | a. California counties<br>(1) Del Norte<br>(2) Humboldt<br>(3) Modoc<br>(4) Shasta<br>(5) Siskiyou<br>(6) Trinity<br>b. All Idaho counties<br>c. All Montana counties west of<br>(1) Fergus<br>(2) Park<br>(3) Phillips<br>(4) Sweet Grass<br>(5) Wheatland<br>d. All Oregon counties<br>e. All Washington counties |
| Fort Meade, MD | a. All Maryland counties not listed under Fort Myer, Fort Detrick, and Aberdeen Proving Ground<br>b. Delaware counties<br>(1) Kent<br>(2) Sussex |
| Fort Myer, VA | a. All of District of Columbia<br>b. Maryland counties<br>(1) Montgomery<br>(2) Prince George's<br>c. Virginia cities<br>(1) Alexandria<br>(2) Fairfax<br>(3) Manassas<br>(4) Manassas Park<br>d. Virginia counties<br>(1) Arlington<br>(2) Fairfax<br>(3) Loudoun<br>(4) Prince William |
| Fort Polk, LA | a. All Arkansas counties south of, and including<br>(1) Arkansas<br>(2) Desha<br>(3) Garland<br>(4) Grant<br>(5) Jefferson<br>(6) Montgomery<br>(7) Polk<br>(8) Saline<br>b. All Louisiana parishes<br>c. All Mississippi counties west and south of, and including<br>(1) Attala<br>(2) Bolivar<br>(3) Carroll<br>(4) Jefferson Davis<br>(5) Leake<br>(6) Leflore<br>(7) Marion<br>(8) Montgomery<br>(9) Rankin<br>(10) Simpson<br>(11) Sunflower |

**Table 1–1**
**Geographical area of responsibilities—Continued**

| Installation | Area of responsibility |
|---|---|
| Redstone Arsenal | a. All Alabama counties except those listed under Fort Rucker |
| | b. Georgia counties |
| | (1) Catoosa |
| | (2) Chattooga |
| | (3) Dade |
| | (4) Fannin |
| | (5) Floyd |
| | (6) Gilmer |
| | (7) Gordon |
| | (8) Murray |
| | (9) Polk |
| | (10) Walker |
| | (11) Whitfield |
| | c. Tennessee counties |
| | (1) Anderson |
| | (2) Bledsoe |
| | (3) Blount |
| | (4) Bradley |
| | (5) Grainger |
| | (6) Hamblen |
| | (7) Hamilton |
| | (8) Jefferson |
| | (9) Knox |
| | (10) Loudon |
| | (11) Marion |
| | (12) McMinn |
| | (13) Meigs |
| | (14) Monroe |
| | (15) Polk |
| | (16) Rhea |
| | (17) Sequatchie |
| | (18) Sevier |
| | (19) Union |
| Fort Riley, KS | a. All Kansas counties not listed under Fort Leavenworth |
| | b. All Nebraska counties east of |
| | (1) Arthur |
| | (2) Grant |
| | (3) Hayes |
| | (4) Hitchcock |
| | (5) Keith |
| | (6) Perkins |
| | (7) Sheridan |
| | c. All North Dakota counties |
| | d. All South Dakota counties |
| Fort Rucker, AL | a. All Alabama counties south of, and including |
| | (1) Bibb |
| | (2) Chilton |
| | (3) Coosa |
| | (4) Greene |
| | (5) Hale |
| | (6) Sumter |
| | (7) Tallapoosa |
| | b. All Mississippi counties except those listed |
| | under Fort Campbell and Fort Polk |

**Table 1–1**
**Geographical area of responsibilities—Continued**

| Installation | Area of responsibility |
|---|---|
| Fort Sill, OK | a. Arkansas counties |
| | (1) Crawford |
| | (2) Franklin |
| | (3) Logan |
| | (4) Scott |
| | (5) Sebastian |
| | b. All Oklahoma counties |
| | c. All Texas counties north of, and including |
| | (1) Cottle |
| | (2) Floyd |
| | (3) Foard |
| | (4) Hale |
| | (5) Lamb |
| | (6) Motley |
| | (7) Wichita |
| | (8) Wilbarger |

**Table 1–1**
**Geographical area of responsibilities—Continued**

| Installation | Area of responsibility |
|---|---|
| Fort Stewart, GA | a. All Florida counties except |
|  | (1) Bay |
|  | (2) Calhoun |
|  | (3) Columbia |
|  | (4) Dixie |
|  | (5) Escambia |
|  | (6) Franklin |
|  | (7) Gadsden |
|  | (8) Gilchrist |
|  | (9) Gulf |
|  | (10) Hamilton |
|  | (11) Holmes |
|  | (12) Jackson |
|  | (13) Jefferson |
|  | (14) Lafayette |
|  | (15) Leon |
|  | (16) Liberty |
|  | (17) Madison |
|  | (18) Okaloosa |
|  | (19) Santa Rosa |
|  | (20) Suwannee |
|  | (21) Taylor |
|  | (22) Wakulla |
|  | (23) Walton |
|  | (24) Washington |
|  | b. Georgia counties |
|  | (1) Appling |
|  | (2) Atkinson |
|  | (3) Bacon |
|  | (4) Ben Hill |
|  | (5) Brantley |
|  | (6) Brooks |
|  | (7) Bryan |
|  | (8) Camden |
|  | (9) Charlton |
|  | (10) Chatham |
|  | (11) Clinch |
|  | (12) Coffee |
|  | (13) DODge |
|  | (14) Effingham |
|  | (15) Echols |
|  | (16) Evans |
|  | (17) Glynn |
|  | (18) Irwin |
|  | (19) Jeff Davis |
|  | (20) Lanier |
|  | (21) Liberty |
|  | (22) Long |
|  | (23) Lowndes |
|  | (24) McIntosh |
|  | (25) Pierce |
|  | (26) Tattnall |
|  | (27) Telfair |
|  | (28) Toombs |
|  | (29) Ware |
|  | (30) Wayne |
|  | c. South Carolina counties |
|  | (1) Beaufort |
|  | (2) Jasper |
| USAREUR/IMCOM EUROPE | All of Europe |
| USARPAC/IMCOM PACIFIC | a. All of Alaska |
|  | b. All of Hawaii |
|  | c. All of Japan |
| USAG–Red Cloud | Area I |
| USAG–Yongsan | Area II |
| USAG–Humphreys | Area III |

**Table 1–1**
**Geographical area of responsibilities—Continued**

| Installation | Area of responsibility |
| --- | --- |
| USAG–Daegu | Area IV |

### 3–7. Accounting for military police record disclosure

*a.* The AR 340–21 prescribes accounting policies and procedures concerning the disclosure of MP records.

*b.* The installation PMs and DESs will develop local procedures to ensure that disclosure of MP records as described in AR 340–21 are available on request.

*c.* In every instance where records are disclosed, the individuals, agencies, or components are reminded that use or further disclosure of any MP reports, military police investigator's reports, or other information received must be in compliance with DODI 5505.7, paragraph 6.5.2., which states that "judicial or adverse administrative actions shall not be taken against individuals or entities based solely on the fact that they have been titled or indexed due to a criminal investigation."

### 3–8. Release of law enforcement information furnished by foreign governments or international organizations

*a.* Information furnished by foreign governments or international organizations is subject to disclosure, unless exempted by AR 25–55, AR 340–21, Federal statutes, or executive orders.

*b.* Release of U.S. information (classified military information or controlled unclassified information) to foreign governments is accomplished in accordance with AR 380–10.

### 3–9. Release of domestic incidents reports to the Army Family Advocacy Program

*a.* Installation PMO or DES will comply with the reporting requirements in accordance with AR 608–18.

*b.* In addition to substantiated incidents of domestic violence, the installation PM or DES will notify the family advocacy program manager and social work services of all incidents in which a preponderance of indicators reveal a potential risk of reoccurrence and increasing severity of maltreatment, which could lead to domestic violence or child abuse. Installation PMs and DESs will ensure these notifications are recorded in the official MP journal in DA Form 190–45–SG, also known as ALERTS. This is done to—

(1) Establish a history of incidents that indicate an emerging pattern of risk of maltreatment or victimization to Soldiers and/or Family members. See AR 608–18 for incidents that indicate maltreatment.

(2) Develop a trend history of unsubstantiated or unresolved incidents, in order to prevent possible violence or maltreatment from occurring.

## Chapter 4
## Offense Reporting

### 4–1. General

*a.* This chapter establishes policy for reporting founded criminal offenses investigated by Army installation offices; any ACOM, ASCC, or DRU's PM or DES offices; and the IMCOM.

*b.* This chapter prescribes reporting procedures, which require the use of DA Form 190–45–SG and a systems administrator to ensure that the system is properly functioning. Reporting requirements include—

(1) Reporting individual offenders to the USACRC, NCIC, CJIS, and the DOD.

(2) Sending crime reports to the DOD. The DOD collects data from all the Services using the DIBRS. The Army inputs its data into DIBRS, using DA Form 190–45–SG, also known as ALERTS. Any data reported to DIBRS is only as good as the data reported in DA Form 190–45–SG, also known as ALERTS, so the need for accuracy in reporting incidents and using proper offense codes is critical. The DIBRS data from DOD is eventually sent to the DOJ's National Incident-Based Reporting System (NIBRS). The data is eventually incorporated within the uniform crime report (UCR).

*c.* An installation PMO or DES initiating an LER or other Army LE investigation has reporting responsibility explained throughout this regulation and will refer to AR 195–2 for a list of offense investigative responsibilities.

*d.* In the event the installation PMO or DES determines that his or her office does not have investigative responsibility or authority, the LER will be terminated and the case cleared by exceptional clearance. A case cleared by exceptional clearance is closed by the installation PMO or DES when no additional investigative activity will be performed, or when the case is referred to another agency. If a case is transferred to the installation PMO or DES, from another LE investigation agency, the gaining installation PMO or DES will have all reporting responsibility using the DA Form 190–45–SG, also known as ALERTS.

### 4–2. Law Enforcement Report

*a. General use.* The LER is used to—

(1) Record all information or complaints received or observed by the installation PMO or DES.

(2) Serve as a record of all installation PMO or DES activities.

(3) Document entries made into DA Form 190–45–SG, also known as ALERTS, and other automated systems.

(4) Report information concerning investigations conducted by civilian LE agencies related to matters of concern to the Army.

(5) Advise commanders and supervisors of offenses and incidents involving personnel or property associated with their command or functional responsibility.

(6) Report information developed by commanders investigating incidents or conducting inspections that result in the disclosure of evidence that a criminal offense has been committed.

*b. Special use.* The LER will be used to—

(1) Transmit a completed DA Form 3946 (Military Police Traffic Accident Report). This will include statements, sketches, or photographs that are sent to a commander or other authorized official.

(2) Transmit the Central Violations Bureau (CVB) Form when required by local installation or U.S. Magistrate Court policy. The LER is used to advise commanders or supervisors that military, civilian, or contract personnel have been cited on a Central Violations Bureau Form.

(3) Match individual subjects with individual victims or witnesses and founded criminal offenses. This is a Federal statutory requirement. This is done using the "relationships" tab within DA Form 190–45–SG, also known as ALERTS.

(4) Document victim or witness liaison activity.

(5) Indicate confirmation of command notification, and medical and nonmedical notification, as applicable (such as a physician, ASAP, (AFAP) (social services), a chaplain, local prosecutors, or LE), prior to release of subjects.

*c. Distribution.* The LER will be prepared in three copies, signed by the installation PMO, DES, or a designated representative, and distributed as follows—

(1) Send the original to USACRC. Further information, arising or developed at a later time, will be forwarded to USACRC using a supplemental LER. Reports submitted to USACRC will include a good, legible copy of all statements, photographs, sketches, laboratory reports, and other information that substantiates the offense or improves understanding of the report. The USACRC control number must be recorded on every LER sent to the USACRC. A report will not be delayed for adjudication or commander's action beyond 60 days.

(2) One copy is retained in the installation PMO or DES files.

(3) One copy is forwarded through the field grade commander to the immediate commander or supervisor of each subject or organization involved in an offense.

*d. Changing reports for unfounded offenses.* If an offense is determined to be unfounded, after the case has been forwarded to USACRC, the following actions will be completed—

(1) A supplemental LER, using the same LER number and USACRC control number, will be submitted stating the facts of the subsequent investigation and that the case is unfounded.

(2) A copy of the supplemental LER will be provided to those agencies or activities that received a copy of the completed LER at the time of submission to USACRC and to the commander for action.

*e. "Redacted" copy.* When sending the LER to outside agencies, generate or print a "redacted" LER from the automated DA Form 190–45–SG, also known as ALERTS.

## 4–3. Identifying criminal incidents and subjects of investigation

*a.* An incident will not be reported as a founded offense unless adequately substantiated by police investigation. A person or entity will be reported as the subject of an offense on the LER when credible information exists that the person or entity has committed a criminal offense. The decision to title a person is an operational, rather than a legal, determination. The act of titling and indexing does not, in and of itself, connote any degree of guilt or innocence; rather, it ensures that information in a report of investigation can be retrieved at some future time for LE and security purposes. Judicial or adverse administrative actions will not be based solely on the listing of an individual or legal entity as a subject on the LER.

*b.* The PMO, DES, and USACIDC offices must remind commanders that, in accordance with AR 600–8–2, suspending favorable personnel actions is mandatory when an investigation (formal or informal) is initiated on a Soldier by military or civilian authorities. In addition, commanders will report investigations to their security manager to ensure reporting of derogatory incidents are sent to the DOD Consolidated Adjudication Facility via the Joint Personnel Adjudication System, as outlined in AR 380–67.

*c.* An MP LER is reportable to the USACRC when a subject of an included offense is identified, the offense is founded, and the offense is punishable by confinement of 6 months or more. Not all suspects for a particular offense need be identified for that offense to be categorized as a founded offense. A subject can be a person, corporation, or other legal entity about which credible information exists that would cause a trained investigator to presume that the person, corporation, or other legal entity committed a criminal offense.

*d.* When investigative activity identifies a subject, all facts of the case must be considered. When a person, corporation, or other legal entity is entered in the "subject" block of the LER, their identity is recorded in DA automated systems and the DCII. Once entered into the DCII, the record can only be removed in cases of mistaken identity or if an error was made in applying the credible information standard at the time of listing the entity as a subject of the report. It is emphasized that the credible information error must occur at the time of listing the entity as

the subject of the LER rather than subsequent investigation determining that the LER is unfounded. This policy is consistent with DOD reporting requirements. The Director, USACRC enters individuals from the LER into the DCII.

*e.* The USACRC control numbers are automatically assigned within the DA Form 190–45–SG, also known as ALERTS. Once assigned, a USACRC number can only be deleted by the Crime Records Center. For MP units in immature theaters (such as contingency operations, deployed environments, and so forth), the USACRC control numbers will be manually assigned and made available by the USACRC until the DA Form 190–45–SG, also known as ALERTS, becomes operational or USACRC control numbers are no longer required.

## 4–4. Offense codes

Each offense code describes, as nearly as possible, the complaint or offense by using an alphanumeric code. A chart listing the offense codes that are authorized for use within the Army is available at appendix C. This list will be amended from time to time, based on new reporting requirements mandated by legislation or administrative procedures. The IMCOM, ACOM, ASCC, and DRU commanders, and the installation PMOs and DESs, will be notified by special letters of instruction issued in numerical order from the OPMG when additions or deletions are made to the list. The DA Form 190–45–SG, also known as ALERTS, will be used for all reporting requirements.

## 4–5. Military police codes

*a.* Military police codes (MPCs) identify individual PMOs and DESs. The Director, USACRC will assign MPCs to PMOs and DESs.

*b.* Requests for assignment of a MPC will be included in the planning phase of military operations, exercises, or missions when LE operations are anticipated. The request for a MPC will be submitted as soon as circumstances permit, without jeopardizing the military operation to HQDA, OPMG. Consistent with security precautions, the IMCOM, ACOM, ASCC, and DRU immediately informs HQDA, OPMG when assigned or attached MP units are notified for deployment, mobilization, relocation, activation, or inactivation.

*c.* When an MP unit is alerted for deployment to a location not in an existing PMO or DES's operational area, the receiving combatant commander will request assignment of an MPC number from HQDA, OPMG providing the area of operations does not have an existing MPC number. The receiving combatant commander is further responsible for establishing an operational DA Form 190–45–SG system, also known as ALERTS, for the deployment.

## 4–6. Reserve component, U.S. Army Reserve, and Army National Guard personnel

*a.* When in a military duty status pursuant to official orders (Federal status for ARNG), Reserve and ARNG personnel will be reported as active duty. Otherwise, they will be reported as Reserve and National Guard Soldiers.

*b.* The LER and DA Form 4833 will be forwarded directly to Commander, USAR (ARRC–JAM), 4710 Knox Street, Building 8–1808, Fort Bragg, NC 28310–5010 for Reserve Soldiers. For ARNG Soldiers, a copy of the LER will be sent to the Director, Army National Guard, 1411 Jefferson Davis Highway, Arlington VA 22202–3231.

## 4–7. DA Form 4833 (Commander's Report of Disciplinary or Administrative Action)

*a. Form use.* The DA Form 4833 is used with the LER to—

(1) Record actions taken against identified offenders.

(2) Report the disposition of offenses investigated by civilian LE agencies.

*b. Preparation by the installation PMO or DES office.* The installation PMO or DES initiates this critical document and is responsible for its distribution and for establishing a suspense system to ensure timely response by commanders. Disposition reports are part of the reporting requirements within DA, DOD, and DOJ. The installation PM, DES, and CID offices then send the DA Form 4833 to the subject's unit commander for completion; they also copy furnish the brigade judge advocate and the subject's brigade commander.

*c. Completion by the unit commander.* Company, troop, and battery level commanders are responsible and accountable for completing DA Form 4833 with supporting documentation in all cases investigated by MP, civilian detectives employed by the DA, and the installation PMO or DES. The battalion commander or the first lieutenant colonel in the chain of command is responsible and accountable for completing DA Form 4833 with support documentation (copies of investigations under UCMJ, Article 15; court-martial orders; reprimands; and so on) for all USACIDC investigations. The commander completes the DA Form 4833 within 60 days of receipt and returns it to the originating office (the installation PMO, DES, or CID).

*d. Appropriate blocks for completion.* Commanders will complete the information in the appropriate blocks on the DA Form 4833. The appropriate blocks or blanks will be completed as indicated below—

(1) Action taken (for example, judicial, nonjudicial, or administrative). In the event the commander takes action against the Soldier for an offense other than the one listed on the LER, the revised charge or offense will be specified in the "Remarks" section of the DA Form 4833.

(2) Sentence, punishment, or administrative action imposed.

(3) Should the commander take no action, the DA Form 4833 must be annotated to reflect that fact.

*e. Extenuating circumstances.* If extenuating circumstances prevent the commander from completing the DA Form

4833 within 60 days of receipt, the brigade-level commander will notify the installation PMO or DES of the status and request an extension. The installation PM or DES will notify the garrison commander and the senior commander of delinquent DA Forms 4833 monthly.

(1) There is no requirement for the DA Form 4833 to be completed before the installation PMO or Directorate of Emergency Services submits the completed LER to the USACRC. The DA Form 4833 is, however, desired when submitting FBI Form FD 249 (CJIS Fingerprint Supply/Requisition Form) and/or FBI Form R–84 (Final Disposition Report), to the USACRC.

(2) A delay will have an impact on other reporting requirements (for example, submitting fingerprint cards to the FBI).

*f. Procedures when subjects are reassigned.* When the subject of an offense is reassigned, the installation PM or DES will forward the LER, DA Form 4833, and all pertinent attachments to the gaining installation PM or DES, who must ensure that the new commander completes the document. Copies of the documents will be made and retained by the processing PM or DES before returning the documents to the losing installation PM or DES for completion of automated entries and required reports.

*g. Report on subjects assigned to other installations.* When the LER involves a subject who is assigned to another installation, the initiating installation PM or DES will forward the original and two copies of DA Form 4833 to the PM or DES of the installation where the Soldier is permanently assigned.

*h. Offenses not reportable to Army Crime Records Center.* When the offense is not within a category reportable to USACRC, the original DA Form 4833 is retained by the installation PM or DES.

*i. Civilian court proceedings.* If a Soldier is tried in a civilian court, and the installation PMO or DES is notified of the charges, the installation PMO or DES will initiate an LER and forward the LER and related documents to the installation SJA court liaison to track the disposition. The installation PMO or Directorate of Emergency Services will coordinate with SJA and commanders for final disposition and report the disposition on DA Form 4833 as appropriate. The installation PMO, DES, or other designated person will sign DA Form 4833 before forwarding it to USACRC.

*j. Civilian subjects titled by Army law enforcement.* The PMO, DES, and USACIDC offices will complete and submit FBI Form R–84 (Final Disposition Report) to USACRC for civilian subjects, not subject to UCMJ, who are titled by Army law enforcement. The PMO or DES and USACIDC will complete the DA Form 4833 and submit the form to USACRC for these subjects. The PMO or DES and USACIDC law enforcement will not include these completed DA Forms 4833 for civilian personnel in reporting compliance statistics for commanders. This ensures records of disposition of civilian subjects titled by military LE are available in CJIS to support NCIC background checks for firearms purchases, employment, security clearances, and so on.

*k. Dissemination to other agencies.* A copy of the completed DA Form 4833 reflecting offender disposition will also be provided to those agencies or offices that originally received a copy of the LER when evidence is involved. The evidence custodian will also be informed of the disposition of the case.

*l. Review of offender disposition by the installation Provost Marshal Office or Directorate of Emergency Services.* Upon receipt of DA Form 4833 reflecting no action taken, the PM or DES will review the LER. The review will include, but is not limited to the following—

(1) Determination of the adequacy of supporting documentation.

(2) Contact with subject's commander to ensure all evidence presented is understood.

(3) Whether or not coordination with the supporting SJA should have been sought prior to dispatch of the report to the commander for action.

(4) Identification of functions that warrant additional training of MP or security personnel (for example, search and seizure, evidence handling, or rights warning).

*m. Offender disposition summary reports.* The installation PM or DES will provide the supported commander (normally, the general courts-martial convening authority or other person designated by proper authority) summary data of offender disposition as required or appropriate. Offender disposition summary data will reflect identified offenders on whom final disposition has been reported. This data will be provided in the format and at the frequency specified by the supported commander.

*n. Reporting in the DA Form 190–45–SG (Army Law Enforcement Reporting and Tracking System (ALERTS)).* An offender's disposition will be recorded in DA Form 190–45–SG, also known as ALERTS, on the DA Form 4833 that was automatically generated in DA Form 190–45–SG from the LER.

*o. Administrative closures.* The installation PM or DES will consult with their servicing SJA to administratively close cases older than 2 years where a commander cannot be identified. In these cases the installation PM or DES or designee will sign in block 11 and in the name portion of block 11 will annotate "reporting."

*p. Commander self-initiated DA Form 4833.* In accordance with DODI 7730.47 and DODM 7730.47-m, Vol.1, commanders are also responsible for completing and submitting to installation PMOs or DESs the DA Form 4833. Commanders must complete and submit DA Form 4833 for specified offenses per AR 195–2, appendix B, table B–1. Commanders must refer to Army law enforcement (Military Police Investigation or CID) every credible allegation (that is, supported by probable cause) that an assigned Soldier committed a crime that falls outside of the commander's investigative purview. If a commander initiates the DA Form 4833, the completed form will be forwarded to the

installation PMO or DES for input into DA Form 190–45–SG, also known as ALERTS. The installation PMO or DES will initiate an LER using the information on the DA Form 4833 in order to generate the DA Form 4833 in the automated DA Form 190–45–SG, also known as ALERTS.

(1) The commander will submit a self-initiated DA Form 4833 to their installation PMO/DES based on the following criteria; the commander has completed their command investigation and determined to take action against the offender. The commander will annotate the final disposition of the case on the DA Form 4833; the commander must indicate on the DA Form 4833 the type of action taken (that is, judicial punishment, nonjudicial punishment, administrative reprimand, administrative separation, counseling, and so on).

(2) Commander's self-initiated DA Form 4833 reporting process overview:

(a) If a unit commander has conducted a criminal investigation about an incident not investigated by law enforcement and meets the reporting requirements in AR 195–2, table B–1, the unit commander will access the DA Form 4833 on the Army Publishing Directorate's forms Web site and complete the relevant fields. The unit commander will email the completed and signed DA Form 4833 with the supporting documents (record of commander's inquiry, Article 15, or court-martial paperwork, and so forth) to the supporting installation PMO/DES. For commands not on an installation or commands on a Joint base, the supporting PMO/DES can be found in table 1–1 of this regulation.

(b) Installation PMO/DES will receive the DA Form 4833 from unit commanders and generate an LER from the DA Form 190–45–SG, also known as ALERTS, using the information provided in the supporting documentation. The appropriate offense code from appendix C–1 will be utilized. The first line of the narrative of the LER will state, "This is being completed and reported based on an investigation conducted by the unit commander." The PMO/DES will then copy the information provided by the commander into the DA Form 4833, generated in the automated DA Form 190–45–SG, also known as ALERTS, and close the LER.

## 4–8. Updating DA Form 190–45–SG (Army Law Enforcement Reporting and Tracking System (ALERTS))

The installation PMs or DESs will establish standard operating procedures to ensure that all criminal activity is reported in the electronic DA Form 190–45–SG, also known as the ALERTS database. Timely and accurate reporting is critical. If a case remains open, changes will be made as appropriate. This includes reporting additional witnesses and all aspects of the criminal report. These procedures will include but are not limited to user access, restricted or suspended access when pending an investigation, periodic name checks as deemed necessary by the installation PM or DES, training prior to be granted access and privileges into the automated DA Form 190–45–SG, proper use of the form based upon job requirements, and actions upon misuse of the form.

## 4–9. FBI Form R–84 and final disposition report submission requirements

In general, this paragraph implements DODI 5505.11, which prescribes procedures for Army LE to report offender criminal-history data, by submitting FBI Form FD 249 to USACRC. USACRC forwards this data to the CJIS division of the FBI, for inclusion in the Next Generation Identification Database. This paragraph does not eliminate other requirements to provide criminal-history data, including those concerning the DIBRS.

a. The installation PM or DES will submit offender criminal history data to USACRC, based on a probable cause standard determined in conjunction with the servicing SJA or legal advisor for all—

(1) Members of the military Services investigated for offenses listed in table 4–1, by any Army LE organization.

(2) Civilians investigated for offenses equivalent to those listed in table 4–1. This includes foreign nationals, persons serving with or accompanying an armed force in the field in time of declared war or contingency operations, and persons subject to Public Law 106–523 in accordance with DODI 5525.11.

(3) Military Servicemembers, their dependents, DOD employees, and contractors investigated by foreign law enforcement organizations for offenses equivalent to those listed in DODI 5505.11 and made available to any Army LE organization.

b. For purposes of this paragraph, commanders will notify their installation PMO or DES—

(1) When a military judicial proceeding is initiated or command action is taken in military nonjudicial proceedings pursuant to UCMJ, Article 15 against a military subject investigated by an Army LE organization for an offense listed in table 4–1. Offender criminal history data will not be reported in accordance with this paragraph unless the subject has been investigated by an Army LE agency for an offense listed in table 4–1. For example, if a unit investigates an alleged offense in table 4–1, and initiates a judicial and/or nonjudicial proceeding without an Army LE organization having investigated the subject, then the reporting requirements of this paragraph do not apply.

(2) When they become aware that a non-DOD and/or foreign LE organization has initiated an investigation against a Soldier, military dependent, or DOD civilian employee or contractor, for the equivalent of an offense listed in table 4–1, or punishable pursuant to the United States Code.

(3) Of the final disposition via DA Form 4833 of cases under the circumstances discussed in subparagraphs (1) and (2), above.

c. These are the fingerprint and reporting procedures—

(1) Fingerprints and all information required on FBI Form FD 249 are obtained from military subjects under

investigation by any Army LE organization for offenses listed in table 4–1. Fingerprints and additional required information pertaining to civilian subjects are obtained for offenses punishable pursuant to the United States Code, equivalent to those listed in table 4–1. Where required, a Privacy Act Statement is provided to each suspect whose personal data is collected in accordance with DOD 5400.11–R.

(2) Offender criminal history data records required in accordance with this paragraph is initiated by preparing and submitting an FBI Form FD 249 with the LER, to the Director, USACRC, CICR–CR, 27130 Telegraph Road, Quantico, VA 22134. The Director, USACRC will forward the FBI Form FD 249 to CJIS. The USACRC is used as the central repository for criminal history information in the Army. When required, Army LE organizations should submit all completed FBI Forms R–84 directly to the CJIS Division, FBI per DODI 5505.11.

(3) The originating agency identifier (ORI) identification number used on the FBI Form FD 249 will be VAUSA1400. Two FBI Forms FD 249 will be completed. One will be retained in the installation PMO or DES file. The second will be sent to the Director, USACRC, and processed with the LER. A third set of prints will also be taken on the FBI Form R–84. The FBI Form R–84 requires completion of the disposition portion and entering of the offenses on which the commander took action.

*(a)* For military subjects (investigated by an Army LE organization), the FBI Form FD 249 is submitted when an agent or LE official determines, following coordination with the servicing SJA or legal advisor if necessary (in no case earlier than apprehension (military), arrest (civilian), or the subject interview), that probable cause exists to believe that the person has committed an offense listed in table 4–1. If applicable, such coordination shall be documented in the investigative file.

*(b)* If applicable, approval of a request for discharge, retirement, or resignation in lieu of court-martial, and/or a finding of lack of mental competence to stand trial, is recorded as "final disposition" either on the FBI Form FD 249 or FBI Form R–84.

*(c)* Within 15 calendar days after final disposition of military judicial or nonjudicial proceedings, or the approval of a request for discharge, retirement, or resignation in lieu of court-martial, disposition information shall be reported by Army LE organizations on the FBI Form FD 249, if it has not already been reported on an FBI Form FD 249. Do not hold the FBI Form FD 249 or FBI Form R–84 pending appellate actions. Appellate action affecting the character of an initial disposition must be reported if it occurs. Dispositions that are exculpatory in nature (for example, dismissal of charges, acquittal) are also documented on the FBI Form R–84.

*(d)* For civilian subjects (investigated by an Army LE organization)—

*1.* Submit an FBI Form FD 249 within 15 calendar days of the subject interview, arrest, indictment, or information, as applicable, for offenses punishable pursuant to the U.S. Code that are equivalent to those listed in table 4–1.

*2.* Submit FBI Form R–84 within 15 calendar days after sentencing.

*3.* In cases investigated jointly with another law enforcement organization when that organization agrees to obtain and forward fingerprints and criminal history data to the FBI, prepare a memorandum for the case file. The memorandum shall identify each subject and the law enforcement organization collecting and forwarding the data. A current memorandum of understanding at the organizational level, addressing the requirement to obtain fingerprints and associated data and to forward said information to the FBI, will suffice in lieu of case-specific memorandums. However, copies of the submitted data must be obtained for the case file.

*d.* Information requirements include the following—

(1) The FBI provides blank FBI Form FD 249 and/or FBI Form R–84, pre-addressed envelopes, and further guidelines for submission of criminal history data. Installation PMs and DESs are authorized to requisition the fingerprint cards by sending a request for supplies to: Federal Bureau of Investigation Criminal Justice Information Services Division, Logistical Support Unit, 1000 Custer Hollow Road Clarksburg, WV 26306

(2) Questions regarding supplies may be directed to the Logistical Support Unit at (304) 625–3983; orders may be faxed to (304) 625–3984 or submitted electronically at http://www.fbi.gov/. All fingerprint-related questions should be directed to USACRC prior to contacting the FBI.

(3) Investigators must ensure that the charges annotated on the FBI Form FD 249 reflect the actual charges being pursued through court-martial or nonjudicial punishment. When submitting the FBI Forms FD 249 and FBI Form R–84, charges must be described in commonly understood descriptive terms (for example, murder, rape, robbery, assault, possession of a controlled substance) or by a commonly understood title. Offenses shall not be described solely by references to a UCMJ punitive article or to the U.S. Code or other statutory provision.

(4) The disposition reflected on the FBI Form FD 249 or the FBI Form R–84 must also be described in common language (for example, conviction (include offense(s)), dishonorable discharge, reduction in rank, forfeiture of pay, charges dismissed). The disposition of "conviction" shall only be reported for crimes prosecuted by general or special court-martial yielding a plea or a finding of guilty.

*(a)* Adverse findings resulting from a summary court-martial should be recorded as follows: "Subject found guilty by summary court-martial." Although action by summary courts-martial is disciplinary in nature for a violation of military law, the Supreme Court has ruled that a summary court-martial is not a criminal proceeding in accordance with U.S. Supreme Court Case *Middendorf* v. *Henry,* 425 U.S. 25 (1976).

*(b)* Adverse findings resulting from nonjudicial proceedings pursuant to UCMJ, Article 15 will be recorded as "nonjudicial disciplinary action." An adverse finding or punishment pursuant to UCMJ, Article 15 is a disciplinary action, but does not constitute a criminal proceeding or conviction.

**Table 4–1**
**List of offenses from the Uniform Code of Military Justice**

| UCMJ article | Offense |
| --- | --- |
| 78 | Accessory after the fact (offenses listed in this table) |
| 80 | Attempts (offenses listed in this table) |
| 81 | Conspiracy (offenses listed in this table) |
| 82 | Solicitation |
| 85 | Desertion |
| 90 | Striking or assaulting a superior commissioned officer |
| 91 | Striking or assaulting warrant, noncommissioned, or petty officer |
| 94 | Mutiny or sedition |
| 95 | Resistance, breach of arrest, and escape |
| 97 | Unlawful detention |
| 106 | Spies |
| 106a | Espionage |
| 107 | False official statements |
| 108 | Military property of the United States, sale, loss, damage, destruction, or wrongful disposition |
| 109 | Property other than military property of the United States - waste, spoilage, or destruction |
| 111 | Drunken or reckless operation of vehicle, aircraft, or vessel |
| 112a | Wrongful use, possession, etc., of controlled substance |
| 116 | Riot or breach of peace |
| 118 | Murder |
| 119 | Manslaughter |
| 119a | Death or injury of an unborn child |
| 120 | Rape and carnal knowledge (for offenses committed prior to October 1, 2007) |
| 120 | Rape, sexual assault, and other sexual misconduct (for offenses committed on or after October 1, 2007) |
| 120a | Stalking (for offenses committed on or after October 1, 2007) |
| 121 | Larceny and wrongful appropriation |
| 122 | Robbery |
| 123 | Forgery |
| 123a | Making, drawing, or uttering check, draft, or order without sufficient funds |
| 124 | Maiming |
| 125 | Sodomy |
| 126 | Arson |
| 127 | Extortion |
| 128 | Assault |
| 129 | Burglary |
| 130 | Housebreaking |
| 131 | Perjury |
| 132 | Frauds against the United States |
| 134 | Assault—indecent (for offenses committed prior to October 1, 2007) |

**Table 4–1**
**List of offenses from the Uniform Code of Military Justice—Continued**

| UCMJ article | Offense |
|---|---|
| 134 | Assault—with intent to commit murder, voluntary manslaughter, rape, robbery, sodomy, arson, burglary, or housebreaking |
| 134 | Bribery and graft |
| 134 | Burning with intent to defraud |
| 134 | Child endangerment (for offenses committed on or after October 1, 2007) |
| 134 | Child pornography offenses, to include possession, distribution, production, receipt, viewing, and accessing |
| 134 | Correctional custody—offense against |
| 134 | False or unauthorized pass offenses |
| 134 | False pretenses, obtaining services under |
| 134 | False swearing |
| 134 | Firearm, discharge—willfully, under such circumstances as to endanger human life |
| 134 | Fleeing the scene of an accident |
| 134 | Homicide, negligent |
| 134 | Impersonating commissioned, warrant, noncommissioned, or petty officer, or an agent or official |
| 134 | Indecent acts or liberties with a child (for offenses committed prior to October 1, 2007 |
| 134 | Indecent exposure (for offenses committed prior to October 1, 2007) |
| 134 | Indecent language |
| 134 | Indecent acts with another (for offenses committed prior to October 1, 2007) |
| 134 | Kidnapping |
| 134 | Mail: taking, opening, secreting, destroying, or stealing |
| 134 | Mail: depositing or causing to be deposited obscene matter in |
| 134 | Misprision of serious offense |
| 134 | Obstructing justice |
| 134 | Wrongful interference with an adverse administrative proceeding |
| 134 | Pandering and prostitution (Having someone commit an act of prostitution is still an offense pursuant to UCMJ, Article 134, but if the pandering is "compelled" it becomes an offense under UCMJ, Article 120, if on or after October 1, 2007.) |
| 134 | Perjury: subornation of |
| 134 | Public record: altering, concealing, removing, mutilating, obliterating, or destroying |
| 134 | Reckless endangerment |
| 134 | Seizure: destruction, removal, or disposal of property to prevent |
| 134 | Self-injury without intent to avoid service |
| 134 | Soliciting another to commit an offense (for crimes listed in this table) |
| 134 | Stolen property: knowingly receiving, buying, concealing |
| 134 | Testify: wrongful refusal |
| 134 | Threat or hoax designed or intended to cause panic or public fear |
| 134 | Threat, communicating |
| 134 | Weapon: concealed, carry |
| 134 | Any offenses pursuant to 18 USC 13 charged as a violation of UCMJ, Article 134 |

## 4–10. Procedures for reporting absence without leave, desertion, and special category absentee offenses

*a. Absent without leave reporting procedures.*

(1) The commander will notify the installation PMO or DES of a Soldier's reported absent without leave (AWOL).

(2) Upon receipt of an AWOL report, the installation PMO or DES will initiate an LER, and a corresponding information blotter entry.

(3) The PM or DES will following the provisions of AR 190–9 when notification is received that an AWOL or Deserter Soldier has returned to military control or upon apprehension by civilian authorities. The PM/DES will ensure all LERs are updated to reflect the change in status and ensure the unit commander completes the DA Form 4833. If the AWOL Soldier surrenders to the parent unit or is RMC at another installation, the provisions of AR 190–9 will be followed.

*b. Desertion reporting procedures.*

(1) The commander will report and PMs and DESs will enter a warrant for, desertion for high-risk, a Soldier as a deserter when they depart without authorization, and in the determination of the commander, depart without the intent of returning. This action is also authorized for Soldiers who—without authority—fail to go to, or go from, their appointed place of duty at the time prescribed, and absent themselves with the intent to permanently remain away from their unit, organization, or place of duty; or are classified as a high-risk Soldier. Unit commanders will report the desertion to the PM or DES, who will enter a warrant into NCIC. The issuing of a deserter warrant into NCIC authorizes the Soldier's apprehension or arrest by federal, state, and local law enforcement personnel throughout the United States.

*(a)* For the purposes of this paragraph, a "high-risk Soldier" is defined in AR 190–9.

*(b)* When a deserter warrant is being issued based solely on the Soldier's status as "high-risk," the commander will include a written basis (in block 19 of the DD Form 553) for his or her finding that the Soldier is "high-risk." The commander will send a copy of the warrant, on the day it is issued, to the installation SJA for review, to ensure there is a legally justifiable basis for the finding of "high-risk." If the SJA finds the warrant legally insufficient, the warrant will be revoked.

(2) The unit commander must comply with the provisions of AR 630–10 when a Soldier is dropped from the rolls and reported as a deserter.

(3) On receipt of the DD Form 553 (Deserter/Absentee Wanted by the Armed Forces), the installation PMO or DES will—

*(a)* Initiate an LER and a blotter entry reflecting the Soldier's status as "deserter."

*(b)* Complete sections of the DD Form 553 concerning the Soldier's driver's license and vehicle information. In the remarks section, add other information known about the Soldier such as: confirmed or suspected drug abuse; history of escape(s) or attempted escape(s) from custody; suicidal tendencies or attempts; use of prescription or other medication(s); involvement in or charge(s) of crimes of violence for which an active military police investigation has been prepared and forwarded; history of unauthorized absences; and any other useful or essential information for the protection of the deserter or apprehending authorities.

*(c)* Assign the LER number and a USACRC control number, which will be assigned to the case and be included in the remarks section of the DD Form 553.

*(d)* A copy of the DD Form 553 is sent to USADIP, and the original is sent to the unit commander within 24 hours of receipt.

(4) Complete the special category absentee (SCA) reporting procedures, which are—

*(a)* Regardless the length of absence, the commander will immediately report a SCA Soldier as a deserter and within 48 hours, notify the installation PMO or DES in writing. Included in this category are defectors, absentee Soldiers who travel to a country other than the one in which they are stationed, and cases in which there is evidence that the Soldier may be involved with a foreign intelligence service or terrorist organization.

*(b)* The unit commander must comply with the provisions of AR 190–9 and AR 630–10 when reporting a SCA as a deserter.

*(c)* Upon receipt of the DD Form 553 (Deserter/Absentee Wanted by the Armed Forces), the installation PMO or DES must—

*1.* Follow desertion reporting procedures in AR 190–9 and AR 630–10.

*2.* Notify the local supporting counterintelligence office that a SCA has been reported and/or RMC.

*3.* Notify the Deputy Chief of Staff, G–2 when a defector is RMC.

## 4–11. Vehicle Registration System

The VRS is a module within COPS. Within VRS there are various tabs for registering vehicles that are authorized access to an installation, to include personal data on the owner of the vehicle. There are also tabs for registering weapons, bicycles, and pets. Information on individuals barred entry to an installation is also maintained within the VRS.

## 4–12. Establishing memorandums of understanding

*a.* Coordination between military LE personnel and local civilian LE personnel is essential to improve information sharing, especially concerning investigations, arrests, and prosecutions involving military personnel. The installation PM or DES or other LE officials will establish formal memorandums of understanding (MOUs) with their civilian counterparts to establish or improve the flow of information between their agencies, especially in instances involving military personnel. The MOUs will be used to clarify jurisdictional issues for the investigation of incidents, to define

the mechanism whereby local LE reports involving active-duty Servicemembers will be forwarded to the appropriate installation LE office, to encourage the local LE agency to refer victims of domestic violence to the installation Family Advocacy Office or victim advocate, and to foster cooperation and collaboration between the installation LE agency and local civilian agencies.

*b.* Installation commanders are authorized, under Section 120(a) of the Water Resources Development Act of 1976, to contract for local, State, or Federal LE services (enforcement of civil and criminal laws of the State) from civilian police departments. Section 120(a) of the Water Resources Development Act of 1976 authorizes the Secretary of the Army, acting through the Chief of Engineers, to contract with States and their political subdivisions for the purpose of obtaining increased law enforcement services at water resource development projects under the jurisdiction of the Secretary of the Army to meet needs during peak visitation periods.

*c.* The MOUs will address the following issues, at a minimum—

(1) A general statement of the purpose of the MOU.

(2) An explanation of jurisdictional issues that affect respective responsibilities to—and investigating incidents occurring on and off—the installation. This section should also address jurisdictional issues when a civilian order of protection is violated on military property (see 10 USC 1561a).

(3) Procedures for responding to incidents that occur on the installation involving a civilian alleged offender.

(4) Procedures for local LE to immediately (within 4 hours) notify the installation LE office of incidents and investigations involving Servicemembers.

(5) Procedures for transmitting incident and investigation reports and other LE information involving active-duty Servicemembers from local civilian LE agencies to the installation LE office.

(6) Notification of when a Soldier is required to register as a sex offender either through military judicial proceedings or civilian judicial proceedings.

(7) Procedures for transmitting civilian protection orders (CPOs) issued by civilian courts or magistrates involving active-duty Servicemembers from local LE agencies to the installation LE office.

(8) Designation of the title of the installation LE recipient of such information from the local LE agency.

(9) Procedures for transmitting the DD Form 2873 (Military Protective Order) from the installation LE office to the local civilian LE agency with jurisdiction over the area in which the Service member resides.

(10) Designation of the title of the local LE agency recipient of domestic violence and CPO information from the installation LE agency.

(11) Respective responsibilities for providing information to victims regarding installation resources when either the victim or the alleged offender is an active duty Service member.

(12) Sharing of information and facilities during the course of an investigation in accordance with 5 USC 552a(b)(7) (The Privacy Act of 1974).

(13) Regular meetings between the local civilian LE agency and the installation LE office to review cases and MOU procedures.

## 4–13. Lost, abandoned, or unclaimed property

Personal property that comes into the possession, custody, or control of the Army and is unclaimed by the owner is considered to be abandoned only after diligent effort has been made to determine and locate its owner, the heir, next of kin, or legal representative. A Soldier who has permanent change of station orders and is unable to dispose of his or her personal property should immediately notify the chain of command. The commander will appoint a board to rule on the disposition of the property. If a LE agency takes custody of the property it will be tagged and a record made as shown in paragraph *a,* below. A report will be made to the installation commander who will take action in accordance with DOD 4160.21–M, chapter 4, paragraph 40. Pending board action under DOD 4160.21–M, the LE agency having physical custody is responsible for the safekeeping of seized property. The following procedures should be used:

*a.* Property will be tagged using DA Form 4002 (Evidence/Property Tag) or clearly identified by other means, inventoried, and made a matter of record. These records are kept by the custodian of the property.

*b.* Lost, abandoned, or unclaimed property will be kept in a room or container separate from one used to store property held as evidence. Records or logs of property not held as evidence will be separated from those pertaining to evidence. However, all property will be tagged, accounted for, and receipted for in a similar manner as evidence.

*c.* Property that has been properly identified through board action under DOD 4160.21–M as having an owner will be segregated and tagged with the name of that person.

*d.* Unclaimed or forfeited property in the custody of the Army will be disposed of by order of any court of record that has territorial jurisdiction over the Army installation.

*e.* A letter will be sent to the owner of the property on the disposition of the property and a memorandum be written indicating that attempts were made to contact the owner of the property which met with negative results and kept on file.

*f.* In all cases, a receipt should be obtained at time of release or disposition.

## 4–14. Procedures for restricted and unrestricted reporting in sexual assault cases

Active-duty Soldiers, ARNG, and USAR Soldiers who are subject to military jurisdiction under the UCMJ can elect either restricted or unrestricted reporting if they are victims of sexual assault. See AR 600–20 for further details.

*a.* Unrestricted reporting requires normal LE reporting and investigative procedures.

*b.* Restricted reporting requires that LE and criminal investigative organizations not be informed of a victim's identity and not initiate investigative procedures. The victim may provide sexual assault response coordinators (SARCs), medical treatment facility (MTF) personnel, victim advocates, and Sexual Harassment/Assault Response & Prevention Program proponents with specific items (clothing, bedding, and so on) that may later be used as evidence, should they decide later to convert to an unrestricted report. (SARCs and MTF personnel are neither required nor encouraged to collect evidence; however, circumstances may occur where evidence comes into their possession.) In sexual assault cases additional forensic evidence may be collected using the "sexual assault evidence collection kit," (hereafter, "evidence kit"). Personnel from the MTF or SARC releasing evidence to the installation PMO or DES will comply with AR 195–5. The SARC or MTF will have only temporary possession of the evidence and must immediately notify the installation PMO or DES to transfer custody of evidence. The evidence kit, other items such as clothing or bedding sheets, and any other articles provided by the MTF or SARC will be stored in the installation PMO or DES evidence room separate from other evidence and property. The evidence kit, the other items such as clothing or bedding sheets, and any other items will be properly sealed and marked with the restricted reporting control number that is issued by the SARC. Procedures for handling evidence specified in AR 195–5 will be strictly followed.

*c.* The installation PMO or DES will complete an RDF in the automated DA Form 190-45-SG, also known as ALERTS, for restricted reporting. Reports will be completed using the offense code from the "6Z" series. An entry will be made in the journal when the sexual assault evidence kit or property (clothing, bedding, and so forth) is received. An entry will not be made in the blotter. Restricted reporting incidents are not reportable as SIRs. Property will be stored for 5 years and then scheduled for destruction, unless previously released to investigative authorities. Thirty days prior to destruction of the property, a letter will be sent to the SARC by the installation PMO or DES, advising the SARC that the property will be destroyed in 30 days, unless LE personnel are notified by the SARC that the victim has elected unrestricted reporting. If the SARC notifies the installation PM or DES that the victim has not elected unrestricted reporting, clothing, or other personal effects will be released to the SARC for return to the victim. The information report will be updated when the evidence is destroyed, returned to the SARC, or released to investigative authorities.

*d.* In the event that information about a sexual assault that was made under restricted reporting is disclosed to the commander from a source independent of the restricted reporting avenues, or to LE from other sources, the commander will report the matter to LE. In this situation, LE remains authorized to initiate its own independent investigation of the matter presented. Additionally, a victim's disclosure of his or her sexual assault to persons outside the protective sphere of those covered by the restricted reporting policy will result in an investigation of the allegations.

## 4–15. Procedures for restricted and unrestricted reporting in domestic violence cases

Restricted reporting is a reporting option for adult victims of domestic abuse. For the purposes of this paragraph, restricted reporting is defined as allowing a victim of domestic abuse, who is eligible to receive military medical treatment, including civilians and contractors who are eligible to receive military healthcare OCONUS on a reimbursable basis, the option of reporting an incident of domestic abuse to specified individuals without initiating the investigative process or notification to the victims or the alleged offender's commander. For the purposes of this paragraph, an adult is a Soldier or a person who is not a Soldier who has either attained the age of 18 years of age or is married.

*a.* Unrestricted reporting requires normal LE reporting and investigative procedures.

*b.* Restricted reporting requires that LE and criminal investigative organizations not be informed of a victim's identity and not initiate investigative procedures. The victim will provide the victim advocate or MTF personnel with specific items that will be later used as evidence, should they decide to later report the incident to LE. Victim advocates and MTF personnel are neither required nor encouraged to collect evidence; however, circumstances will occur where evidence comes into their possession. Victim advocates and MTF personnel will have only temporary possession of the evidence and must immediately notify the installation PMO or DES to transfer custody of evidence. These items will be stored in the installation PMO or DES's evidence room separate from other evidence and property. Procedures for handling evidence specified in AR 195–5 will be strictly followed.

*c.* The installation PMO or DES will complete an RDF in DA Form 190–45–SG, also known as ALERTS, for domestic violence restricted reporting. Reports will be completed using the offense code from the "9U" series. An entry will be made in the journal when the property is received. An entry will not be made in the blotter. Restricted reporting incidents are not reportable as SIRs. Property will be stored for 1 year and then scheduled for destruction, unless previously released to investigative authorities. Thirty days prior to destruction of the property, a letter will be sent to the family advocacy program manager and the victim advocate by the installation PMO or DES, advising the victim advocate that the property will be destroyed in 30 days, unless LE personnel are notified by the victim advocate that the victim has elected unrestricted reporting. The information report will be updated when the evidence is destroyed or released to investigative authorities.

*d.* A victim's disclosure of his or her domestic violence incident to persons outside the protective sphere could result in an investigation of the allegations.

## 4–16. Domestic violence

*a.* Responding to incidents of domestic violence requires a coordinated effort by LE, medical, and social work personnel, to include sharing information and records as permitted by law and regulation. AR 608–18 contains additional information about domestic violence and protective orders. AR 608–18's glossary refers to domestic violence as including the use, attempted use, or threatened use of force or violence against a person or a violation of a lawful order issued for the protection of a person, who is (a) a current or former spouse; (b) a person with whom the abuser shares a child in common; or (c) a current or former intimate partner with whom the abuser shares or has shared a common domicile."

*b.* All domestic violence incidents will be reported to the local installation PMO or DES. All reported domestic violence incidents will be entered into MPRS, using the LER. These codes will be used in addition to any other offense code that is appropriate for an incident. For example, a Soldier strikes his or her spouse. When entering the offense data into DA Form 190-45-SG, also known as ALERTS, both the offense code for assault (that is, 5C2) and the offense code for spouse abuse (from the 9UI series) will be entered.

## 4–17. Protection orders

*a. Documentation.* A DD Form 2873 (Military Protective Order) is a written lawful order issued by a commander that orders a Soldier to avoid contact with those persons identified in the order. DD Forms 2873 may be used to facilitate a "cooling-off" period following domestic violence and sexual assault incidents, to include incidents involving children. The commander should provide a written copy of the order within 24 hours of its issuance to the person with whom the member is ordered not to have contact and the installation LE activity. A reply by endorsement can be completed for the pertaining LER, indicating that a DD Form 2873 has been issued. Violations of a DD Form 2873 must be reported on the LER and entered into DA Form 190-45-SG, also known as ALERTS. All protective orders will be entered into DA Form 190-45-SG, also known as ALERTS, and the NCIC system. Violations of a DD Form 2873 likely constitute violations of Article 90 or 92, UCMJ.

*(1) Initial notification.* In the event a DD Form 2873 is issued against a Soldier and any individual involved in the order does not reside on an Army installation at any time during the duration of the DD Form 2873, the installation PMO or DES will notify the appropriate civilian authorities (local magistrate courts, family courts, and local police) of—

*(a)* The issuance of the protective order.

*(b)* The individuals involved in the order.

*(c)* Any change made in a protective order.

*(d)* The termination of the protective order.

*(2) Civilian-authority notification.* The installation PMO or DES will notify the appropriate civilian authorities (local magistrate courts, family courts, and local police) of the protective order. The installation PMOs and DESs will place the DD Forms 2873 in the NCIC Protective Order File, along with civilian protective orders. This provides the electronic means for military commanders to make information on the issuance of a DD Form 2873 available to all civilian law enforcement authorities.

*(a)* The DES or PMO will place the active DD Form 2873 in NCIC for the duration of the order. The DES or PMO will initiate an LER for the DD Form 2873, creating the required originating agency case number, and place the DD Form 2873 in the NCIC POF, using "Protection Order Conditions Field Code 08" with the following mandatory caveat in the miscellaneous field: "This is a Military Protective Order and may not be enforceable by non-military authorities. If subject is in possible violation of the order, advise the entering agency (Military Law Enforcement)."

*(b)* Updating and termination of a DD Form 2873 in NCIC will follow normal NCIC operational procedures. Installation law enforcement will further notify surrounding civilian law enforcement jurisdictions of the DD Form 2873 submission via an NCIC administrative message.

*b. Compliance.* A CPO is an order issued by a judge, magistrate or other authorized civilian official, ordering an individual to avoid contact with his or her spouse or children. Pursuant to Section 1561a, Title 10, United States Code (The Armed Forces Domestic Security Act) a CPO has the same force and effect on a military installation as such order has within the jurisdiction of the court that issued the order. LE personnel will complete an LER, in DA Form 190–45–SG, also known as ALERTS, whenever a CPO is issued that orders a Soldier to avoid contact with his or her spouse or children or orders an individual to avoid contact with his or her military spouse or Family members. Violations of a CPO must be reported on the LER and entered into DA Form 190–45–SG, also known as ALERTS.

## 4–18. Defense Incident-Based Reporting System/National Incident-Based Reporting System reporting responsibilities

*a.* Reporting processes involve several databases that rely on shared information.

(1) DA Form 190–45–SG, also known as ALERTS, consolidates and forwards monthly DIBRS reports to Defense Manpower Data Center.

(2) The DIBRS reporting process will be triggered when law enforcement officials respond to a founded offense of a criminal incident. The LE officials will collect information necessary to fulfill reporting responsibilities by filling out the LER. The installation PMO or DES must ensure cases in DA Form 190–45–SG, also known as ALERTS, are changed from "open" or "final" status to "closed" to ensure that the LER is reported to DIBRS. If the crime is determined to be outside the jurisdiction of the LE organization, the DIBRS reporting responsibility will be passed to the appropriate agency, such as USACIDC, the FBI, or the local authority that has accepted investigative jurisdiction of the case.

*b.* If the investigation is initiated by or referred to USACIDC and USACIDC assumes the lead investigative role, it also assumes DIBRS reporting responsibility.

*c.* Army LE agencies will normally refer cases involving military offenders to the responsible commander for appropriate action. The responsible LE agency will initiate the LER. The commander may refer the case to staff agencies, dispose of the case pursuant to administrative or nonjudicial authority, or refer the case to court-martial or to an appropriate convening authority for ultimate disposition. The commander taking final action on the case will forward the DA Form 4833 to the local installation PMO or DES. If the case is forwarded to another convening authority for action, the commander assuming jurisdiction over the case is responsible for forwarding the DA Form 4833 to the local installation PMO or DES.

*d.* In some instances, commanders will be required to initiate DIBRS reporting when a military law enforcement activity is not involved. Commanders will ensure that reporting responsibilities and requirements as prescribed in this policy are met in these cases, and a DA Form 4833 is submitted to the local installation PMO or DES.

*e.* SJAs will forward all supporting judicial documents to the commander. The commander will attach the DA Form 4833 and send to the local installation PMO or DES within the prescribed 60 days.

*f.* Regarding reporting requirements, an incident that is listed in table 4–1 will be reported on an LER or ROI if initiated by LE. If a commander initiates reporting an incident, it will be documented and submitted on a DA Form 4833 with supporting documents (UCMJ, Article 15 court reports) and submitted to the installation PM or DES. Reportable incidents include:

(1) Criminal incidents not listed in table 4–1, but punishable under the UCMJ. This includes incidents such as fraternization, sexual harassment, sexual assault, and rape.

(2) Civilian criminal incidents committed by military personnel on active duty resulting in a felony conviction, as defined in the civilian jurisdiction where the offense is tried.

*g.* Other reportable incidents include:

(1) Sudden infant death syndrome when the victim is a dependent residing with an active-duty Servicemember.

(2) Incidents involving the actual or attempted suicide of military personnel on active duty.

(3) Other incidents requiring action under 18 USC 922 (The Brady Handgun Violence Prevention Act of 1993, Revised Statute).

(4) Incidents covered by Public Law No. 97–291, Volume 96, US Statute at Large 1248 (Victim and Witness Protection Act of 1982) codified as amended in scattered sections of 18 USC and the Federal Rules of Criminal Procedure 32(c)(2). Army LE authorities must advise the victim or witness of their rights using the DD Form 2701 (Initial Information for Victims and Witnesses of Crime) in accordance with chapter 6 of this regulation. Victim-witness notifications will be reported on the LER to provide accountability in the automated DA Form 190–45–SG, also known as ALERTS.

(5) Commanders and family-advocacy programs will report all domestic violence incidents to the local installation PMO, DES, or CID office which includes:

*(a)* Incidents that involve evidence determined sufficient for supporting disciplinary action and, for each such incident, a description of the allegations and the action taken by command authorities in the incident.

*(b)* Incidents that involve evidence determined insufficient for supporting disciplinary action and, for each such case, a description of the allegation.


# Chapter 5
# Army Law Enforcement Trends and Analysis Report

## 5–1. General

*a.* This chapter prescribes policies and procedures for the coordination and standardization of crime statistics reporting with HQDA. Crime statistical reports and trends provided to HQDA and other agencies and those related to special interests inquiries, the media, and the public must reflect uniformity in terminology, methods of presentation, and statistical portrayal to preclude misinterpretation of information.

*b.* Any report containing Armywide aggregate crime data or statistics addressed to the Secretary of the Army, Chief

filing. All forms must be accounted for, including voided forms. Local policy will determine procedures for voiding forms and investigating missing forms.

# Chapter 8
# Reportable Serious Incidents

## 8–1. Policy

a. Reports submitted according to this regulation are LE reports in accordance with AR 25–55. Incidents listed in paragraphs 8–2 and 8–3 of this regulation, are reportable to HQDA through PM or DES channels as category 1 and 2 serious incidents, respectively. The lists are not all inclusive. Commanders should report any incident that might concern HQDA as a serious incident, regardless of whether it is specifically listed in paragraphs 8–2 and 8–3. In cases of doubt, report the incident. In determining whether an incident is of concern to HQDA, the following factors should be considered:

(1) Severity of the incident.

(2) Potential for adverse publicity.

(3) Potential consequences of the incident.

(4) Whether or not the incident is reportable under other reporting systems.

(5) Effect of the incident on readiness or the perception of readiness.

b. Submission of an SIR will not be delayed due to incomplete information. All pertinent information known at the time of SIR submission will be included. Additional required information will be provided in a subsequent add-on report.

c. Commands that do not have an installation PM or DES will ensure that SIRs are reported to the installation PMO or DES that has geographical LE responsibility for that particular area (see table 1–1 of this regulation). The installation PM or DES will be responsible for initial and follow-on SIR and for the initiation of the LER, for reportable offenses. ACOMs that have off-post activities or facilities are required to immediately notify their installation PM or DES with geographic responsibility for the area of any SIR qualifying events that occur at the activity or facility. The installation PM or DES will be responsible for initial and follow-on SIR reporting.

d. Incidents listed in paragraphs 8–2 and 8–3, occurring on Army installations and facilities are clearly reportable. Commanders should consider the degree of Army interest and involvement in deciding to report incidents occurring off the installation. Any incident where a Soldier is the subject or victim of a serious incident is reportable no matter where it occurs. An incident involving a command-sponsored Family member or DA civilian employee OCONUS is also reportable. Incidents where a Family member, or DA civilian employee, is the subject or victim of a similar incident off post in the United States is not reportable, absent other connections to the Army.

e. On occasion, HQDA, OPMG will direct reporting of incidents or crimes that are not normally reportable. In these instances, the commanders of IMCOM regions, ACOMs, ASCCs, DRUs, and installations will be notified by message of specific requirements and time periods for reporting.

f. All SIRs in which a Soldier is listed as a subject will state whether the Soldier has deployed within the past year.

g. The Army's policy regarding the release of protected health information to LE officials for LE purposes mirrors the policy found in DOD 6025.18–R, paragraph C7.6.

h. In addition to SIR reporting, the incidents described below in paragraphs 8–2c and d, and any other matters of CI interest as specified in AR 381–12, will be reported to the nearest Army CI office.

i. Commanders and directors of biological select agents and toxins (BSAT) facilities will report as a category 1 SIR, an actual or alleged BSAT incident. The category 1 SIR will be reported by telephone to the Army Watch (DSN 225–4695/96) immediately upon discovery or notification at the installation level. The telephonic report will be followed by a written report, preferably by electronic mail to the ArmyWatch at: usarmy.pentagon-e.hqda.mbx. armywatch@mail.mil within 12 hours of discovery or notification.

## 8–2. Category 1 reportable serious incidents

These are actual or alleged incidents involving the following:

a. On- and off-post riots, serious disturbances, or demonstrations targeted against the Army or involving Army personnel.

b. War crimes, including mistreatment of enemy prisoners of war, detainees, displaced persons, retained persons, or civilian internees; violations of the Geneva Conventions; and atrocities.

c. Requests by members of the Army for political asylum in foreign countries or indications of defection.

d. Terrorist activities, sabotage, and incidents, initiated or sponsored by known terrorists, dissident groups, or criminal elements that occur on an installation or that involve military personnel or property off an installation.

e. Bomb or explosive incidents resulting in death, injury of military personnel, or damage to military property.

f. Incidents involving material damage that seriously degrade unit operational or training readiness.

*g.* Threats against Government weapons and ammunition.

*h.* Information on threats, plans, or attempts to harm or kidnap, or other information bearing on the personal security of the President of the United States, Vice President of the United States, or other persons under U.S. Secret Service (USSS) protection.

*i.* Incidents involving Army BSAT listed below will be reported. The list of select agents is reviewed and updated by the Centers of Disease Control and Prevention and the Animal and Plant Health Inspection Service and is found in 42 CFR 73; 7 CFR 331; and 9 CFR 121. These agents are also known as high-consequence, nonoverlap agents and toxins; overlap agents and toxins; and listed plant pathogens. The list includes specific genetic elements, recombinant nucleic acids, and recombinant organisms. The list also identifies exclusions—things that are not considered as select agents or toxins (see http://www.cdc.gov/od/sap/docs/salist.pdf).

(1) The theft, loss, recovery, suspected theft, inventory shortage or overage, wrongful disposition, and unauthorized use and/or destruction of Army-owned BSAT.

(2) Attempts to steal or divert Army BSAT outside of physical security controls.

(3) Actual or attempted housebreaking or unauthorized access at an Army BSAT facility or laboratory.

(4) Actual or attempted housebreaking or unauthorized access at an off-post BSAT facility or laboratory under contract to the U.S. Army for BSAT research.

(5) Significant or disabling damage to an Army-owned BSAT facility.

(6) Discharge of a select agent or toxin external to the containment laboratory and into the ambient air or environment.

(7) Mishaps in which there was direct evidence of an exposure to Army-owned BSAT, such as a measurable rise in specific antibody strength to the causal agent in question, or a confirmed diagnosis of intoxication or disease.

(8) Other incidents at Army-owned BSAT facilities not identified above that the commander determines to be of immediate concern to HQDA based on the nature, gravity, and potential for adverse publicity, or potential consequences of the incident.

*j.* Incidents involving Army chemical agents, or research chemical agents, listed below will be reported:

(1) The theft, loss, recovery, suspected theft, inventory shortage or overage, wrongful disposition, and unauthorized use and/or destruction of Army chemical agents or Army research chemical agent.

(2) Attempts to steal or divert Army chemical agents or Army research chemicals outside of physical security controls.

(3) Actual or attempted housebreaking, or unauthorized access at an Army chemical facility or laboratory.

(4) Actual or attempted housebreaking, or unauthorized access at an off-post chemical facility or laboratory under contract to the U.S. Army for chemical research.

(5) Significant or disabling damage to an Army chemical facility.

(6) Mishaps that result in observable or known occupational exposures to Army chemical agents due to failure of personal protective equipment (PPE) to provide protection (such as malfunctions, improper, or inadequate use of PPE).

(7) Other Army chemical or Army research chemical agent incidents not identified above that the commander determines to be of immediate concern to HQDA based upon the nature, gravity, potential for adverse publicity, or potential consequences of the incident.

(8) Any other incident the commander determines to be of immediate concern to HQDA based on the nature, gravity, potential for adverse publicity, or potential consequences of the incident.

## 8–3. Category 2 reportable serious incidents

These are actual or alleged incidents involving the following:

*a.* Theft, suspected theft, wrongful appropriation, or willful destruction of Government property or appropriated funds valued at more than $100,000.

*b.* Theft, suspected theft, negligence, or conflict of interest involving Government nonappropriated funds or property valued at more than $100,000.

*c.* Racially or ethnically motivated criminal acts.

*d.* Loss, theft, wrongful disposition, willful destruction, or mismanagement of the following:

(1) Evidence as part of a law enforcement investigation.

(2) Sensitive items, other than arms and ammunition, identified by controlled inventory item code 1–6, 8, 9, Q, R, or Y (see AR 710–2).

(3) Controlled cryptographic items.

(4) Drugs identified in 21 USC 13 (The Comprehensive Drug Abuse Prevention and Control Act of 1970) as schedules 1, 2, 3, 4, and 5 controlled substances. Schedules 2 through 5 drugs are Government-controlled medical substances and are identified as R and Q, controlled, medical items in the Federal Supply Catalog. Schedule I drugs, as identified in the act, are only used by DOD for research, and are not available through the supply system.

*e.* Wrongful possession, manufacture, or distribution of controlled substances, to include narcotics, drugs, or marijuana in the quantities listed below:

(1) Cocaine, 100 grams or more.

(2) Marijuana, 1000 grams or more.

(3) Hashish, 1000 grams or more.

(4) Heroin, 100 grams or more.

(5) Methamphetamines or barbiturates, 100 grams or more.

(6) LSD, 6 dosage units or more.

(7) PCP, 100 grams or more.

(8) For narcotics and dangerous drugs not listed, use quantities for like substances listed above.

*f.* Significant violations of Army standards of conduct, to include bribery, conflict of interest, *Middendorf v. Henry,* or acceptance of gratuities by Soldiers or DA or nonappropriated fund employees.

*g.* Incidents involving prisoners or detainees of Army confinement or correctional facilities to include escape from confinement or custody, disturbances which require the use of force, wounding, or serious injury to a prisoner, and all prisoner deaths.

*h.* Theft, loss, suspected theft, unaccounted or recovered arms, ammunition, and explosives (AA&E) in the following quantities:

(1) Any missile, rocket, mine, artillery, or mortar rounds.

(2) Any machinegun or automatic-fire weapon.

(3) Any fragmentation, concussion, high-explosive grenade, or other type of simulator or device containing explosive materials, including artillery or ground burst simulators.

(4) Any explosives, to include demolition explosives (for example, detonation cord, C–4 blocks of explosives, and so on).

(5) One or more semiautomatic or manually operated firearms.

(6) Five or more rounds of ammunition greater than .50 caliber.

(7) 1,000 or more rounds of .50 caliber or smaller ammunition.

*i.* Actual or attempted break-ins of arms rooms or storage areas for AA&E.

*j.* Armed robbery or attempted armed robbery of AA&E.

*k.* Any evidence of trafficking of AA&E, such as bartering for narcotics or any other thing of value, to include taking AA&E across international borders, regardless of the quantity of AA&E involved.

*l.* Aggravated arson.

*m.* Except for deaths occurring due to natural causes (such as pre-existing illness, disease or medical condition, to include hospice care) in medical treatment facilities, all deaths occurring on Army installations must be reported, including but not limited to, accidents, homicides, suicides, highly communicable and lethal diseases, or other incidents. All deaths of Soldiers, regardless of duty status, that occur off the installation will be reported. Additionally, deaths of Family members that occur off the installation, which are deemed to be criminal in nature, will be reported. If the manner of death of Soldier or Family member is unknown, the incident will be reported as "undetermined manner of death" and the manner of death will be updated by add-on SIR as soon as determined. Next-of-kin notification, use of seatbelt and PPE, and alcohol or drug use will be included in the initial SIR or updated accordingly in the add-on SIR.

*n.* Kidnapping.

*o.* Major fires or natural disasters involving death, serious injury, property damage in excess of $250,000, or damage that seriously degrades unit operational or training capabilities.

*p.* Group breaches of discipline involving 10 or more persons who collectively act to defy authority.

*q.* Training and troop movement accidents resulting in serious injury or death.

*r.* Maltreatment of Soldiers or DA civilians to include assaults, abuse, or exploitation where the offender has a trainer, supervisor, or cadre-trainee relationship with the victim, regardless of whether they are members of the same organization. Instances of consensual sex are not reportable, unless other considerations such as sexual harassment or adverse publicity are involved.

*s.* Violations of Army policy as it pertains to monitoring and recording of conversations in accordance with AR 190–30 and AR 190–53, or acquisition and storage of non-affiliated U.S. person information in accordance with AR 380–13.

*t.* Actual or alleged incident of child abuse that takes place within an Army organizational setting or facility (for example, child development center, youth activities center, MTF, gymnasium, and so forth). Actual or alleged incident of child abuse that takes place within an Army-sponsored or -sanctioned activity (for example, quarters-based Family childcare home, youth sports or recreation activities, field trips, and so forth). This paragraph also applies to incidents of child abuse occurring within the family unit which involve the use of a weapon (for example, a firearm, knife, or other devices which will cause serious bodily injury), the victim suffers a broken limb, is sexually abused, is choked or strangled, or is admitted to the hospital because of injuries incurred during the incident.

*u.* Serious child injury or death, not resulting from child abuse, while the child is in the Army's care at a nonmedical facility (child development center, quarters-based Family childcare home, youth activities center, and so

forth) or within an Army-sponsored or -sanctioned activity. This paragraph does not apply to sports injuries related to, or potentially inherent in, a youth activity or event.

*v.* Serious domestic violence incidents (unrestricted reporting only). This report will include whether the Soldier listed as a subject was deployed within the past year leading up to the incident.

*w.* Incidents involving firearms that cause injury or death.

*x.* Federal crimes reportable under AR 381–10, when they meet reporting criteria.

*y.* Any other incident that the commander determines to be of concern to HQDA based on the nature, gravity, potential for adverse publicity, or potential consequences of the incident.

## 8–4. Category 3 reporting criteria
IMCOM regional directors, and ACOM, ASCC, and DRU commanders (excluding USACIDC) will, by approved supplementation to this regulation, establish additional reporting criteria to be known as "category 3." Means and format for reporting will be as prescribed by the IMCOM regions, ACOM, ASCC, and DRU commanders, with the requirement that numbering sequences for category 3 reports will be separate from those used for reports to HQDA.

## 8–5. Operational reporting reports
*a.* Commanders will use the operational reporting–3 (OPREP–3) format when reporting incidents meeting Chairman of the Joint Chiefs of Staff (CJCS) reporting criteria, outlined in CJCSM 3150.03D.

*b.* Commanders are responsible for timely and accurate reporting of all events or incidents meeting CJCS reporting criteria, as outlined in CJCSM 3150.03D. The requirements of this paragraph are for OPREP–3 pinnacle (OPREP–3P) reports and will follow the guidance of CJCSM 3150.03D, Enclosure A, Appendix A. The following criteria may also be considered for incidents potentially requiring one of the other OPREP–3 reports (non-pinnacle):

(1) Generates a higher level of military action.

(2) Causes a national reaction.

(3) Affects international relations.

(4) Causes immediate widespread coverage in news media.

(5) Is clearly against national interest.

(6) Affects current national policy.

*c.* If in doubt whether an incident meets the above-listed criteria, submit an OPREP–3 report, and the receiving agency will make the determination on further actions to take.

*d.* Should an incident be both OPREP–3 and SIR reportable, the OPREP–3 report will include basic information, ensuring it does not divulge information that may hinder an ongoing investigation. The SIR contains detailed information and will be protected from widespread or improper release and classified as a "law enforcement sensitive/ FOUO" report.

*e.* Commanders submit OPREP–3 reports through their own chain of command to HQDA Army Operations Center per the existing reporting requirements. If the chain of command does not include an ASCC, the senior commander will simultaneously submit the OPREP–3 to their chain of command, HQDA, and the ASCC assigned responsibility for the geographic combatant command. Each ASCC is responsible for forwarding the OPREP–3 to their respective geographical combatant commander and to the HQDA Army Operations Center for the SA.

## 8–6. Incidents reportable by means other than serious-incident reports
The events or incidents listed below may be reported by means other than SIRs.

*a.* Those operational events reported according to Joint Chiefs of Staff Publication 6–0.

*b.* Aircraft accidents and related mishaps, unless they meet other SIR criteria.

*c.* Nuclear weapons accidents or incidents.

*d.* Nuclear reactor mishaps.

*e.* Incidents involving foreign students.

*f.* Requests from civil authorities for military support of civil disturbances or counter-terrorist operations.

*g.* Incidents involving national security crimes and deliberate security compromises will be reported to the nearest Army CI office as required by AR 381–12.

*h.* Incidents covered under Executive Order 12333, as implemented by DOD 5240.1–R.I.

## 8–7. Suspicious activity report
The Army will use eGuardian to report, share and analyze unclassified suspicious activity information regarding potential threats or suspicious activities affecting DOD personnel, facilities, or forces in transit in both CONUS and OCONUS. USACIDC is the Army's eGuardian program manager.

*a.* eGuardian is the Federal Bureau of Investigation's (FBI) sensitive-but-unclassified web-based platform for reporting, and in some instances, sharing, suspicious activity and threat related information with other federal, state, tribal, and territorial law enforcement and force protection entities. Information entered into eGuardian by the Army

may be either shared with all eGuardian participants or reported directly to the FBI. All information entered into eGuardian by the Army will comply with the policy framework for the system and any existing agency agreements, which incorporate privacy protections.Analysis of SARs will assist CRIMINTEL analysts and commanders in mitigating potential threats and vulnerabilities, and developing annual threat assessments.

*b.* eGuardian user, supervisor, approver, or read-only access is limited to LE personnel and LE CRIMINTEL analysts, to include those assigned to the U.S. Army counterintelligence law enforcement cell and the HQDA antiterrorism operations and intelligence cell. The following definitions apply for eGuardian access:

(1) LE personnel and LE CRIMINTEL analysts are assigned, attached or detailed to LE activities, validated (in writing) to support LE missions.

(2) DOD contractors who, on behalf of the Army are involved in the SAR process, to include operating a system of records, and any of the activities associated with maintaining a system of record, such as collecting and disseminating records.

(3) Army entities with LE missions, including force protection, will be provided access.

(4) Antiterrorism and force protection officers, employed in support of Army LE agencies.

*c.* Access does not apply to the following categories of Army personnel, who are not considered to be Army LEOs:

(1) Security officers not employed as an Army LE analyst or criminal intelligence analyst and not validated, in writing, by the Army.

(2) Antiterrorism and force protection officers not validated in law enforcement or law-enforcement-supporting positions.

(3) Counterintelligence officers or counterintelligence special agents.

(4) Corrections specialists who are not Army LEOs.

*d.* Agencies with intelligence and CI missions are restricted from acquiring eGuardian accounts. However, LE personnel will provide eGuardian SAR information to CI and intelligence analytic cells upon indications of attempted or actual espionage, subversion sabotage, terrorism-extremist activities directed against the Army and its personnel, facilities, resources, and activities; indicators of potential terrorist-associated insider threats; illegal diversion of military technology; unauthorized intrusions into automated information systems; unauthorized disclosure of classified information; and indicators of other incidents that may indicate foreign intelligence or international terrorism targeting of the Army. This is to ensure appropriate SAR data is fused with other intelligence reporting.

*e.* Any concerned Soldier or citizen can submit an SAR to the nearest installation PM, DES, CI, or CID office. The receiving office will then be responsible for reviewing the information and determining whether it is appropriate for submission into eGuardian.

*f.* This reporting does not negate the requirement to dispatch serious-incident reports through Army and LE reporting channels. Army activities without an installation PM or DES will refer to table 1–1 to find their supporting installation PM or DES.

*g.* Each installation PM or DES will do the following:

(1) Conduct a preliminary evaluation of SAR information received to assess credibility, and initiate an RDF, only when the incident warrants immediate investigation or when the SAR is recommended as an eGuardian report. The report will be coordinated with the supporting CID office and receive supervisory-level approval, prior to entering into eGuardian. Any installation PM or DES without user access will forward SARs using the RDF, to the local CID office, for entering into eGuardian. An urgent-classification SAR will be entered as a restricted entry in the MP blotter to preclude compromise of the information. The PM or DES will ensure use of offense codes under the 9Z category, along with the RDF or blotter entry number, to identify the information as SAR.

(2) Ensure that sufficient installation PMO or DES personnel have eGuardian access (user, supervisor, read-only) in order to establish situational awareness of SAR information entered into the eGuardian system.

(3) Ensure CI-applicable SAR information is reported to the local CI activity in accordance with AR 381–12, and affected commanders for the purposes of supporting antiterrorism decisions, in accordance with AR 525–13.

(4) Coordinate CID assistance in conducting preliminary and follow-on SAR investigations.

*h.* eGuardian reportable and nonreportable information is defined according to many variables:

(1) Reportable information categories—

*(a)* Urgent: refers to information regarding a terrorism-related event, terrorist threat, or suspicious activity. Urgent information will be submitted into eGuardian for approval in not more than 12 hours of receipt. For example, if a stolen vehicle is recovered on a DOD installation and contains firearms and a laptop computer with information pertaining to planned attacks on a government facility.

*(b)* Specific and actionable: those reports warranting the initiation of investigative activity. These reports will be submitted into eGuardian for approval within 24 hours. For example, if security guards observe a person taking prolonged video of the entrance to a DOD facility with a handheld video recorder, and the same individual is reported to have been observed recording video of the building on two separate occasions in the past week.

*(c)* Non-actionable: those reports that may be relevant to the establishment of patterns of suspicious activity. These

reports will be submitted into eGuardian for approval within 72 hours. (For example: military uniforms are reported stolen out of an employee's vehicle while parked at Baltimore Washington International Airport.)

(2) In accordance with DTM 10–018, the following are examples of nonreportable or inappropriate information:

*(a)* Information based solely on the ethnicity, race, or religion of an individual, or reported solely due to the exercise of rights guaranteed by the first amendment (for example, authorized protests).

*(b)* Information gathered under 50 USC 1801, et seq. (The Foreign Intelligence Surveillance Act).

*(c)* Information classified confidential, secret, top secret, or compartmented. This information is reported using the classified guardian system. USACIDC elements needing to report this type of information will forward it to the Headquarters CIOC, or report the information via intelligence information reports. CIOC analysts will ensure the USACIDC liaison officer to the National Joint Terrorism Task Force receives the information for submission as a guardian report.

*(d)* Information pertaining to Rule 6(e) (grand jury materials) of the Federal Rules of Criminal Procedure.

*(e)* Any information otherwise legally restricted.

## Chapter 9
## Reporting Procedures for Serious-Incident Reports

### 9–1. Special handling of reports

Reports submitted according to this regulation are LE reports in accordance with AR 25–55. They will be assigned a proper security classification according to AR 380–5 or marked with a minimum classification of FOUO according to AR 25–55. Reports or any information from them will be released according to AR 25–55 and this regulation.

*a.* The stipulations of 5 USC 552a (The Privacy Act of 1974) apply to SIRs in accordance with AR 340–21. Dissemination and use of SIRs will be restricted to persons who need the reports to perform their official duties.

*b.* All SIRs will include the following or similarly worded statement: "In accordance with AR 340–21, AR 190–45, and DOD 5400.7–R, information contained in this report is law-enforcement sensitive, confidential and private in nature, and any further distribution (forwarding to unauthorized personnel) without the authorization of the (insert reporting command's installation PM or DES) will be in violation of the UCMJ and USC."

### 9–2. Time requirements and means of reporting

*a. Category 1 serious incident.* Category 1 serious incidents will be reported by telephone to the Army Watch immediately upon discovery or installation level notification (within 4 hours). The telephonic report will be in the format in figure 9–1. It will be followed by a written report, preferably by electronic mail or if electronic mail is not available, by electronic message, to the Army Watch within 12 hours of discovery or notification. Facsimile will be used as a supplemental transmission.

*b. Category 2 serious incidents.* Category 2 serious incidents will be reported by electronic mail or if electronic mail is not available, by electronic message to the Army Watch within 24 hours of discovery or notification at the installation level. Facsimile will be used to supplement the transmission. (See app C for electronic mail addresses, electronic message addresses, and facsimile numbers.)