Exhibit H to the United States' Motion to Dismiss

*Seal v. United States*, Case No. 2:25-cv-442 (D. Me.)

**Army Regulation 380–67**

**Security**

# Personnel Security Program

**Headquarters**
**Department of the Army**
**Washington, DC**
**24 January 2014**

## UNCLASSIFIED

# *SUMMARY of CHANGE*

AR 380–67
Personnel Security Program

This rapid action revision, dated 24 January 2014--

o  Revises criteria for application of security standards (para 2-4*g*).

o  Incorporates the provisions to provide procedural benefits to afford
   individuals an opportunity to appeal a final adjudicative decisions to a
   higher level authority (para 8-6*d*).

o  Adds performance measures (para 11-5).

o  Rescinds appendix on reporting of nonderogatory cases (app E).

o  Deletes appendix on guidelines for conducting prenomination personal
   interviews (app G).

o  Deletes appendix on the list of designated countries (app H).

o  Updates the National Adjudicative Guidelines (app I).

o  Adds internal control evaluation (app M).

**Headquarters**
**Department of the Army**
**Washington, DC**
**24 January 2014**

***Army Regulation 380–67**

**Effective 24 February 2014**

Security

# Personnel Security Program

By Order of the Secretary of the Army:

**RAYMOND T. ODIERNO**
*General, United States Army*
*Chief of Staff*

Official:

**GERALD B. O'KEEFE**
*Administrative Assistant to the*
*Secretary of the Army*

**History.** This publication is a rapid action revision. The portions affected by this rapid action revision are listed in the summary of change.

**Summary.** This regulation implements the DOD and Department of the Army Personnel Security Program and takes precedence over all other departmental issuances affecting these programs. It contains the policies and procedures for access to classified information and assignment in a sensitive position. It also prescribes the investigative scope and adjudicative standards and criteria that are necessary prerequisites for such access or employment. It includes due process procedures for appealing adverse administrative actions rendered in accordance with the provisions of this regulation. This regulation contains all of DOD 5200.2–R and

includes all recommendations of the Commission to Review DOD Security Policies and Practices (Stilwell Commission) approved for implementation. Army implementing instructions in this regulation are set in boldface type.

**Applicability.** This regulation applies to the active Army, the Army National Guard/Army National Guard of the United States, and the U.S. Army Reserve, unless otherwise stated. Also, it applies only to Army contractor personnel who require access to sensitive compartmented information in the performance of their duties.

**Proponent and exception authority.** The proponent of this regulation is the Deputy Chief of Staff, G–2. The proponent has the authority to approve exceptions or waivers to this regulation that are consistent with controlling law and regulations. The proponent may delegate this approval authority, in writing, to a division chief within the proponent agency or its direct reporting unit or field operating agency, in the grade of colonel or the civilian equivalent. Activities may request a waiver to this regulation by providing justification that includes a full analysis of the expected benefits and must include formal review by the activity's senior legal officer. All waiver requests will be endorsed by the commander or senior leader of the requesting activity and forwarded through their higher headquarters

to the policy proponent. Refer to AR 25–30 for specific guidance.

**Army internal control process.** This regulation contains internal control provisions in accordance with AR 11–2 and identifies key internal controls that must be evaluated (see appendix M).

**Supplementation.** Supplementation of this regulation and establishment of command and local forms are prohibited without prior approval from the Deputy Chief of Staff, G–2, 1000 Army Pentagon, Washington, DC 20310–1000.

**Suggested improvements.** Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) directly to the Deputy Chief of Staff, G–2, 1000 Army Pentagon, Washington, DC 20310–1000.

**Distribution.** This regulation is available in electronic media only and is intended for command levels A, B, C, D, and E for the active Army, the Army National Guard/Army National Guard of the United States, and the U.S. Army Reserve.

---

**Contents** (Listed by paragraph and page number)

**Chapter 1**
**General Provisions,** *page 1*
Purpose • 1–1, *page 1*
References • 1–2, *page 1*
Explanation of abbreviations and terms • 1–3, *page 1*
Responsibilities • 1–4, *page 1*
Objectives • 1–5, *page 1*

---

*This regulation supersedes AR 380–67, dated 9 September 1988.

**Contents—Continued**

**Chapter 2**
**Policies,** *page 1*

*Section I*
*Standards for Access to Classified Information or Assignment to Sensitive Duties, page 1*
General • 2–1, *page 1*
Clearance and sensitive position standard • 2–2, *page 2*
Military service standard • 2–3, *page 2*

*Section II*
*Criteria for Application of Security Standards, page 2*
Criteria for application of security standards • 2–4, *page 2*

*Section III*
*Types and Scope of Personnel Security Investigations, page 3*
General • 2–5, *page 3*
National agency check/entrance national agency check • 2–6, *page 3*
National agency check and written inquiries • 2–7, *page 3*
DOD national agency check and written inquiries • 2–8, *page 3*
Background investigation • 2–9, *page 3*
Special background investigation • 2–10, *page 3*
Special investigative inquiry • 2–11, *page 4*
Periodic reinvestigation • 2–12, *page 4*
Personal interview • 2–13, *page 4*
Expanded investigation • 2–14, *page 5*

*Section IV*
*Authorized Personnel Security Investigative Agencies, page 5*
General • 2–15, *page 5*
Subversive affiliations • 2–16, *page 5*
Suitability information • 2–17, *page 5*
Hostage situations • 2–18, *page 6*
Overseas personnel security investigations • 2–19, *page 6*

*Section V*
*Limitations and Restrictions, page 6*
Authorized requesters and personnel security determination authorities • 2–20, *page 6*
Limit investigations and access • 2–21, *page 6*
Collection of investigative data • 2–22, *page 6*
Privacy Act notification • 2–23, *page 6*
Restrictions on investigators • 2–24, *page 7*
Polygraph restrictions • 2–25, *page 7*

**Chapter 3**
**Personnel Security Investigative Requirements,** *page 7*

*Section I*
*Sensitive Positions, page 7*
Designation of sensitive positions • 3–1, *page 7*
Criteria for security designation of positions • 3–2, *page 7*
Authority to designate sensitive positions • 3–3, *page 8*
Limitation of sensitive positions • 3–4, *page 8*
Billet control system for TOP SECRET • 3–5, *page 8*

*Section II*
*Civilian Employment, page 8*

## Contents—Continued

General • 3–6, *page 8*
Nonsensitive positions • 3–7, *page 8*
Exceptions to investigative requirements • 3–8, *page 8*
Noncritical-sensitive positions • 3–9, *page 9*
Critical-sensitive positions • 3–10, *page 9*
Exceptions • 3–11, *page 9*
Mobilization of DOD civilian retirees • 3–12, *page 9*

*Section III*
*Military Appointment, Enlistment, and Induction, page 10*
General • 3–13, *page 10*
Entrance investigation • 3–14, *page 10*
Reserve Components and National Guard • 3–15, *page 10*
Exceptions for certain commissioned officers of Reserve Components • 3–16, *page 10*
Mobilization of military retirees • 3–17, *page 10*
Mobilization exercises • 3–18, *page 10*

*Section IV*
*Security Clearance, page 10*
General • 3–19, *page 10*
Investigative requirements for clearance • 3–20, *page 11*
Naturalized U.S. citizens • 3–21, *page 12*
Access to classified information by non-U.S. citizens • 3–22, *page 12*
Access by persons outside the executive branch • 3–23, *page 13*
Restrictions on issuance of personnel security clearances • 3–24, *page 13*
Administrative downgrading • 3–25, *page 14*
Dual citizenship • 3–26, *page 14*
One-time access • 3–27, *page 14*
Access by retired flag/general officers • 3–28, *page 15*

*Section V*
*Special Access Programs, page 15*
General • 3–29, *page 15*
Sensitive compartmented information • 3–30, *page 15*
Retired general officer sensitive compartmented information access determinations • 3–31, *page 18*
Single Integrated Operation Plan–Extra Sensitive Information • 3–32, *page 18*
Presidential support activities • 3–33, *page 18*
Nuclear weapon personnel reliability program • 3–34, *page 19*
Chemical Personnel Reliability Program • 3–35, *page 20*
Automation security • 3–36, *page 20*
Access to North Atlantic Treaty Organization classified information • 3–37, *page 20*
Other special access programs • 3–38, *page 20*

*Section VI*
*Certain Positions Not Necessarily Requiring Access to Classified Information, page 20*
General • 3–39, *page 20*
Access to restricted areas, sensitive information, or equipment not involving access to classified information • 3–40, *page 21*
Nonappropriated fund employees • 3–41, *page 21*
Customs inspectors • 3–42, *page 21*
Red Cross/united service organizations personnel • 3–43, *page 21*
Officials authorized to issue security clearances • 3–44, *page 21*
Officials authorized to grant access to sensitive compartmented information • 3–45, *page 22*
Personnel security clearance adjudication officials • 3–46, *page 22*
Persons requiring DOD building passes • 3–47, *page 22*

**Contents—Continued**

Foreign national employees overseas not requiring access to classified information • 3–48, *page 22*
Special agents and investigative support personnel • 3–49, *page 22*
Persons requiring access to chemical agents • 3–50, *page 22*
Education and orientation personnel • 3–51, *page 22*
Contract guards • 3–52, *page 22*
Transportation of arms, ammunition and explosives • 3–53, *page 22*
Personnel occupying information systems positions designated automated data processing–I, –II, and –III • 3–54, *page 22*
Others • 3–55, *page 23*

*Section VII*
*Reinvestigation, page 23*
General • 3–56, *page 23*
Allegations related to disqualification • 3–57, *page 23*
Access to sensitive compartmented information • 3–58, *page 23*
Critical-sensitive positions • 3–59, *page 23*
Critical military duties • 3–60, *page 23*
Presidential support duties • 3–61, *page 24*
North Atlantic Treaty Organization staff • 3–62, *page 24*
Extraordinarily sensitive duties • 3–63, *page 24*
Foreign nationals employed by DOD organizations overseas • 3–64, *page 24*
Persons accessing very sensitive information classified SECRET • 3–65, *page 24*
Access to TOP SECRET information • 3–66, *page 24*
Personnel occupying computer positions designated automated data processing–I • 3–67, *page 24*
Critical nuclear duty positions • 3–68, *page 24*

*Section VIII*
*Authority to Waive Investigative Requirements, page 25*
Authorized officials • 3–69, *page 25*
Combat operations, DA-directed mobilization • 3–70, *page 25*

**Chapter 4**
**Reciprocal Acceptance of Prior Investigations and Personnel Security Determinations,** *page 25*
General • 4–1, *page 25*
Prior investigations conducted by DOD investigative organizations • 4–2, *page 25*
Prior personnel security determinations made by DOD authorities • 4–3, *page 25*
Investigations conducted and clearances granted by other agencies of the Federal Government • 4–4, *page 26*

**Chapter 5**
**Requesting Personnel Security Investigations,** *page 26*
General • 5–1, *page 26*
Authorized requesters • 5–2, *page 26*
Criteria for requesting investigations • 5–3, *page 27*
Request procedures • 5–4, *page 27*
Priority requests • 5–5, *page 27*
Personal data provided by the subject of the investigation • 5–6, *page 27*
Requests for additional information or clarification • 5–7, *page 27*
Grounds for denial • 5–8, *page 28*
Requesting National Agency Check and written inquiries from the Office of Personnel Management • 5–9, *page 28*

**Chapter 6**
**Adjudication,** *page 29*
General • 6–1, *page 29*
Central adjudication • 6–2, *page 29*
Evaluation of personnel security information • 6–3, *page 30*

## Contents—Continued

Adjudicative record • 6–4, *page 30*
Reporting results of security or suitability determinations for civilian employees • 6–5, *page 30*

**Chapter 7**
**Issuing Clearance and Granting Access,** *page 30*
General • 7–1, *page 30*
Issuing clearance • 7–2, *page 30*
Granting access • 7–3, *page 31*
Administrative withdrawal • 7–4, *page 32*

**Chapter 8**
**Unfavorable Administrative Actions,** *page 32*

*Section I*
*Requirements, page 32*
General • 8–1, *page 32*
Referral for action • 8–2, *page 32*
Suspension • 8–3, *page 33*
Final unfavorable administrative actions • 8–4, *page 34*

*Section II*
*Procedures, page 34*
General • 8–5, *page 34*
Unfavorable administrative action procedures • 8–6, *page 34*
Requests for reconsideration • 8–7, *page 35*
Involuntary separation of military members and DA civilian personnel • 8–8, *page 36*
Exceptions to policy • 8–9, *page 36*

*Section III*
*Reinstatement of Civilian Employees, page 36*
General • 8–10, *page 36*
Reinstatement benefits • 8–11, *page 36*

**Chapter 9**
**Continuing Security Responsibilities,** *page 37*

*Section I*
*Evaluating Continued Security Eligibility, page 37*
General • 9–1, *page 37*
Management responsibility • 9–2, *page 37*
Supervisory responsibility • 9–3, *page 37*
Individual responsibility • 9–4, *page 38*
Coworker responsibility • 9–5, *page 38*

*Section II*
*Security Education, page 38*
General • 9–6, *page 38*
Initial briefing • 9–7, *page 38*
Refresher briefing • 9–8, *page 39*
Foreign travel briefing • 9–9, *page 39*
Termination briefing • 9–10, *page 39*

**Chapter 10**
**Safeguarding Personnel Security Investigative Records,** *page 40*
General • 10–1, *page 40*
Responsibilities • 10–2, *page 40*

**Contents—Continued**

Access restrictions • 10–3, *page 40*
Safeguarding procedures • 10–4, *page 40*
Records disposition • 10–5, *page 41*
Foreign source information • 10–6, *page 41*

**Chapter 11**
**Program Management,** *page 41*
General • 11–1, *page 41*
Responsibilities • 11–2, *page 41*
Reporting requirements • 11–3, *page 42*
Inspections • 11–4, *page 43*
Performance measures • 11–5, *page 43*

**Appendixes**

**A.**  References, *page 44*

**B.**  Investigative Scope, *page 48*

**C.**  Request Procedures, *page 54*

**D.**  Tables for requesting investigations, *page 56*

**E.**  Reporting of Nonderogatory Cases, *page 59*

**F.**  Personnel Security Determination Authorities, *page 59*

**G.**  Guidelines for Conducting Prenomination Personal Interviews, *page 61*

**H.**  List of Designated Countries, *page 61*

**I.**  Adjudicative Guidelines for Determining Eligibility for Access to Collateral Classified Information and Sensitive Compartmented Information and Controlled Access Program Information, *page 61*

**J.**  Overseas Investigations, *page 69*

**K.**  ADP Position Categories and Criteria for Designating Positions, *page 72*

**L.**  Defense Security Briefing Provided U.S. Government Employees Traveling to Communist-Controlled Countries, *page 73*

**M.**  Internal Control Evaluation, *page 76*

**Glossary**

# Chapter 1
# General Provisions

## 1–1. Purpose

*a.* To establish policies and procedures to ensure that acceptance and retention of personnel in the Armed Forces and United States Army, acceptance and retention of civilian employees in the Department of Defense (DOD) and Department of the Army (DA), and granting members of the Armed Forces, Army, DA and DOD civilian employees, DA and DOD contractors, and other affiliated persons access to classified information and assignment to sensitive positions are clearly consistent with the interests of national security.

*b.* This regulation—

(1) Establishes DA and DOD personnel security policies and procedures;

(2) Sets forth the standards, criteria and guidelines upon which personnel security determinations shall be based;

(3) Prescribes the kinds and scopes of personnel security investigation (PSIs) required;

(4) Details the evaluation and adverse action procedures by which personnel security determinations shall be made; and

(5) Assigns overall program management responsibilities.

## 1–2. References

Required and related publications and prescribed and referenced forms are listed in appendix A.

## 1–3. Explanation of abbreviations and terms

Abbreviations and special terms used in this regulation are explained in the glossary.

## 1–4. Responsibilities

Responsibilities are listed throughout this regulation.

## 1–5. Objectives

*a.* This regulation implements the DOD **and DA** Personnel Security Program and takes precedence over all other departmental issuances affecting that program.

*b.* All provisions of this regulation apply to **DA and** DOD civilian personnel, members of the Armed Forces, excluding the Coast Guard in peacetime, **U.S. Army, DA and** contractor personnel and other personnel who are affiliated with the DOD **and the Army** except that the unfavorable administrative action procedures pertaining to contractor personnel requiring access to classified information are contained in DOD 5220.22–R **(AR 380–49)** and in Department of Defense Directive (DODD) 5220.6 **(AR 380–49)**.

*c.* The policies and procedures which govern the National Security Agency are prescribed by Public Laws (PL) 88–290 and 86–36, Executive Orders 10450 (EO 10450) and 12333, DODD 5210.45, Director of Central Intelligence Directive (DCID) 1/14 (references (e), (f), (g), (h), (i), and (l), respectively), and regulations of the National Security Agency.

*d.* Under combat conditions or other military exigencies, an authority in paragraph 1, appendix F, may waive such provisions of this regulation as the circumstances warrant.

*e.* **This regulation also applies to —**

(1) **Persons employed, hired on an individual basis, or serving on an advisory or consultant basis (including co-op and summer hire students) for whom Army personnel security clearances are required, whether or not such persons are paid from appropriated or nonappropriated funds.**

(2) **Employees of the Army National Guard (ARNG), Army-Air Force Exchange Service, American Red Cross, the United Service Organizations (USO), who are required to have Army personnel security clearances.**

# Chapter 2
# Policies

## Section I
## Standards for Access to Classified Information or Assignment to Sensitive Duties

## 2–1. General

*a.* Only U.S. citizens shall be granted a personnel security clearance, assigned to sensitive duties, or granted access to classified information unless an authority designated in appendix F has determined that, based on all available information, there are compelling reasons in furtherance of the DOD mission, including, special expertise, to assign an individual who is not a citizen to sensitive duties or grant a limited access authorization to classified information. Non-

U.S. citizens may be employed in the competitive service in sensitive civilian positions only when specifically approved by the Office of Personnel Management (OPM), pursuant to EO 11935. Exceptions to these requirements shall be permitted only for compelling national security reasons.

*b.* **No person is entitled to knowledge of, possession of, or access to classified defense information solely by virtue of office, position, grade, rank, or security clearance. Such information will be entrusted only to persons whose official military or other governmental duties require it and who have been investigated and cleared for access under the standards prescribed by this regulation. Security clearances indicate that the persons concerned are eligible for access to classified information should their official duties require it.**

## 2–2. Clearance and sensitive position standard

The personnel security standard that must be applied to determine whether a person is eligible for access to classified information or assignment to sensitive duties is whether, based on all available information, the person's loyalty, reliability, and trustworthiness are such that entrusting the person with classified information or assigning the person to sensitive duties is clearly consistent with the interests of national security.

## 2–3. Military service standard

The personnel security standard that must be applied in determining whether a person is suitable under national security criteria for appointment, enlistment, induction, or retention in the Armed Forces is that, based on all available information, there is no reasonable basis for doubting the person's loyalty to the Government of the United States.

## Section II
## Criteria for Application of Security Standards

## 2–4. Criteria for application of security standards

The ultimate decision in applying either of the security standards set forth in paragraphs 2–2 and 2–3, above, must be an overall common sense determination based upon all available facts. The criteria for determining eligibility for a clearance or assignment to a sensitive position under the security standard shall include, but not be limited to the following (see app I for further guidance on the application of these factors):

*a.* Commission of any act of sabotage, espionage, treason, terrorism, anarchy, sedition, or attempts thereat or preparation therefore, or conspiring with or aiding or abetting another to commit or attempt to commit any such act.

*b.* Establishing or continuing a sympathetic association with a saboteur, spy, traitor, seditionist, anarchist, terrorist, revolutionist, or with an espionage or other secret agent or similar representative of a foreign nation whose interests may be inimical to the interests of the United States, or with any person who advocates the use of force or violence to overthrow the Government of the United States or to alter the form of Government of the United States by unconstitutional means.

*c.* Advocacy or use of force or violence to overthrow the Government of the United States or to alter the form of Government of the United States by unconstitutional means.

*d.* Knowing membership with the specific intent of furthering the aims of, or adherence to and active participation in any foreign or domestic organization, association, movement, group or combination of persons (hereafter referred to as organizations) which unlawfully advocates or practices the commission of acts of force or violence to prevent others from exercising their rights under the Constitution or laws of the United States or of any State or which seeks to overthrow the Government of the United States, or any State or subdivision thereof by unlawful means.

*e.* Unauthorized disclosure to any person of classified information, or of other information, disclosure of which is prohibited by statute, Executive order, or regulation.

*f.* Performing or attempting to perform one's duties, acceptance and active maintenance of dual citizenship, or other acts conducted in a manner which serves or which could be expected to serve the interests of another government in preference to the interests of the United States.

*g.* Disregard of public law, statutes, EOs, or regulations, including violation of security regulations or practices.

*h.* Criminal or dishonest conduct.

*i.* Acts of omission or commission that indicate poor judgment, unreliability, or untrustworthiness.

*j.* Any behavior or illness, including any mental condition, which, in the opinion of competent medical authority, may cause a defect in judgment or reliability with due regard to the transient or continuing effect of the illness and the medical findings in such case.

*k.* Vulnerability to coercion, influence, or pressure that may cause conduct contrary to the national interest. This may be (1) the presence of immediate family members or other persons to whom the applicant is bonded by affection or obligation in a nation (or areas under its domination) whose interests may be inimical to those of the United States, or (2) any other circumstances that could cause the applicant to be vulnerable.

*l.* Excessive indebtedness, recurring financial difficulties, or unexplained affluence.

*m.* Habitual or episodic use of intoxicants to excess.

*n.* Illegal or improper use, possession, transfer, or sale of or addiction to any controlled or psychoactive substance, narcotic, cannabis, or other dangerous drug.

*o.* Any knowing and willful falsification, cover up, concealment, misrepresentation, or omission of a material fact from any written or oral statement, document, form or other representation or device used by DOD or any other Federal agency.

*p.* Failing or refusing to answer or to authorize others to answer questions or provide information required by a congressional committee, court, or agency in the course of an official inquiry whenever such answers or information concern relevant and material matters pertinent to an evaluation of the individual's trustworthiness, reliability, and judgment. **Refusing or intentionally failing to provide a current personal security questionnaire (PSQ) or omitting material facts in a PSQ or other security form. Refusing to submit to a medical or psychological evaluation when information indicates the individual may have a mental or nervous disorder or be addicted to alcohol or any controlled substance.**

*q.* Sexual behavior that involves a criminal offense, indicates a personality or emotional disorder, reflects lack of judgment or discretion, or which may subject the individual to undue influence or coercion, exploitation, or duress can raise questions about an individual's reliability, trustworthiness and ability to protect classified information. No adverse inference may be made solely on the basis of the sexual orientation of the individual.

## Section III
## Types and Scope of Personnel Security Investigations

### 2–5. General
The types of PSIs authorized below vary in scope of investigative effort required to meet the purpose of the particular investigation. No other types are authorized. The scope of a PSI may be neither raised nor lowered without the approval of the DUSD(P).

### 2–6. National agency check/entrance national agency check
Essentially, a national agency check (NAC) is a records check of designated agencies of the Federal Government that maintain record systems containing information relevant to making a personnel security determination. An entrance national agency check (ENTNAC) is a NAC (scope as outlined in para **B**–1, app B) conducted on inductees and first-term enlistees, but lacking a technical fingerprint search. A NAC is also an integral part of each background investigation (BI), special background investigation (SBI), and periodic reinvestigation (PR). Chapter 3 prescribes when a NAC is required.

### 2–7. National agency check and written inquiries
The OPM conducts a NAC and written inquiries (NACI) on civilian employees for all departments and agencies of the Federal Government, pursuant to EO 10450. NACIs are considered to meet the investigative requirements of this regulation for a nonsensitive or noncritical-sensitive position and/or up to a SECRET clearance and, in addition to the NAC, include coverage of law enforcement agencies, former employers and supervisors, references, and schools covering the last 5 years.

### 2–8. DOD national agency check and written inquiries
The Defense Investigative Service (DIS) will conduct a Department of Defense National Agency check with written inquiries (DNACI), consisting of the scope contained in paragraph **B**–2, appendix B, for DOD military and contractor personnel for access to SECRET information. Chapter 3 prescribes when a DNACI is required.

### 2–9. Background investigation
The BI is the principal type of investigation conducted when an individual requires TOP SECRET clearance or is to be assigned to a critical-sensitive position. The BI normally covers a 5-year period and consists of a subject interview, NAC, local agency check (LAC)s, credit checks, developed character references (3), employment records checks, employment references (3), and select scoping as required to resolve unfavorable or questionable information. (See para**B**–3, app B.) Chapter 3 prescribes when a BI is required.

### 2–10. Special background investigation
*a.* An SBI is essentially a BI providing additional coverage both in period of time as well as sources of information, scoped in accordance with the provisions of Director of Central Intelligence Directive (DCID) 1/14 but without the personal interview. While the kind of coverage provided for by the SBI determines eligibility for access to sensitive compartmented information (SCI), DD has adopted this coverage for certain other special access programs. Chapter 3 prescribes when an SBI is required.

*b.* The OPM, FBI, Central Intelligence Agency (CIA), Secret Service, and the Department of State conduct specially scoped BIs under the provisions of DCID 1/14. Any investigation conducted by one of the above-cited agencies under DCID 1/14 standards is considered to meet the SBI investigative requirements of this regulation.

*c.* The detailed scope of an SBI is set forth in paragraph **B**–4, appendix B.

## 2–11. Special investigative inquiry

*a.* A special investigative inquiry (SII) is a PSI conducted to prove or disprove allegations relating to the criteria outlined in paragraph 2–4 of this regulation, except current criminal activities (see para 2–17*d*, below), that have arisen concerning an individual upon whom a personnel security determination has been previously made and who, at the time of the allegation, holds a security clearance or otherwise occupies a position that requires a trustworthiness determination.

*b.* Special investigative inquiries are scoped as necessary to address the specific matters requiring resolution in the case concerned and generally consist of record checks and/or interviews with potentially knowledgeable persons. An SII may include an interview with the subject of the investigation when necessary to resolve conflicting information and/or to provide an opportunity to refute or mitigate adverse information.

*c.* In those cases when there is a disagreement between DIS and the requester as to the appropriate scope of the investigation, the matter may be referred to the Deputy Under Secretary of Defense (Policy) (DUSD(P)) for resolution. **Requests for resolution will be forwarded through command channels to HQDA (DAMI–CIS), Washington, DC 20310–1051.**

## 2–12. Periodic reinvestigation

As referred to in paragraph 3–55 and other national directives, certain categories of duties, clearance, and access require the conduct of a PR every 5 years according to the scope outlined in paragraph **B**–5, appendix B. The PR scope applies to military, civilian, contractor, and foreign national personnel.

## 2–13. Personal interview

Investigative experience over the years has demonstrated that, given normal circumstances, the subject of a PSI is the best source of accurate and relevant information concerning the matters under consideration. Further, restrictions imposed by the Privacy Act of 1974 dictate that Federal investigative agencies collect information to the greatest extent practicable directly from the subject when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs. Accordingly, personal interviews are an integral part of the DOD personnel security program and shall be conducted in accordance with the requirements set forth in the following paragraphs of this section.

*a. Background investigation/periodic reinvestigation.* A personal interview shall be conducted by a trained DIS agent as part of each BI and PR.

*b. Resolving adverse information.* A personal interview of the subject shall be conducted by a DIS agent (or, when authorized, by investigative personnel of other DOD investigative organizations designated in this regulation to conduct PSIs), when necessary, as part of each special investigative inquiry, as well as during the course of initial or expanded investigations, to resolve or clarify any information which may impugn the subject's moral character, threaten the subject's future Federal employment, raise the question of subject's security clearability, or be otherwise stigmatizing.

*c. Hostage situation.* A personal interview shall be conducted by a DIS agent (or, when authorized, by investigative personnel of other DOD investigative organizations designated in this regulation to conduct PSIs) in those instances in which an individual has immediate family members or other persons bound by ties of affection or obligation who reside in a nation whose interests are inimical to the interests of the United States. (See para 2–18.)

*d. Applicants/potential nominees for DOD Military or civilian positions requiring access to sensitive compartmented information or other positions requiring an special background investigation.* A personal interview of the individual concerned shall be conducted, to the extent feasible, as part of the selection process for applicants/potential nominees for positions requiring access to SCI or completion of an SBI. The interview shall be conducted by a designee of the component to which the applicant or potential nominee is assigned. Clerical personnel are not authorized to conduct these interviews. Such interviews shall be conducted utilizing resources in the order of priority indicated below:

(1) Existing personnel security screening systems (for example, Air Force Assessment Screening Program, Naval Security Group Personnel Security Interview Program, U.S. Army Personnel Security Screening Program); or

(2) Commander of the nominating organization or such official as they have designated, in writing (for example, deputy commander, executive officer, security officer, security manager, S–2, counterintelligence specialist, personnel security specialist, or personnel officer); or

(3) Agents of investigative agencies in direct support of the component concerned.

*e. Administrative procedures.*

(1) The personal interview required by paragraph *d*, above, shall be conducted in accordance with appendix G.

(2) For those investigations requested subsequent to the personal interview requirements of paragraph *d*, above, the following procedures apply:

*(a)* The DD Form 1879 (Request for Personnel Security Investigation) shall be annotated under Item 20 (Remarks) with the statement "Personal Interview Conducted by (cite the duty assignment of the designated official (for example,

commander, security officer, personnel security specialist, and so forth))" in all cases in which an SBI is subsequently requested.

*(b)* Unfavorable information developed through the personal interview required by paragraph *d*, above, will be detailed in a written report attached to the DD Form 1879 to include full identification of the interviewer. Failure to provide such information may result in conduct of an incomplete investigation by DIS.

*(c)* Whenever it is determined that it is not feasible to conduct the personal interview required by paragraph *d*, above, prior to requesting the SBI, the DD Form 1879 shall be annotated under Item 20 citing the reason for not conducting the interview.

## 2–14. Expanded investigation

If adverse or questionable information relevant to a security determination is developed during the conduct of a PSI, regardless of type, the investigation shall be expanded, consistent with the restrictions in paragraph 2–24, to the extent necessary to substantiate or disprove the adverse or questionable information.

## Section IV
## Authorized Personnel Security Investigative Agencies

## 2–15. General

The DIS provides a single centrally directed personnel security investigative service to conduct PSIs within the 50 states, District of Columbia, and Commonwealth of Puerto Rico for DOD components, except as provided for in DODD 5100.23. DIS will request the military departments or other appropriate Federal agencies to accomplish DOD investigative requirements in other geographic areas beyond their jurisdiction. No other DOD component shall conduct PSIs unless specifically authorized by the DUSD(P). In certain instances provided for below, the DIS shall refer an investigation to other investigative agencies.

## 2–16. Subversive affiliations

*a. General.* In the context of DOD investigative policy, subversion refers only to such conduct as is forbidden by the laws of the United States. Specifically, this is limited to information concerning the activities of individuals or groups that involve or will involve the violation of Federal law, for the purpose of:

(1) Overthrowing the Government of the United States or the government of a State;

(2) Substantially impairing for the purpose of influencing U.S. Government policies or decisions:

*(a)* The functions of the Government of the United States, or

*(b)* The functions of the government of a State;

(3) Depriving persons of their civil rights under the Constitution or laws of the United States.

*b. Military department/Federal Bureau of Investigation jurisdiction.* Allegations of activities covered by criteria *a* through *f* of paragraph 2–4 of this regulation are in the exclusive investigative domain of either the counterintelligence agencies of the military departments or the Federal Bureau of Investigation (FBI), depending on the circumstances of the case and the provisions of the Agreement Governing the Conduct of Defense Department Counterintelligence Activities in Conjunction with the FBI . Whenever allegations of this nature are developed, whether before or after a security clearance has been issued or during the course of a PSI conducted by DIS, they shall be referred immediately to either the FBI or to a military department counterintelligence agency, as appropriate.

*c. Defense Investigative Service jurisdiction.* Allegations of activities limited to those set forth in criterion *g* through *q* of paragraph 2–4 of this regulation shall be investigated by DIS.

## 2–17. Suitability information

*a. General.* Most derogatory information developed through PSIs of DOD military or civilian personnel is so- called suitability information, that is, information pertaining to activities or situations covered by criteria *g* through *q* of paragraph 2–4 of this regulation. Almost all unfavorable personnel security determinations made by DOD authorities are based on derogatory suitability information, although such information is often used as a basis for unfavorable administrative actions not of a security nature, such as action under the Uniform Code of Military Justice (UCMJ) or removal from Federal employment under OPM regulations.

*b. Preclearance investigation.* Derogatory suitability information, except that covered in paragraph *d*, below, developed during the course of a PSI, prior to the issuance of an individual's personnel security clearance, shall be investigated by DIS to the extent necessary to confirm or refute its applicability to criteria in paragraph 2–4, *g* through *q* of this regulation.

*c. Postadjudication investigation.* Derogatory suitability allegations, except those covered by paragraph *d*, below, arising subsequent to clearance requiring investigation to resolve and to determine the individual's eligibility for continued access to classified information, reinstatement of clearance/access, or retention in a sensitive position shall be referred to DIS to conduct a special investigative inquiry. Reinvestigation of individuals for adjudicative reconsideration due to the passage of time or evidence of favorable behavior shall also be referred to DIS for investigation. In such

cases, completion of the appropriate statement of personal history by the individual constitutes consent to be investigated. Individual consent or completion of a statement of personal history is not required when paragraph 3–56 applies. Postadjudication investigation of allegations of a suitability nature required to support other types of unfavorable personnel security determinations or disciplinary procedures independent of a personnel security determination shall be handled in accordance with applicable component administrative regulations. These latter categories of allegations lie outside the DOD personnel security program and are not a proper investigative function for departmental counterintelligence organizations, component personnel security authorities, or DIS.

*d. Allegations of criminal activity.* Any allegations of conduct of a nature indicating possible criminal conduct, including any arising during the course of a PSI, shall be referred to the appropriate DOD, military department, or civilian criminal investigative agency. Military department investigative agencies have primary investigative jurisdiction in cases where there is probable cause to believe that the alleged conduct will be the basis for prosecution under the UCMJ. **Such information will be referred to the installation or unit provost marshal and/or security manager or the U.S. Army Criminal Investigation Command for action.**

## 2–18. Hostage situations

*a. General.* A hostage situation exists when a member of an individual's immediate family or such other person to whom the individual is bound by obligation or affection resides in a country whose interests are inimical to the interests of the United States. The rationale underlying this category of investigation is based on the possibility that an individual in such a situation might be coerced, influenced, or pressured to act contrary to the best interests of national security.

*b. DIS jurisdiction.* In the absence of evidence of any coercion, influence, or pressure, hostage investigations are exclusively a personnel security matter, rather than counterintelligence, and all such investigations shall be conducted by DIS.

*c. Military department and/or the Federal Bureau of Investigation jurisdiction.* Should indications be developed that hostile intelligence is taking any action specifically directed against the individual concerned—or should there exist any other evidence that the individual is actually being coerced, influenced, or pressured by an element inimical to the interests of national security—then the case becomes a counterintelligence matter (outside of the investigative jurisdiction of DIS) to be referred to the appropriate military department or the FBI for investigation.

## 2–19. Overseas personnel security investigations

Personnel security investigations requiring investigation overseas shall be conducted under the direction and control of DIS by the appropriate military department investigative organization **(AR 381–20 applies).** Only postadjudication investigations involving an overseas subject may be referred by the requester directly to the Military Department investigative organization having investigative responsibility in the overseas area concerned (see app J) with a copy of the investigative request sent to DIS. In such cases, the military department investigative agency will complete the investigation and forward the completed report of investigation directly to DIS, with a copy to the requester.

## Section V
## Limitations and Restrictions

## 2–20. Authorized requesters and personnel security determination authorities

Personnel security investigations may be requested and personnel security clearances (including special access authorizations as indicated) granted only by those authorities designated in paragraph 5–1 and appendix F.

## 2–21. Limit investigations and access

The number of persons cleared for access to classified information shall be kept to a minimum, consistent with the requirements of operations. Special attention shall be given to eliminating unnecessary clearances and requests for PSIs.

## 2–22. Collection of investigative data

To the greatest extent practicable, personal information relevant to security determinations shall be obtained directly from the subject of a PSI. Such additional information required to make the necessary personnel security determination shall be obtained as appropriate from knowledgeable personal sources, particularly the subject's peers, and through checks of relevant records, including school, employment, credit, medical, and law enforcement records.

## 2–23. Privacy Act notification

Whenever personal information is solicited from an individual preparatory to the initiation of a PSI, the individual must be informed of (1) the authority (statute or Executive order that authorized solicitation); (2) the principal purpose or purposes for which the information is to be used; (3) the routine uses to be made of the information; (4) whether furnishing such information is mandatory or voluntary; (5) the effect on the individual, if any, of not providing the

information; and (6) that subsequent use of the data may be employed as part of an aperiodic, random process to screen and evaluate continued eligibility for access to classified information.

## 2–24. Restrictions on investigators

Investigation shall be carried out insofar as possible to collect only as much information as is relevant and necessary for a proper personnel security determination. Questions concerning personal and domestic affairs, national origin, financial matters, and the status of physical health thus should be avoided unless the question is relevant to the criteria of paragraph 2–4 of this regulation. Similarly, the probing of a person's thoughts or beliefs and questions about conduct that have no personnel security implications are unwarranted. When conducting investigations under the provisions of this regulation, investigators shall:

*a.* Investigate only cases or persons assigned within their official duties.

*b.* Interview sources only where the interview can take place in reasonably private surroundings.

*c.* Always present credentials and inform sources of the reasons for the investigation. Inform sources of the subject's accessibility to the information to be provided and to the identity of the sources providing the information. Restrictions on investigators relating to Privacy Act advisements to subjects of PSIs are outlined in paragraph 2–23.

*d.* Furnish only necessary identity data to a source and refrain from asking questions in such a manner as to indicate that the investigator is in possession of derogatory information concerning the subject of the investigation.

*e.* Refrain from using, under any circumstances, covert or surreptitious investigative methods, devices, or techniques, including mail covers, physical or photographic surveillance, voice analyzers, inspection of trash, paid informants, wiretaps, or eavesdropping devices.

*f.* Refrain from accepting any case in which the investigator knows of circumstances that might adversely affect their fairness, impartiality, or objectivity.

*g.* Refrain from conducting, under any circumstances, physical searches of the subject or their property.

*h.* Refrain from attempting to evaluate material contained in medical files. Medical files shall be evaluated for personnel security program purposes only by such personnel as are designated by DOD medical authorities. However, review and collection of medical record information may be accomplished by authorized investigative personnel.

## 2–25. Polygraph restrictions

The polygraph may be used as a personnel security screening measure only in those limited instances authorized by the Secretary of Defense in DODD 5210.48, **(AR 195–6)**.

# Chapter 3
# Personnel Security Investigative Requirements

## Section I
## Sensitive Positions

## 3–1. Designation of sensitive positions

Certain civilian positions within DOD entail duties of such a sensitive nature, including access to classified information, that the misconduct, malfeasance, or nonfeasance of an incumbent in any such position could result in an unacceptably adverse impact upon the national security. These positions are referred to in this regulation as sensitive positions. It is vital to the national security that great care be exercised in the selection of individuals to fill such positions. Similarly, it is important that only positions which truly meet one or more of the criteria set forth in paragraph 3–2 be designated as sensitive. **A sensitive position will not be downgraded or reclassified as nonsensitive solely to aid in recruiting personnel.**

## 3–2. Criteria for security designation of positions

Each civilian position within DOD shall be categorized, with respect to security sensitivity, as either nonsensitive, noncritical-sensitive, or critical-sensitive.

*a.* The criteria to be applied in designating a position as sensitive are:

(1) *Critical-sensitive.*

*(a)* Access to TOP SECRET information.

*(b)* Development or approval of plans, policies, or programs that affect the overall operations of the DOD or of a DOD component.

*(c)* Development or approval of war plans, plans or particulars of future major or special operations of war, or critical and extremely important items of war.

*(d)* Investigative and certain investigative support duties, the issuance **or adjudication** of personnel security clearances or access authorizations, or the making of personnel security determinations.

*c.* The access level of cleared individuals will also be entered into the DCSI **by the CDR, CCF,** along with clearance eligibility status, as systems are developed and adopted which make such actions feasible.

*d.* Once the CDR, CCF, has granted a person's security clearance, **special access for NATO, SIOP–ESI, or other programs will be granted by the commander responsible for their control under appropriate regulations. The Commander, CCF, will make all eligibility determinations for SCI access.**

*e.* **DA Form 5247–R, with a copy of the clearance documentation, will be forwarded to CDR, CCF (PCCF–M), when accepting an Army clearance granted prior to CCF's assumption of clearance authority or by another DOD Component or Federal agency. In these cases, access to classified information need not be delayed pending receipt of a DA Form 873. Access may be granted and continued provided local file checks are favorable. Forwarding is not necessary if DA Form 873 is annotated, "Project Top Feed Completed."**

## 7–4. Administrative withdrawal

As set forth in paragraph 7–2*b*, above, the personnel security clearance and access eligibility must be withdrawn when the events described therein occur. When regular access to a prescribed level of classified information is no longer required in the normal course of an individual's duties, the previously authorized access eligibility level must be administratively downgraded or withdrawn, as appropriate. **Access based on an investigation completed over 5 years ago will be limited to no higher than SECRET unless a request for periodic reinvestigation was forwarded to DIS prior to the 5-year anniversary date of the previous investigation.**


# Chapter 8
# Unfavorable Administrative Actions

## Section I
## Requirements

## 8–1. General

For purposes of this regulation, an unfavorable administrative action includes any adverse action which is taken as a result of a personnel security determination, as defined in the terms section, and any unfavorable personnel security determination, as defined in the terms section. This chapter is intended only to provide guidance for the internal operation of the DOD and is not intended to, does not, and may not be relied upon, to create or enlarge the jurisdiction or review authority of any court or administrative tribunal, including the Merit Systems Protection Board.

## 8–2. Referral for action

*a.* Whenever derogatory information relating to the criteria and policy set forth in paragraph 2–4 and appendix I of this regulation is developed or otherwise becomes available to any DOD element, it shall be referred by the most expeditious means to the commander or the security officer of the organization to which the individual is assigned for duty. The CDR or security officer of the organization to which the subject of the information is assigned shall review the information in terms of its security significance and completeness. If further information is needed to confirm or disprove the allegations, additional investigation should be requested. The commander of the duty organization shall ensure that the parent component of the individual concerned is informed promptly concerning (1) the derogatory information developed and (2) any actions taken or anticipated with respect thereto **by forwarding DA Form 5248–R (Report of Unfavorable Information for Security Determination) to the CDR, CCF (PCCF–M).** However, referral of derogatory information to the commander or security officer shall in no way affect or limit the responsibility of the central adjudication facility to continue to process the individual for denial or revocation of clearance or access to classified information, in accordance with paragraph 8–6, below, if such action is warranted and supportable by the criteria and policy contained in paragraph 2–4 and appendix I. No unfavorable administrative action as defined in the terms section may be taken by the organization to which the individual is assigned for duty without affording the person the full range of protections contained in paragraph 8–6, below, or, in the case of SCI, Annex B, DCID 1/14.

*b.* The Director, DIS, shall establish appropriate alternative means whereby information with potentially serious security significance can be reported other than through DOD command or industrial organization channels. Such access shall include utilization of the DOD Inspector General "hotline" to receive such reports for appropriate followup by DIS. DOD components and industry will assist DIS in publicizing the availability of appropriate reporting channels. Additionally, DOD components will augment the system when and where necessary. Heads of DOD components will be notified immediately to take action, if appropriate.

(1) **When the commander learns of credible derogatory information on a member of their command that falls within the scope of paragraph 2–4, the commander will immediately forward DA Form 5248–R to the CDR, CCF.**

(2) **DA Form 5248–R will be submitted in a timely manner. At a minimum, initial reports will indicate the details of the credible derogatory information and actions being taken by the commander or appropriate**

authorities (for example, conducting an inquiry or investigation) to resolve the incident. Followup reports will be submitted at 90-day intervals if the commander has not taken final action or, for example, the subject is still pending action by civil court. At the conclusion of the command action, a final report will be forwarded to CCF indicating the action taken by the commander. The final report must contain results of any local inquiry, investigation, or board action and recommendation of the command concerning restoration or revocation of the person's security clearance, if appropriate.

(3) Commanders will not delay any contemplated personnel action while awaiting final action by CCF. The personnel action should proceed, with CCF being informed of the final action by submission of DA Form 5248–R through established channels.

(4) If the personnel file does not indicate the existence of a security clearance, commanders must still report information that falls within the scope of paragraph 2–4, since the person might later require a clearance. Only a final report is required on personnel who do not have a security clearance.

(5) The SSOs are charged with protecting SCI. If an SSO learns of any derogatory information falling within the scope of paragraph 2–4 concerning any person under the SSO's security cognizance, the SSO will immediately inform the commander. The failure of a commander to forward a DA Form 5248–R to CCF, when derogatory information has been developed on SCI indoctrinated individuals, should be brought to the attention of the individual's security manager and the senior intelligence officer.

## 8–3. Suspension

The commander or head of the organization shall determine whether, on the basis of all the facts available upon receipt of the initial derogatory information, it is in the interests of national security to continue subject's security status unchanged or to take interim action to suspend subject's access to classified information or assignment to sensitive duties (or other duties requiring a trustworthiness determination), if information exists which raises serious questions as to the individual's ability or intent to protect classified information, until a final determination is made by the appropriate authority designated in appendix F. Every effort shall be made to resolve a suspension action as expeditiously as possible.

a. When a commander learns of significant derogatory information falling within the scope of paragraph 2–4, in addition to the reporting requirements of 8–2a, above, the commander must decide whether or not to suspend the individual's access to classified information. The commander may wish to suspend access on an "informal" basis while gathering information to determine whether or not formal suspension is warranted. After gathering the required data, the commander may decide to restore access. If the CDR does not suspend access, CCF will review all available information and, if warranted, advise the commander to suspend access.

b. If the commander decides on formal suspension of access, DA Form 873 will be removed from individual's personnel file and attached to DA Form 5248–R reporting the suspension to CCF. Once this is done, the commander may not restore access until a final favorable determination by the CDR, CCF, unless ALL the following criteria are met. These following procedures apply to both collateral and SCI access:

(1) If the commander determines that the person has been cleared of all charges and that the alleged offense or disqualifying information has been disproved or found groundless, and the commander is completely convinced that no element of risk remains, the commander may restore interim access in the name of the CDR, CCF. The commander will notify CCF of this action. Access will not normally be restored in cases where factors such as dismissal of charges, acquittal because of legal technicalities, plea bargaining, or absence of a speedy trial are involved. These factors cannot be construed as a clearing of all charges.

(2) When the commander is considering suspending or has suspended a person's access because of a suspected or actual psychological problem, the commander may elect to retain the person in status or reinstate access if the following conditions are met:

(a) A current medical evaluation indicates the condition was a one-time occurrence.

(b) The condition has no lasting effects that would affect the person's judgment.

(c) There is no requirement for further medical consultation relating to the condition.

(d) The examining physician recommends the person be returned to full duty status.

(e) The person exhibits no unacceptable behavior after the favorable medical evaluation.

(f) The commander firmly believes the person does not pose a risk to the security of classified information.

(3) If the commander has any doubts concerning the person's current acceptability for access, even though the above provisions have been met, the case will be referred to CCF. Only the CDR, CCF, may reinstate access in cases where the person attempted suicide.

c. The commander will ensure that the SSO is expeditiously notified of any information within the scope of paragraph 2–200 if the person is indoctrinated for SCI. This notification is especially critical if the commander suspends access.

d. A commander who suspends access to classified information will ensure that the suspension is documented

in the Field Determined Personnel Security Status data field of the Standard Installation/Division Personnel System personnel file.

### 8–4. Final unfavorable administrative actions

The authority to make personnel security determinations that will result in an unfavorable administrative action is limited to those authorities designated in appendix F, except that the authority to terminate the employment of a civilian employee of a military DOD Agency is vested solely in the head of the DOD component concerned and in such other statutory official as may be designated. Action to terminate civilian employees of the Office of the Secretary of Defense and DOD components, on the basis of criteria listed in paragraphs 2–4, *a* through *f*, shall be coordinated with the DUSD(P) prior to final action by the head of the DOD component. DOD civilian employees or members of the Armed Forces shall not be removed from employment or separated from the Service under provisions of this regulation if removal or separation can be effected under OPM regulations or administrative (nonsecurity) regulations of the military departments. However, actions contemplated in this regard shall in no way affect or limit the responsibility of the central adjudication facility to continue to process the individual for denial or revocation of a security clearance, or access to classified information on or assignment to a sensitive position if warranted and supportable by the criteria and standards contained in this regulation.

### Section II
### Procedures

### 8–5. General

No final personnel security determination shall be made on a member of the Armed Forces, an employee of the DOD, a consultant to the DOD, or any other person affiliated with the DOD without granting the individual concerned the procedural benefits set forth in 8–6, below, when such determination results in an unfavorable administrative action (see para 8–1). As an exception, Red Cross/united service organizations employees shall be afforded the procedures prescribed by DODD 5210.25 **(AR 380–49)**.

### 8–6. Unfavorable administrative action procedures

Except as provided for below, no unfavorable administrative action shall be taken under the authority of this regulation unless the person concerned has been given:

*a.* A written statement of the reasons why the unfavorable administrative action is being taken. The statement shall be as comprehensive and detailed as the protection of sources afforded confidentiality under the provisions of the Privacy Act of 1974 (5 USC 552a) and national security permit. Prior to issuing a statement of reasons to a civilian employee for suspension or removal action, the issuing authority must comply with the provisions of Federal Personnel Manual, chapter 732, subchapter 1, paragraph 1–6b. The signature authority must be as provided for in paragraphs 6–101*b*(1)(b) and 6–101*b* (2)(b).

(1) **The CDR, CCF, is the DA authority for denial and/or revocation of security clearances and/or SCI access eligibility. The CDR, CCF, may delegate this authority to those individuals outlined in paragraph 6–2b.**

(2) **When CCF receives credible derogatory information and denial or revocation of a security clearance and/ or SCI access eligibility is considered appropriate, CCF will forward a letter of intent through the command security manager to the individual. This LOI will outline the derogatory information and explain the proposed action. It will offer the person a chance to reply in writing with an explanation, rebuttal, or mitigation for the incidents.**

(3) **The LOI will direct suspension of access to classified information. If the LOI addresses SCI access only, access to collateral information may continue.**

(4) **If the person needs access to classified information in order to prepare a response to the LOI, CCF may authorize limited access for that specific purpose.**

(5) **When a commander receives an LOI concerning a person who is no longer assigned to the command, one of the following actions will be taken:**

(a) **If the person is transferred, endorse the LOI to the gaining command and forward an information copy of the endorsement to CCF (PCCF–M).**

(b) **If the person has been released from active duty and has a Reserve obligation, forward the LOI to the U.S. Army Reserve Personnel Center (DARP–SPI), St. Louis, MO 63132–5200. Forward an information copy of the endorsement to CCF (PCCF–M).**

(c) **If the person has been discharged from military service with no Reserve obligation, endorse the LOI to CCF (PCCF–M), attaching a copy of the discharge orders.**

(6) **The CDR, CCF, may waive the due process requirements of this chapter when a person is incarcerated by military or civilian authorities on conviction of a criminal offense, or when a person is dropped from the rolls as a deserter. In such instances, the commander will take the following actions immediately:**

(a) **Withdraw the DA Form 873 from the person's MPRJ or OPF and stamp or print across the face,**

"Revoked by authority of CDR, CCF—deserted (date)" or "Revoked by authority of Commander, CCF—incarcerated as a result of civil conviction or court-martial (date)," as appropriate for military and civilian personnel. Forward the DA Form 873 and DA Form 5248 explaining the circumstances to the CDR, CCF (PCCF–M).

*(b)* If the MPRJ or OPF does not contain a DA Form 873, forward DA Form 5248–R, explaining the circumstances, to the Commander, CCF (PCCF–M).

*b.* An opportunity to reply in writing to such authority as the head of the component concerned may designate.

(1) **The commander will ensure that the person acknowledges receipt of the LOI by signing and dating the form letter enclosed with the LOI. The person will indicate their intention of submitting a rebuttal. The form letter will be forwarded immediately to CCF.**

(2) **The commander will ensure that the person is counseled as to the seriousness of CCF's contemplated action and will offer advice and assistance needed in forming a reply. The person can obtain legal counsel or other assistance at his or her own expense and may request a copy of the investigative files under the provisions of the Privacy Act. Privacy requests must be forwarded to the Chief, Freedom of Information/Privacy Office, U.S. Army Intelligence and Security Command (IACSF–FI), Fort George G. Meade, MD 20755–5995. If other than Army investigative records repository files exist, the Freedom of Information (FOI)/Privacy Office will refer the request to the appropriate repository. The individual must provide full name (including aliases), SSN, and date and place of birth. The person's signature must be notarized by a commissioned officer. If the person requires an extension of the 60-day suspension, the command security manager should forward a request, with justification, to the CDR, CCF (PCCF–M). An expected completion date will be provided.**

(3) **The person's response must address each issue raised in CCF's LOI. Any written documentation may be forwarded. Letters of recommendation from supervisory personnel may be attached to the response.**

(4) **The person will forward the response to CCF through the representative of the CDR who provided the LOI. The LOI must be endorsed by at least one CDR. The CDR should recommend whether the person's clearance should be denied, revoked, or restored. The CDR should provide a rationale, addressing the issues outlined in the LOI. Responses to LOIs that do not include the CDR's recommendation will be returned with a request for comments.**

*c.* A written response to any submission under paragraph *b,* stating the final reasons therefore, which shall be as specific as privacy and national security considerations permit. The signature authority must be as provided for in paragraphs 6–2*b*(1)(b) and 6–2*b*(2)(b). Such response shall be as prompt as individual circumstances permit, not to exceed 60 days from the date of receipt of the appeal submitted under paragraph *b,* above, provided no additional investigative action is necessary. If a final response cannot be completed within the timeframe allowed, the subject must be notified in writing of this fact, the reasons therefore, and the date a final response is expected, which shall not, in any case, exceed a total of 90 days from the date of receipt of the appeal under paragraph *b.*

(1) **The CCF's decision is considered final. This decision will be forwarded through the command security office to the individual.**

(2) **In accordance with AR 600–37, CCF must provide unfavorable information developed during the PSI to both the DA Suitability Evaluation Board (DASEB) and the appropriate TAPA, Army Reserve Personnel Center, or Guard Personnel Center personnel management office on all senior enlisted (E–6 and above), commissioned, or warrant officer personnel. Specifically included is any information that results in denial or revocation of a security clearance. A copy of CCF's LOI, the person's response, and CCF's final letter will be forwarded. The regulation does not exclude providing other significant unfavorable information that does not in itself result in an adverse decision. The DASEB determines which information is retained in a person's official military personnel file (OMPF). The fact that the information is being forwarded to the DASEB or personnel management office will be documented in CCF's final letter of determination.**

*d.* No final unfavorable personnel security clearance or access determination shall be made on an individual without granting them an opportunity to appeal to a higher level of authority as set forth in DOD 5200.02-R when such determination results in unfavorable administrative action. CCF's final letter of determination will state that if the person intends to appeal in writing directly to the Army's Personnel Security Appeals Board (PSAB) or request a personal appearance to the Defense Office of Hearings and Appeals (DOHA). The DOHA will review the facts of the case and make a recommendation to the PSAB. If, upon review of the in person or written appeal, a determination by PSAB is considered the final security clearance eligibility determination, no further appeal is authorized. All requests for appeal must be returned within 60 days from receipt of the letter.

## 8–7. Requests for reconsideration

*a.* If during the 60 days following receipt of CCF's final letter of determination the subject has additional information in rebuttal or mitigation, he or she should submit it to the CDR, CCF, rather than submitting an appeal to HQDA (DAMI–CIS). DAMI–CIS will forward such information to the CCF Commander. If the CCF review again results in denial or revocation, the person may then appeal to HQDA.

*b.* If after a final determination by the CDR, CCF, or by HQDA (DAMI–CIS), the person files an appeal,

CCF will accept no requests for reconsideration based solely on the passage of time as a mitigating factor for at least 1 year from the date of the final letter of determination or the DA appeal decision, whichever was later.

*c.* Any request for reconsideration submitted to the CDR, CCF, in accordance with the provisions of paragraphs *a* and *b*, above, must outline the reasons for loss of clearance and provide a rationale for favorable action by CCF. The request for reconsideration must be endorsed by the person's CDR. The CDR should be familiar with the information available to CCF and with CCF's rationale for denial or revocation. The CDR should state why the clearance and/or SCI access should be restored. If the person is not able to provide the CDR with a copy of CCF's original action, the commander should request a copy of the Army Investigative Records Repository dossier through their authorized file requester, normally the installation directorate of security (DSEC)/security manager at separate brigade, division, corps, and major command levels.

## 8–8. Involuntary separation of military members and DA civilian personnel

As soon as involuntary separation is considered for military members or DA civilian personnel who have had access to SCI, Special Access programs, or other sensitive programs, the local CDR will send the information listed below to HQDA (DAMI–CIS), Washington, DC 20310–1051. Elimination action will not be completed until DAMI–CIS acknowledges receipt of this information.

*a.* Individual's name, grade, and SSN.

*b.* Date and place of birth.

*c.* Marital status.

*d.* Length of service.

*e.* Reason(s) for proposed involuntary discharge or dismissal.

*f.* Type of discharge or dismissal contemplated.

*g.* Level of access to classified information. Classified details should not be submitted.

## 8–9. Exceptions to policy

*a.* Notwithstanding paragraph 8–6, above, or any other provision of this regulation, nothing in this regulation shall be deemed to limit or affect the responsibility and powers of the Secretary of Defense to find that a person is unsuitable for entrance or retention in the Armed Forces, or is ineligible for a security clearance or assignment to sensitive duties, if the national security so requires, pursuant to 5 USC 7532. Such authority may not be delegated and may be exercised only when it is determined that the procedures prescribed in paragraph 8–6, above, are not appropriate. Such determination shall be conclusive.

*b.* Notification of adverse action need not be given to—

(1) Military personnel who have been dropped from the rolls of their organization for absence without authority.

(2) Persons who have been convicted of a criminal offense by a civilian court or court-martial and are incarcerated.

## Section III
## Reinstatement of Civilian Employees

## 8–10. General

Any person whose civilian employment in the DOD is terminated under the provisions of this regulation shall not be reinstated or restored to duty or reemployed in the DOD unless the Secretary of Defense, or the head of a DOD component, finds that such reinstatement, restoration, or reemployment is clearly consistent with the interests of national security. Such a finding shall be made a part of the personnel security record.

## 8–11. Reinstatement benefits

A DOD civilian employee whose employment has been suspended or terminated under the provisions of this regulation and who is reinstated or restored to duty under the provisions of 5 USC 3571 is entitled to benefits as provided for by PL 89–380.